# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CRAIG GENESS | : CIVIL ACTION |
|---|---|
| v. | : |
| | : NO. 16-876 |
| COUNTY OF FAYETTE, *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　November 9, 2016

　　For over nine years, the Commonwealth moved a life-long mentally impaired man through a series of custodial trial competency evaluations relating to an alleged 2006 assault and death of a fellow group home resident before dismissing the charges against him. For reasons not presently known, the appointed public defender failed to obtain discovery which may have raised questions regarding a detective's questioning of the accused in a psychiatric ward without a lawyer leading to the charges. In 2015, his second lawyer persuaded the state court to order the District Attorney and Public Defender to turn over files. After turning over files, the Commonwealth withdrew the charges and the state court judge dismissed the charges without prejudice or finding his innocence. We need to find out what happened to delay the discovery while the mentally impaired man sat in custody accused of murder based on, according to his new lawyer, the detective's questioning. At this preliminary stage, we cannot find his plead civil rights and state law claims against the questioning detective are definitively barred by a two year statute of limitations or qualified immunity. As the prosecution did not favorably terminate with a finding of innocence, the detective is not liable for malicious prosecution. He also does not state an equal protection claim. In the accompanying Order, we deny the detective's motion to dismiss subject to discovery except for the malicious prosecution and equal protection claims.

## I. Plead facts.

Craig Geness is mentally impaired since birth.[1] He resided at a Personal Care Home owned by Defendants James and Jean McVey.[2] On October 27, 2006, Ronald Fiffak, another resident of McVey's Personal Care Home, fell off the porch.[3] Fiffak's wife told treating medical personnel her husband Fiffak fell from the porch steps.[4] The initial police report also reports Fiffak fell from the porch.[5]

James McVey told detectives he heard Mr. Geness yell "shut up" and slam the door right before Fiffak fell.[6] Police detectives began investigating Mr. Geness.[7] On or about November 16, 2006, Mr. McVey involuntarily committed Mr. Geness to Highlands Hospital.[8] On November 16, 2006, Detective Cox interviewed Mr. Geness about Fiffak's fall in a psychiatric ward at Highlands Hospital without an attorney present.[9] Allegedly based on this interview, he charged Mr. Geness with aggravated assault upon Fiffak and placed him in custody.[10]

Fiffak died on November 17, 2006.[11] On November 20, 2006, Detective Cox charged Mr. Geness with homicide.[12] Mr. Geness remained in custody until 2015.[13]

On June 18, 2007, Fayette County Judge Wagner found Mr. Geness incompetent to stand trial and committed him to Mayview State Hospital for no more than 60 days to evaluate Mr. Geness' fitness to stand trial.[14]

On August 21, 2007, Fayette County Judge Warman found Mr. Geness incompetent to stand trial and directed his attorney to move for trial when Mr. Geness is found competent.[15]

On September 25, 2007, Mayview conducted a psychiatric evaluation of Mr. Geness and deemed Mr. Geness incompetent to stand trial.[16] Mayview opined Mr. Geness may be "decompensating."[17] After this Mayview evaluation, the Commonwealth transferred Mr. Geness back to Fayette County Prison.[18]

2

Mr. Geness remained in Fayette County Prison with no legal action on his case until November 29, 2010 when Judge Wagner ordered Mr. Geness transferred from prison to Torrance State Hospital for a period of 90 days to determine Mr. Geness' competency to stand trial and the likelihood Mr. Geness will ever be competent to stand trial.[19] Inexplicably, the parties took no action based on Judge Wagner's November 29, 2010 Order for ten months.

On August 17, 2011, Fayette County Judge Solomon ordered the parties to determine if Mr. Geness is then competent to function in society.[20] Mr. Geness underwent a forensic psychiatric assessment at Fayette County Prison on or about September 4, 2011.[21] On or about September 21, 2011, Judge Wagner found Mr. Geness not competent to stand trial and involuntarily committed Mr. Geness to a Long Term Structured Residence ("LTSR").[22] LTSR prohibits contact with the general public, requires an ankle monitor, and Mr. Geness is to be returned to Fayette County Prison upon completing his therapeutic program or found competent to stand trial.[23]

Sometime before June 18, 2014, Mr. Geness' new *pro bono* defense counsel requested discovery from the Fayette County District Attorney.[24] On May 27, 2015, Mr. Geness' new lawyer moved to compel discovery. On June 2, 2015, Judge Leskinen ordered the District Attorney and Public Defender provide Mr. Geness with all psychiatric and psychological reports within ten days; on June 10, 2015, Judge Wagner granted Mr. Geness' motion to compel discovery and ordered the District Attorney to provide all discovery to Mr. Geness by June 30, 2015; and, on June 17, 2015, Judge Wagner ordered the District Attorney to provide information on all eye-witnesses within ten days.[25]

On December 10, 2015, Fayette County Judge Leskinen granted Fayette County's request to *nolle pros* all charges against Mr. Geness.[26] Jude Leskinen's December 10, 2015 *nolle pros*

3

Order provides: "1. [Geness] remains incompetent to stand trial, and has been incompetent since approximately the time he was first referred for evaluation & treatment. 2. While there was clearly sufficient probable cause to file the criminal complaint, it presently appears to be reasonable possibility that [Geness] was legally insane at the time of the actions alleged, and under the present circumstances, the Commonwealth would likely be wasting scarce public funds to have a countervailing expert evaluation performed. 3. The Court has been advised that the family members of the victim have been advised of these proceedings and that no one wishes to be heard prior to dismissal. 4. [Geness] can adequately be supervised using normal civil proceedings. 5. Although the defense has recently been pursuing a dismissal aggressively, this matter languished for years while [Geness] was being evaluated for competency. 6. All delay is attributable to the defense, and must be excluded from computation under Pa.R.Crim.P. 600. 7. Commonwealth is voluntarily & proactively seeking Court approval to enter a Nolle Prosequi of all charges. 8. No significant benefits will accrue to the community at this time by further pursuit.[27]

On June 17, 2016, Mr. Geness sued alleging discrimination under the Americans With Disabilities Act ("ADA") against County of Fayette and City of Uniontown, malicious prosecution, false arrest, false imprisonment, reckless investigation, and equal protection against Detective Cox and City of Uniontown, municipal liability against City of Uniontown, and conspiracy and intentional infliction of emotional distress against Detective Cox, James McVey and Jean McVey.

**II. Analysis**

City of Uniontown and Detective Jason Cox moved to dismiss Mr. Geness' ADA claim against Uniontown, the §1983 claims against Uniontown and Detective Cox, and the intentional

4

infliction of emotional distress claim against Detective Cox as barred by the statute of limitations. They also argue the §1983 malicious prosecution, false arrest, false imprisonment, and reckless investigation claim are deficient because of sufficient probable cause to arrest Mr. Geness. Uniontown and Detective Cox move to dismiss claims against Detective Cox because of qualified immunity. Uniontown and Detective Cox also argues Mr. Geness fails to state a claim.

Mr. Geness withdrew his claims against Uniontown during the November 2, 2016 oral argument.[28] We dismiss Uniontown in the accompanying Order.

### A. It is not facially and conclusively evident the statute of limitations bars claims.

We examine the complicated interplay between when Mr. Geness' claim accrual and Mr. Geness' discovering his injury, and whether the statute of limitations bars Mr. Geness' claim. We cannot dismiss Mr. Geness' claims because it is not facially and conclusively evident statute of limitations bars his claims.

#### 1. Standard for motion to dismiss on statute of limitations grounds.

Our Court of Appeals allows defendants to use a statute of limitations affirmative defense to dismiss a claim if the times alleged on the face the complaint show the claim is time barred.[29] "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12 (b)(6)."[30] We may deny a motion to dismiss based on a statute of limitations affirmative defense when we cannot conclude the bar "is facially and conclusively evident...[g]iven the allegations in the Complaint, [and we] cannot conclude now that no tolling/delay of accrual doctrine will not apply."[31]

5

## 2. Evaluating the 2 year statute of limitations.

The statute of limitations for the § 1983 and state law emotional distress claims are governed by the two year statute of limitations for personal injury actions in Pennsylvania.[32] Federal law governs when Mr. Geness' § 1983 claims accrue.[33] "Federal law governs the accrual date of a cause of action under § 1983, and under federal law a cause of action accrues 'at the moment at which each of its component elements has come into being as a matter of objective reality."[34] There is no dispute all of Mr. Geness' § 1983 claims, except malicious prosecution, accrued at his arrest in November 2006 and the statute of limitations expired in November 2008.

Mr. Geness could overcome the statute of limitations bar either by tolling under a discovery rule or federal equitable tolling. Whether our Court of Appeals applies federal or Pennsylvania law's discovery rule applies to § 1983 claims is unclear.[35] In *Kach v. Hose*, our Court of Appeals examined both the federal discovery rule and the Pennsylvania discovery rule to § 1983 claims.[36] In *Lake v. Arnold*, our Court of Appeals examined and applied Pennsylvania's discovery rule.[37] In *Leonard v. City of Pittsburgh*, Judge Hornak concluded, and we agree, there is no meaningful difference between Pennsylvania's state rule of law and our Court of Appeals' federal standard regarding the discovery rule.[38]

Under the federal and Pennsylvania discovery rule, the statute of limitations begins when the injured party discovers or should have discovered with reasonable diligence he has been injured and his injury is caused by another party's conduct.[39] In *Miller v. Philadelphia Geriatric Center*, Miller, mentally retarded since birth, suffered injuries and died from alleged negligence by his nursing home.[40] Miller's nursing home received federal funding so Miller could bring claims under the Federal Tort Claims Act.[41] Miller lacked an appropriate legal guardian at the

6

time of the negligence on October 31, 1995.[42] Miller died from his injures on September 24, 1997 and on September 21, 1991 Miller's sister, as personal representative, filed a personal injury suit.[43] The district court granted summary judgment because the two year statute of limitations barred Miller's FTCA and Pennsylvania survival actions.[44]

Our Court of Appeals reversed, holding the "objective reasonable person" standard for discovery of injury does not apply to Miller because "[n]ot only was no guardian ever appointed to him, his profound mental retardation prevented him from any awareness of his injury or its cause."[45] The statute of limitations began to run at Miller's death when a guardian who could discover and understand Miller's injury is appointed.[46] Our Court of Appeals also denied summary judgment on Miller's Pennsylvania survival act claims because, under *Fine v. Checcio*, it is a fact inquiry whether Miller "knew, or more accurately, was even capable of knowing, that he was injured and cause of his injury."[47]

In *Dique v. New Jersey State Police,* our Court of Appeals described in *dicta* a plaintiff's Fourth Amendment claim accruing in 1990 would be tolled until July 2001 under New Jersey's discovery rule because, in July 2001, plaintiff's attorney became aware of extensive documents disclosing New Jersey's pervasive selection-enforcement practices.[48]

Returning to the incident in October 2006, Mr. Geness is a mentally impaired man living in the McVeys' personal care home without a legal guardian when his housemate Fiffak is seriously injured falling off a porch. By November 16, 2006, the McVeys involuntarily commit Mr. Geness to a mental hospital. On the same day, Detective Cox interviewed Mr. Geness about Fiffak's fall after Mr. Geness waived his *Miranda* rights without an attorney present at the mental hospital. Detective Cox then charged Mr. Geness with aggravated assault. Four days later, Detective Cox charged him with murder based on information gathered during the

7

interview of Mr. Geness, an involuntarily committed mentally impaired man without counsel. At some later point, Fayette County appointed a public defender for Mr. Geness but he remained in custody until December 2015. We have no idea the efforts undertaken by the public defender to find out the facts relating to Mr. Geness' alleged confession.

From the criminal docket, it is undisputed a judge compelled the district attorney to provide discovery on June 30, 2015. The discovery contained conflicting eyewitness testimony and hospital reports regarding Fiffak's fall. This discovery disclosed crucial information putting Mr. Geness' arrest and imprisonment in question. As in *Miller*, Mr. Geness' incompetence existed from birth and prevented Mr. Geness from understanding his injuries as an objective reasonable person. It is a fact question whether Mr. Geness understood the nature of his arrest. We do not know the length of time between the interview without an attorney, the arrest and appointment of a public defender. While we understand a defense counsel is a fiduciary similar in some ways to a guardian, we need more facts as to the public defender's role and extent of fiduciary obligations.

Our Court of Appeals noted its holding in *Miller* is narrow and based on a summary judgment standard. At this stage, we only consider whether Mr. Geness states a claim upon which relief can be granted. It is not "facially and conclusively evident" from the face of his complaint the statute of limitations bars Mr. Geness' claims because, given his mental disabilities, we "cannot conclude now that no tolling/delay of accrual doctrine will not apply."[49] It is a fact question whether Mr. Geness should have discovered his injuries before June 30, 2015, including whether his Fayette County public defender knew of these injuries.

8

### B. Mr. Geness states a claim for false arrest and false imprisonment.

To state claims for § 1983 false arrest and false imprisonment, Mr. Geness must allege Detective Cox lacked probable cause in arresting and imprisoning him.[50] Mr. Geness alleges Detective Cox lacked probable cause because he relied on Mr. Geness' coerced false confession even though Mr. Geness, a man with limited mental capabilities, was involuntarily confined to a psychiatric ward at the time.[51] Mr. Geness also alleges Detective Cox lacked probable cause because he disregarded the medical report which recounted Fiffik's wife saying he fell and the first police report which also recounted Fiffik fell.[52] We find Mr. Geness states a claim for false arrest and false imprisonment because he sufficiently alleges Detective Cox lacked probable cause.

### C. Mr. Geness states a claim for reckless investigation.

Our Court of Appeals has not recognized a § 1983 claim for reckless investigation but other courts in our Circuit do.[53] "To bring a successful due process claim for failure to investigate, a plaintiff must show that a police officer acted intentionally or recklessly, in a manner that shocks the conscience, in failing to investigate. Failure to investigate is considered in tandem with the strength or weakness of the probable cause evidence."[54] Mr. Geness alleges Detective Cox coerced a false confession from Mr. Geness even though Mr. Geness was involuntarily confined to a psychiatric ward and has limited mental capacity.[55] Mr. Geness also alleges Detective Cox disregarded the medical report which recounted Fiffik's wife saying he fell and the first police report which also recounted Fiffik fell which cast doubt on probable cause.[56] We find Mr. Geness states a claim for § 1983 reckless investigation.

9

### D. Mr. Geness fails to states a claim for equal protection.

We dismiss Mr. Geness' claim for § 1983 equal protection because he fails to plead Detective Cox treated him differently from other similarly situated individuals. "To bring a successful § 1983 claim for 'denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they receiv[ed] different treatment from that received by other individuals similarly situated."[57] Mr. Geness' alleges Detective Cox violated his equal protection rights by prosecuting him for a crime he did not commit because of Mr. Geness' disability.[58] Mr. Geness' claim fails because he does not allege Detective Cox treated other similarly situated individuals differently for an equal protection claim.

### E. Mr. Geness states a claim for conspiracy.

Mr. Geness states a claim for conspiracy under § 1983 and § 1985(3). Under § 1983, "[t]he elements of a conspiracy are a combination of two or more persons to do a criminal act...the plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events."[59] Under § 1985(3), Mr. Geness must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States."[60]

Mr. Geness alleges the McVeys and Detective Cox agreed to falsely arrest, imprison, and maliciously prosecute him. Mr. Geness alleges the McVeys took action on this agreement by making false statements Mr. Geness was near Fiffak when he fell and he heard Mr. Geness yell "shut up" right before the fall.[61] Mr. Geness also alleges the McVeys involuntarily committed

10

him based on the conspiracy.[62] Mr. Geness alleges Detective Cox furthered the conspiracy by using the McVeys false statements to investigate Mr. Geness and ignore other evidence.[63] For the § 1985(3) claim, Mr. Geness alleges the conspiracy deprived him of his freedom and liberty.[64] Viewing his allegations as true, we find Mr. Geness pleads sufficient facts to state a § 1983 and § 1985(3) conspiracy against Detective Cox.

### F. We cannot now determine if qualified immunity applies to Detective Cox.

Mr. Geness alleges the probable cause for his arrest is based on Detective Cox coercing his confession regardless of Mr. Geness' obvious limited mental capacity and involuntary commitment to a psychiatric ward.[65] Detective Cox also had Mr. Geness waive his Miranda right and his right to have an attorney present.[66] "While we have recognized that it is for the court to decide whether an officer's conduct violated a clearly established constitutional right, we have also acknowledged that the existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue."[67]

We find Mr. Geness plead Detective Cox violated Mr. Geness' clearly established constitutional right not to have his coerced confession used against him to falsely arrest and imprison him. "The use of coerced confessions, whether true or false, is forbidden because the method used to extract them offends constitutional principles."[68] The facts disputes regarding the objective reasonableness of Detective Cox's conduct preclude dismissal at this stage.

### G. We dismiss Mr. Geness' malicious prosecution barred because there is no favorable termination.

We dismiss Mr. Geness' malicious prosecution claim against Detective Cox because the underlying proceedings did not favorably terminate for Mr. Geness. Judge Leskinen's *nolle prosequi* Order found Mr. Geness remained incompetent to stand trial, there was clearly sufficient probable cause to file the charges, and "the within charges are to be dismissed without

11

prejudice" but may re-filed.[69]

To state a § 1983 claim for malicious prosecution, Mr. Geness must plead "(1) the defendants initiated a criminal proceeding, (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4)[and] the defendants acted maliciously or for a purpose other than brining the plaintiff to justice...."[70] There is no dispute the first element is satisfied, but Mr. Geness cannot prove the proceedings terminated in his favor.

"A *nol pros* signifies termination of charges in favor of the accused 'only when their final disposition is such as to indicate the innocence of the accused.'"[71] In *Tighe*, a court found a *nol pros* which stated the district attorney felt there is nothing to gain continuing prosecution and reserved the right to reinstate charges is not a favorable termination for a criminal defendant.[72] Judge Leskinen's Order does not indicate Mr. Geness' innocence and instead allows the District Attorney to bring charges against Mr. Geness at any time without prejudice.

We dismiss Mr. Geness' § 1983 malicious prosecution claim on the *nol pro* order in Mr. Geness' underlying criminal proceeding is not a favorable termination when it does not indicate his innocence.

### H. Mr. Geness states a claim for intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress, Mr. Geness, "must show extreme and outrageous conduct which is deliberate or reckless and which causes severe emotional distress. The conduct complained of must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[73] Where a defendant alleges "extreme and outrageous" conduct in the context of an arrest, whether or not there is probable

12

cause for the "extreme and outrageous" conduct first.[74]

Mr. Geness alleges Detective Cox's conduct in coercing a confession and confining him over 9 years based on a lack of probable cause is "extreme and outrageous."[75] If true, Mr. Geness' claims are "extreme and outrageous" because he coerced a confession from a mentally impaired man confined to a psychiatric ward and in arresting Mr. Geness based on the coerced confession and not considering conflicting exculpatory evidence from the medical and police reports. We find Mr. Geness states a claim for intentional infliction of emotional distress because he alleged sufficient facts to dispute Detective Cox's probable cause including "extreme and outrageous conduct."

### III. Conclusion

Mr. Geness pleads Detective Cox violated certain civil rights resulting in a nine years of custody awaiting a trial. The statute of limitations may bar these claims but we cannot make those findings based on the Complaint. We dismiss the §1983 equal protection and malicious prosecution claims against Detective Cox.

---

[1] ECF Doc. No. 1 ¶ 12.

[2] *Id.* ¶ 13.

[3] *Id.* ¶ 15.

[4] *Id.* ¶ 17.

[5] *Id.* ¶ 19.

[6] *Id.* ¶ 22.

[7] *Id.* ¶ 22.

[8] *Id.* ¶ 22.

13

⁹ *Id.*

¹⁰ *Id.* ¶ 23.

¹¹ *Id.* ¶ 28.

¹² *Id.* ¶ 29.

¹³ *Id.* ¶ 29.

¹⁴ *Id.* ¶ 34.

¹⁵ *Id.* ¶ 35.

¹⁶ *Id.* ¶ 36.

¹⁷ *Id.*

¹⁸ *Id.*

¹⁹ *Id.* ¶ 41.

²⁰ *Id.* ¶ 42.

²¹ *Id.* ¶ 43.

²² *Id.* ¶ 45.

²³ *Id.*

²⁴ ECF Doc. No. 17-1 at 12.

²⁵ ECF Doc. No. 17-1 at 12-13.

²⁶ ECF Doc. No.1 ¶ 47.

²⁷ ECF Doc. No. 1.

²⁸ "Mr. Krepps: So Uniontown is out of the case. The Court: Is that right? Mr. Sansone: Yes…The Court: So we are talking essentially about the officer, the chief. Mr. Sansone: Exactly." N.T. November 2, 2016 pp. 48:23-49:7.

²⁹ *See Pearce v. Borough of Glassport*, No. 16-428, 2016 WL 3855033 (W.D.Pa. July 15, 2016)(*citing Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2012)).

[30] *Id.* (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

[31] *Id.* at 4.

[32] *See Rose v. Bartle*, 871 F.2d 331, 347 (3d Cir. 1989).

[33] *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).

[34] *William A. Graham Co. v. Haughey*, 646 F.3d 138, 150-151 (3d Cir. 2011)).

[35] *See Leonard v. City of Pittsburgh*, No. 13-455, 2013 WL 4541727 n. 7 (W.D.Pa. August 17, 2013).

[36] *Kach*, 589 F.3d at 635-37.

[37] *Lake v. Arnold*, 232 F.3d 360, 367 (3d Cir. 2000).

[38] *Leonard*, 2013 WL 4541727 fn. 8.

[39] *See Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transp. Auth.*, 539 F.3d 199, 209 (3d Cir. 2008) and *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. Super. 2005).

[40] 463 F.3d 266, 268-269 (3d. Cir. 2006).

[41] *Id.*

[42] *Id.* at 270.

[43] *Id.*

[44] *Id.*

[45] *Id.* at 275.

[46] *Id.* at 274-275.

[47] *Id.* at 276 (*citing Fine*, 870 A.2d at 858).

[48] *Dique v. New Jersey State Police*, 603 F.3d 181, 188 (3d Cir. 2010).

[49] *Pearce*, 2016 WL 3855033 at *4.

[50] *Startzell v. City of Philadelphia, Penn.*, 533 F.3d 183, 204 (3d Cir. 2008).

[51] ECF Doc. No. 1 ¶ 24-25.

[52] *Id.* ¶ 58.

[53] *See, e.g., Eckman v. Lancaster City*, 742 F. Supp. 2d. 638, 653 (E.D.Pa. 2010), *aff'd*, 515 F. App'x 93 (3d Cir. 2013); *Thomas v. Stanek*, No. 14-1415, 2015 WL 757574 (W.D.Pa. Feb. 23, 2015).

[54] *Thomas*, 2015 WL 757574 at *7.

[55] ECF Doc. No. 1 ¶ 24-25.

[56] *Id.* ¶ 58.

[57] *Lawson v. City of Coatesville*, 42 F. Supp. 3d 664, 675 (E.D.Pa. 2014)(*quoting Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992).

[58] ECF Doc. No. 1 ¶ 120.

[59] *Hammond v. Creative Financial Planning Organization, Inc.*, 800 F. Supp. 1244, 1249 (E.D.Pa. 1992)(*citing Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974)).

[60] *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006).

[61] ECF Doc. No. 1 ¶ 126-128.

[62] *Id.* ¶ 128.

[63] *Id.* ¶ 130.

[64] *Id.* ¶ 132.

[65] *Id.* ¶ 25.

[66] *Id.* ¶ 26.

[67] *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002).

[68] *U.S. v. Harris*, No. 10-40, 2013 WL 1828549 at *15 (W.D.Pa. April 30, 2013)(*citing Lego v. Twomey*, 404 U.S. 477, 482-85 (1972)).

[69] ECF Doc. No. 17-1 at 17.

[70] *Tighe v. Purchase*, No. 11-224, 2014 WL 3058434 at *15 (W.D.Pa. July 7, 2014).

⁷¹ *Id.* at 15 (*citing Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir.2002)).

⁷² *Id.*

⁷³ *McClain v. Munn*, No. 06-278, 2008 WL 976059 at *5 (W.D.Pa. April 9, 2008).

⁷⁴ *See, e.g., Gilbert v. Feld*, 842 F. Supp. 803, 821 (E.D.Pa. 1993).

⁷⁵ ECF Doc. No. 1 ¶¶ 25, 144.