# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRAIG A. GENESS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | **NO. 16-876** |
| **JASON COX**, *et al.* | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                       **March 21, 2017**

      A mentally impaired man alleges state actors deprived him of constitutional rights resulting in years of custody in a state jail based on several orders delaying a decision on whether he was competent to defend criminal charges. Following discovery, he now moves to amend his complaint to sue the Commonwealth under the Americans with Disabilities Act arguing state court judges repeatedly issued orders retaining him in custody based on the possibility of him regaining competency to stand trial when medical evidence demonstrated a permanent disability. He also argues the state court judges failed to hear or rule on his four *habeas corpus* petitions and the court's later *nolle prosequi* Order violated the Americans with Disabilities Act. While the Supreme Court removed the Commonwealth's immunity from suit over a decade ago, the mentally impaired plaintiff still cannot sue the Commonwealth under this Act challenging state court orders and procedures as violating his civil rights as a disabled man. He does not argue the state failed to provide physical accommodations or proper professional assistance to him as a disabled defendant; rather, he asks us to hold a disabled person can state a claim under the Americans with Disabilities Act because state court judges' rulings and procedures adversely affected him. We find no basis for this requested unprecedented expansion of disabilities law effectively obviating the *Rooker-Feldman* doctrine when the defendant is disabled.

### I. Plead facts.

*The 2006 conduct leading to the charges in state court.*

Craig Geness is mentally impaired since birth. He resided at a personal care home where on October 27, 2006, Ronald Fiffak, another resident fell off the porch. Mr. Fiffak's wife told treating medical personnel her husband fell from the porch steps. The initial police report also reports Mr. Fiffak fell from the porch.

On November 16, 2006, Detective Jason Cox interviewed the owner of the personal care home. The owner of the personal care home told Detective Cox he heard Mr. Geness yell "shut up" and slam the door right before Mr. Fiffak fell. Police detectives began investigating Mr. Geness. On or about November 16, 2006, the owner involuntarily committed Mr. Geness to Highlands Hospital.

On November 16, 2006, Detective Cox interviewed Mr. Geness about Mr. Fiffak's fall in a psychiatric ward at Highlands Hospital without an attorney present. Allegedly based on this interview, he charged Mr. Geness with aggravated assault and placed him in custody. Mr. Fiffak died on November 17, 2006. On November 20, 2006, Detective Cox charged Mr. Geness with homicide and incarcerated him in Fayette County Prison.

*Mr. Geness' long delayed resolution in the state court.*

Mr. Geness remained in custody until 2015 without a trial. On June 18, 2007, Fayette County Judge Wagner found Mr. Geness incompetent to stand trial and committed him to Mayview State Hospital for no more than 60 days to evaluate Mr. Geness' fitness to stand trial.

On August 21, 2007, Fayette County Judge Warman found Mr. Geness incompetent to stand trial and directed his attorney to move for trial when Mr. Geness is found competent.

On September 25, 2007, Mayview conducted a psychiatric evaluation of Mr. Geness and

deemed Mr. Geness incompetent to stand trial. Mayview opined Mr. Geness may be "decompensating." After this Mayview evaluation, the Commonwealth transferred Mr. Geness back to Fayette County Prison.

Mr. Geness remained in Fayette County Prison with no legal action on his case until November 29, 2010 when Judge Wagner ordered Mr. Geness transferred from prison to Torrance State Hospital for a period of 90 days to determine Mr. Geness' competency to stand trial and the likelihood Mr. Geness will ever be competent to stand trial. Inexplicably, the parties took no action based on Judge Wagner's November 29, 2010 Order for ten months.

On August 17, 2011, Fayette County Judge Solomon ordered the parties to determine if Mr. Geness is then competent to function in society. Mr. Geness underwent a forensic psychiatric assessment at Fayette County Prison on or about September 4, 2011. On or about September 21, 2011, Judge Wagner found Mr. Geness not competent to stand trial and involuntarily committed Mr. Geness to a Long Term Structured Residence ("LTSR"). LTSR prohibits contact with the general public, requires an ankle monitor, and Mr. Geness is to be returned to Fayette County Prison upon completing his therapeutic program or found competent to stand trial.

During his period in custody, Mr. Geness filed four petitions for *habeas corpus* relief. The Fayette County Court of Common Pleas never held a hearing or ruled on Mr. Geness' petitions.

Sometime before June 18, 2014, Mr. Geness' new *pro bono* defense counsel requested discovery from the Fayette County District Attorney. On May 27, 2015, Mr. Geness' new lawyer moved to compel discovery. On June 2, 2015, Judge Leskinen ordered the District Attorney and Public Defender provide Mr. Geness with all psychiatric and psychological reports

within ten days; on June 10, 2015, Judge Wagner granted Mr. Geness' motion to compel discovery and ordered the District Attorney to provide all discovery to Mr. Geness by June 30, 2015. On June 17, 2015, Judge Wagner ordered the District Attorney to provide information on all eyewitnesses within ten days.

On December 10, 2015, Fayette County Judge Leskinen granted Fayette County's request to *nolle prosequi* all charges against Mr. Geness.

*Mr. Geness seeks federal civil rights remedies.*

On June 17, 2016, Mr. Geness sued Fayette County in this Court for violating his rights under the Americans with Disabilities Act ("Act") by "depriving him of normal benefits of criminal procedure and due process of law."[1] On November 10, 2016, Mr. Geness voluntarily dismissed his claims against Fayette County.[2] On December 2, 2016, we entered the scheduling Order closing discovery on March 3, 2017.[3]

On March 6, 2017, Mr. Geness moved to amend his complaint to dismiss the bankrupt personal care owner and now sue the Commonwealth. Mr. Geness cites "recently discovered case law" supporting an Americans with Disabilities Act claim against the Commonwealth of Pennsylvania.[4]

**II. Analysis**

Mr. Geness' proposed claim is the Commonwealth of Pennsylvania, through the Fayette County Court of Common Pleas, violated the Act because the "Commonwealth's Judges repeatedly issued orders based on the possibility of Plaintiff regaining competency to stand trial when medical evidence clearly demonstrated that Plaintiff's disability was permanent and not treatable." Mr. Geness also alleges Fayette County Court of Common Pleas' failure to hear or rule on his four *habeas corpus* petitions and the court's *nolle prosequi* order as violating the Act.

4

Under Fed. R. Civ. P. 15, we consider factors "such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.- the leave sought should, as the rules require, be 'freely given.'"[5] The two key factors we consider for Mr. Geness' motion are undue delay and futility.

Mr. Geness sued on June 17, 2016 and withdrew his Act claim against the County of Fayette on November 10, 2016. Eight months after filing his complaint and four months after withdrawing his Act claim, Mr. Geness moves to amend based on "recently discovered case law." Mr. Geness' counsel is referring to his discovery of a nearly thirteen year old Supreme Court case *Tennessee v. Lane*.[6]

Mr. Geness does not explain how this 2004 Supreme Court precedent is "recently discovered." His proposed factual allegations in his amended complaint supporting this claim against the Commonwealth under the Act are identical to those in his June 17, 2016 complaint against Fayette County. We find Mr. Geness' unexplained delay in locating a nearly thirteen year old Supreme Court case lacks merit. As shown below, we also find his amended claim against the Commonwealth is futile.

### A. Mr. Geness' amended claim against the Commonwealth is not barred by sovereign immunity.

We cannot find precedent for a disabled person stating a claim under the Act by alleging the state court system denied him access on the basis of his mental illness by ordering competency evaluations, failing to rule on his *habeas corpus* petitions, and the content of a court's *nolle prosequi* order. Mr. Geness does not cite cases supporting his theory. Mr. Geness instead asks us to find a state court's rulings, or lack thereof, discriminated against him on the basis of his mental disability.

5

Mr. Geness is correct in his basic argument regarding *Lane*. In *Lane*, physically disabled individuals who could not physically access the state courthouse brought a claim against Tennessee under Title II of the ADA.[7] Tennessee argued sovereign immunity protected it from suit under Title II of the ADA because Congress did not validly abrogate its immunity. The Supreme Court determined Congress validly abrogated sovereign immunity through § 5 of the Fourteenth Amendment when it enacted Title II of the ADA "as it applies to the class of cases implicating the accessibility of judicial services."[8] The Supreme Court held a private litigant could "enforce the constitutional right of access to the courts" through Title II of the ADA.[9] We follow *Lane* and hold Pennsylvania could be liable under the Act under facts giving rise to a claim under the Act.

While *Lane* applied to physical access to the courthouse, it did not address access to courts for mental disabilities. The closest precedent we can find is a *pro se* plaintiff alleging a claim the Commonwealth denied him access to the criminal justice system by failing to accommodate his mental disabilities in *Davila v. Commonwealth*.[10] The plaintiff alleged the Commonwealth failed to accommodate his mental disabilities by, among other things, failing to provide him a mental health specialist to help him understand the proceedings equal to a non-disabled person.[11]

In *Davila,* the court evaluated Title II of the Act providing "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[12] The elements of this claim are (1) plaintiff is disabled; (2) plaintiff is otherwise qualified to participate in the service, programs, or activity of the public entity; and, (3) plaintiff is denied the benefits of the service, program, or activity or is

discriminated against on the basis of his disability.[13] A plaintiff does not need to prove a public entity deliberately discriminated against him; a plaintiff can assert the public entity failed to reasonably accommodate his disability.[14] In a failure to accommodate claim, "the plaintiff must demonstrate that, but for the failure to accommodate, he would not be deprived of the benefit he seeks."[15]

Our Court of Appeals instructs providing a disabled person access to a program is not enough but the disabled person "must be provided with meaningful access."[16] Regulations under the Act require public entities afford a disabled person with "an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others" and they must "take appropriate steps to ensure that communications with…participants…with disabilities are as effective as communications with others."[17]

In *Davila*, the court held a plaintiff could state a claim under Title II of the Act alleging the Commonwealth denied him access to the criminal justice system by failing to accommodate his mental disabilities so he could be afforded the same access and communications as non-disabled defendants.[18] The court, however, granted summary judgment for the defendant based on plaintiff's failure to factually support his claims and failure to show injury under the Act.[19]

As in *Davila,* we could find a claim under the Act against the Commonwealth if the disabled party can state a claim. But this is not the case.

**B. Mr. Geness' claim against Pennsylvania is barred by *Rooker-Feldman*.**

This case presents a vastly different fact pattern warranting a different result. Mr. Geness' allegations are not premised on lack of accommodations to provide equal access to either a building or professional assistance but a direct challenge to a state court's orders and judgments.

7

Mr. Geness' claim under the Act is squarely barred by the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine bars federal jurisdiction under two circumstances: if the claim was 'actually litigated' in state court or if the claim is 'inextricably intertwined' with the state adjudication."[20] "State and federal claims are inextricably intertwined '(1) when in order to grant the federal plaintiff the relief sought the federal court must determine that the state court judgment was erroneously entered' [or] (2) when 'the federal court must…take action that would render [the state court's'] judgment ineffectual.'"[21]

To find the Commonwealth denied Mr. Geness access to the courts, as plead, we would have to find the state court "erroneously entered" orders and judgments.[22] We would need to act as an appellate court or be considering a timely and exhausted *habeas corpus* petition. We see no basis, and counsel has not cited a basis, to use the Act as another challenge to state court criminal rulings. In contrast, we would have a different analysis had Mr. Geness timely alleged the deprivation of certain privileges in the state courts by not providing him with the assistance necessary for his disabilities. But Mr. Geness challenges only the prudence or legality of decisions made by state judges long ago in a criminal case. This "contrary decision by [us] on an issue resolved on the merits by a state court is precisely the brand of federal appellate review that *Rooker-Feldman* is intended to prevent."[23]

### III. Conclusion

In the accompanying Order, we grant Mr. Geness leave to amend his complaint to remove Defendant Jean McVey and his conspiracy claim against Defendant Cox and Jean McVey. He has not stated a claim against the Commonwealth under the Act. At best, he states a claim to correct a state court's procedures but these claims have no nexus to the Act. We have no basis to find a state court's rulings affecting a disabled person, absent physical impossibility

8

or interference or failure to provide assistance violates the Act. If we were to hold otherwise, we would transform the Act into a quasi-*habeas* challenge to state court final rulings in a criminal case with a disabled defendant. We deny Mr. Geness leave to add a disabilities claim against the Commonwealth because his allegations are barred by the *Rooker-Feldman* doctrine.

---

[1] ECF Doc. No. 1.

[2] ECF Doc. No. 34.

[3] ECF Doc. No. 43.

[4] ECF Doc. No. 76.

[5] *Payne v. DeLuca*, No. 02-1926, 2006 WL 3590014, at *9 (W.D. Dec. 11, 2006)(quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[6] *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004).

[7] *Lane*, 541 U.S. at 513-14.

[8] *Id*. at 530.

[9] *Id*. at 530; s*ee also Muhammed v. Court of Common Pleas of Alleghany County, Pa.*, 483 Fed. Appx. 759, 764 (3d Cir. 2012) (Court of Appeals held a visually impaired plaintiff stated a claim under the ADA because he "was unable to participate in [the state court system] in the manner a non-visually impaired individual could because he was not provided with an assistive device).

[10] *Davila v. Commonwealth of Pennsylvania*, No. 11-1092, 2016 WL 873237, at *3 (Jan. 20, 2016)(*report and recommendation adopted sub nom. Davila v. Commonwealth of Pennsylvania*, No. 11-1092, 2016 WL 861884 (M.D. Pa. Mar. 7, 2016)). Mr. Davila appealed and our Court of Appeals dismissed his appeal for failure to file a brief. *See* Docket for Appeal No. 16-1657 (3d Cir.)

[11] *Id*. at 3.

[12] *Id*. at 5 (quoting 42 U.S.C. § 12132(1)).

[13] *See id*.

[14] *See id.* at 6.

[15] *Id.* at 6 (quoting *Muhammad*, 483 Fed. Appx. At 764).

[16] *Id.* (quoting *C.G. v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 237 (3d Cir. 2013)(internal citations omitted)).

[17] *Id.* at 5 (citing 28 C.F.R. §§ 35.130(b)(1)(ii) and 35.160(a)(1)).

[18] *Davila,* 2016 WL 873237, at *3.

[19] *Id.* at 7-8.

[20] *ITT Corp. v. Intelnet Intern.*, 366 F.3d 205, 210 (3d Cir. 2004)(quoting *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003)).

[21] *Id.* (quoting *Desi's Pizza*, 321 F.3d at 421 and *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996)).

[22] *See id.*

[23] *Id.*