## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CRAIG A. GENESS** | **: CIVIL ACTION** |
| | : |
| v. | : |
| | : **NO. 16-876** |
| **JASON COX** | : |

## MEMORANDUM

**KEARNEY, J.**                                                     **May 1, 2017**

Our best hopes for a just community include the proper treatment of the mentally challenged. For example, courts will not proceed on criminal charges against a mentally challenged person found not competent to stand trial. We expect our police officers treat the mentally challenged with respect, even when they interview him suspecting criminal conduct. To ensure these steps, we repose trust in publicly-funded and appointed defense attorneys to fully protect the mentally challenged and not overlook their presumed innocence when they are not immediately ready to stand trial. We also must expect *pro bono* attorneys to vigorously pursue a client's cause. The mentally challenged have the same constitutional rights afforded to all citizens under our civil rights laws. They should not wait for almost ten years of pre-trial custody with delays for fruitless competency evaluations. We expect counsel challenging a questionably obtained confession from a mentally challenged man will uncover facts and timely pursue claims. Lawyers, particularly public defenders, should not be intimidated into prejudicial inaction by any court or prosecutor, regardless of how insular a Bar, but instead proceed emboldened by the citizen's constitutional rights. Today, after finally bringing constitutional claims ten years after an allegedly coerced confession from a mentally challenged man and following months of discovery, the mentally challenged man's counsel has not adduced evidence

of the arresting police officer's false arrest, false imprisonment, reckless investigation, and intentional infliction of emotional distress. We cannot contemplate the possible evidence when the lawyers cannot produce it. But even if we divined some evidence, these claims are barred by the two year statute of limitations as counsel knew of these facts then being litigated in state court in 2012 but did not file this action until 2016. We grant the officer's motion for summary judgment in the accompanying Order.

## I.    Undisputed Facts[1]

With an IQ of 61,[2] Craig Geness has mild mental retardation, Schizoaffective Personality Disorder, and intermittent explosive disorder.[3] Mr. Geness' Schizoaffective Personality Disorder and mild mental retardation makes him unable to process normal communications and emotions.[4]

In October 2006, then 39 year old Craig Geness resided in McVey's Personal Care Home.[5] On October 27, 2006, another resident of McVey's Personal Care Home, Ronald Fiffik, fell from either the steps or the porch of the group home.[6] Whether he accidentally fell or Mr. Geness pushed him is disputed. The fall injured Mr. Fiffik and someone from McVey's Personal Care Home called an ambulance.[7] The hospital admitted, treated and released Mr. Fiffik but he remained in pain and returned to the hospital the next day, October 28, 2006.[8] Sometime between October 28, 2006 and November 11, 2006, Mr. Fiffik's condition deteriorated and by November 11, 2016, the hospital placed him on life support and did not expect him to live.[9]

On November 11, 2006, Mr. Fiffik's daughter, Rhonda, spoke to Officer Kolencik at Union Police Department.[10] Ms. Fiffik "said she suspects some type of foul play involving [her father's] fall...[and] requested police look into the matter as this may have been a homicide."[11] Office Kolencik referred the case to then Detective Jason Cox.[12]

2

Detective Cox began investigating Mr. Fiffik's fall.[13]  In his Incident Report, Detective Cox noted Chief Leichter of the Uniontown Hospital Police stated Mr. Fiffik "was possibly shoved from the wall by another resident at the home."[14]  Also in his Incident Report, Detective Cox recorded he visited McVey's Personal Care Home and spoke to James McVey.[15]  Mr. McVey reported to Detective Cox when Mr. Fiffik fell, he heard Mr. Geness "scream 'shut up' while he was outside."  Mr. McVey stated that he then walked from the kitchen towards the front door, and observed Craig Geness walking in the front door."[16]  Mr. McVey stated Mr. Geness then went upstairs and he went outside and saw Mr. Fiffik "laying on the ground" in front of the house.[17]  Mr. McVey informed Detective Cox "he felt Craig shoved Fiffik, and a 302 warrant was issued for Craig. James advised that Craig Geness was currently at Highlands Hospital.[18]

Detective Cox reports he then went to Highlands Hospital where a nurse arranged for him to interview Mr. Geness.[19]  Detective Cox "read Craig his *Miranda* warnings, and asked if he would speak with me concerning the incident.  Craig signed advising that he understood his rights, and signed advising that he was willing to speak with me concerning the incident."[20]  Detective Cox then asked Mr. Geness who the president was and what the date was and reported Mr. Geness answered both correctly.[21]  Mr. Geness also represented he graduated from high school.[22]  Mr. Geness then told Detective Cox on the day of Mr. Fiffik's fall "he observed Ronald Fiffik sitting on the porch wall next to the door.  Craig stated that as he was walking up the stairs Fiffik said something to him, and he screamed at Fiffik 'shut up.'  Craig stated that voices insider his head told him to push Fiffik over the wall.  Craig then stated that he shoved Fiffik hard, pushing him over the wall, went up to his bedroom, and shut the door."[23]

On November 17, 2006, Detective Cox swore an arrest warrant against Mr. Geness for felony aggravated assault.[24]  Detective Cox attached an affidavit on probable cause to Mr.

3

Geness' arrest warrant.[25] Detective Cox swears Mr. McVey "stated that in the early morning hours on 10-28-2006 Fiffik told him that someone pushed him off the wall. However, he did not say who pushed him."[26] Detective Cox then swears on November 16, 2006 he went to Highlands Hospital to speak with Mr. Geness.[27] He also swears he read Mr. Geness his *Miranda* warning and Mr. Geness understood his rights and waived them.[28] Detective Cox swore Mr. Geness stated "he observed Ronald Fiffik sitting on the porch wall next to the door. Craig stated that as he was walking up the stairs Fiffik said something to him, and he screamed at Fiffik 'shut up.' Craig stated that voices inside his head told him to push Fiffik over the wall. Craig then stated that he shoved Fiffik hard, pushing him over the wall, went up to his bedroom, and shut the door."[29]

On November 17, 2006, Magisterial District Judge Robert W. Breakiron reviewed Detective Cox's affidavit for probable cause and then signed a Criminal Complaint charging Mr. Geness with aggravated assault and issued an arrest warrant.[30] The same day, Detective Cox arrested Mr. Geness and Judge Breakiron arraigned Mr. Geness on aggravated assault charges.[31]

Mr. Fiffik died a few days later and the forensic pathologist opined his manner of death is homicide.[32] On November 20, 2006, Detective Cox charged Mr. Geness with homicide based on the same allegations and Judge Breakiron arraigned Mr. Geness on the homicide charges.[33] A member of the Fayette County Public Defender's Office represented Mr. Geness in magisterial preliminary hearing on April 3, 2007.[34] The judge held Mr. Geness over for court on homicide charges.[35]

On May 21, 2007, Public Defender Jeffery Whiteko entered his appearance on behalf on Mr. Geness in the Fayette County Court of Common Pleas.[36] On June 18, 2007, Defender Whiteko and Assistant Public Defender Mary Campbell Spegar filed an Omnibus pre-trial

4

motion on behalf of Mr. Geness.[37]  The Defenders moved to suppress Mr. Geness' written and oral statements because "they were taken in violation of Mr. Geness' constitutional rights."[38] The Defenders also argued the officers lacked probable cause to arrest Mr. Geness.[39]

The state court deemed Mr. Geness incompetent to stand trial and almost **five** years passed while the court held him, either in jail, mental hospital, or a residential home with electronic court monitoring.

On March 12, **2012**, Attorney Bernadette Ida Tummons entered her appearance on behalf of Mr. Geness.[40]  Attorney Tummons represented Mr. Geness in all his legal cases, not only the pending homicide charges from Mr. Fiffik's death.[41]  At the start of her representation, Attorney Tummons met with Mr. Geness and reviewed his file including Detective Cox's incident report and affidavit for probable cause and the June 18, 2007 Omnibus Pre-trial Motion which challenged the constitutionality of Mr. Geness' statements to Detective Cox and the whether Detective Cox had probable cause to arrest Mr. Geness.[42]  Over three years later, on **May 11, 2015**, Attorney Tummons filed a Motion to dismiss, writ of habeas corpus, and Omnibus Pre-trial Motion.[43]  In her motion, Attorney Tummons referenced the Defender's June 18, 2007 motion challenging probable cause and Mr. Geness' waiver of his constitutional rights.[44] Attorney Tummons argued the police lacked probable cause to arrest Mr. Geness.[45]  Attorney Tummons also argued Mr. Geness did not make a knowing, voluntary, and intelligent waiver of his constitutional rights because "a patient in the mental health ward at Highlands Hospital, did not have the mental capacity, nor having an understanding sufficient" to do so and the state court must suppress Mr. Geness' statements made to Detective Cox.[46]  On June 22, 2015, the court compelled the district attorney to turn over all discovery in Mr. Geness' case which contained the Emergency Medical Services and hospital admission reports for Mr. Fiffik's fall.[47]

5

On December 10, 2015, Fayette County Judge Leskinen granted Fayette County's request to *nolle prosequi* all charges against Mr. Geness without prejudice because "while there was clearly sufficient probable cause to file a criminal complaint," Mr. Geness has been and remains incompetent to stand trial. [48]

On June 17, 2016, Mr. Geness sued Detective Cox alleging false arrest, false imprisonment, malicious prosecution, reckless investigation, equal protection, conspiracy to violate his constitutional rights, and intentional infliction of emotion distress.[49] On November 9, 2016, we dismissed Mr. Geness' equal protection and malicious prosecution claims against Detective Cox.[50] On March 27, 2017, Mr. Geness amended his Complaint withdrawing his conspiracy claim against Detective Cox.

## II. Analysis

Detective Cox moves for summary judgment on Mr. Geness' false arrest, false imprisonment, reckless investigation, and intentional infliction of emotional distress claims arguing Mr. Geness failed to prove Detective Cox held him without legal process, failed to adduce any evidence of Mr. Geness' emotional distress, and Mr. Geness' claims are barred by the two year statute of limitations.[51] Mr. Geness argues there are genuine disputes of material fact regarding whether Detective Cox had probable cause and the statute of limitations tolls due to Mr. Geness' mental incapacity. We dismiss Mr. Geness' false arrest, false imprisonment, reckless investigation, and intentional infliction of emotional distress claims because he fails to adduce evidence sufficient to proceed to trial on these claims. Even if Mr. Geness did adduce evidence of his claims, he is barred by Pennsylvania's two year statute of limitations as he had the benefit of counsel in 2012 who knew of the facts but did not pursue a remedy until another counsel filed this case in June 2016.

6

## A. Mr. Geness does not adduce evidence Detective Cox lacked probable cause.

We analyze Mr. Geness' false arrest and false imprisonment claims together.[52] Mr. Geness must first show Detective Cox lacked probable cause when swearing his arrest warrant against Mr. Geness. If Mr. Geness proves Detective Cox lacks probable cause, he must then overcome Detective Cox's qualified immunity and show no reasonable well-trained officer would rely on Detective Cox's affidavit of probable cause.

### 1. Detective Cox had probable cause to arrest Mr. Geness.

Mr. Geness must prove: "(1) [Detective Cox] knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and, (2) that such statements or omissions are material, or necessary to the finding of probable cause."[53] Detective Cox's arrest of Mr. Geness is made with probable cause if "at the moment the arrest was made…the facts and circumstances within [Detective Cox's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [Mr. Geness] had committed or was committing an offense."[54]

Detective Cox's knowledge at the moment of Mr. Geness' arrest comes without contradiction because Mr. Geness elected not to depose Detective Cox. In the affidavit to the arrest warrant, Detective Cox swears Mr. Geness knowingly waived his constitutional rights and discloses he interviewed Mr. Geness in Highlands Hospital. Detective Cox swears Mr. Geness stated "he observed Ronald Fiffik sitting on the porch wall next to the door. Craig stated that as he was walking up the stairs Fiffik said something to him, and he screamed at Fiffik 'shut up.' Craig stated that voices insider his head told him to push Fiffik over the wall. Craig then stated

7

that he shoved Fiffik hard, pushing him over the wall, went up to his bedroom, and shut the door."[55]

The facts and circumstances detailed in Detective Cox's incident report supports his probable cause. Detective Cox states his superior directed him to investigate Mr. Fiffik's fall due to suspicion someone pushed him. In the course of his investigation, Detective Cox spoke with James McVey who recounted when he heard Mr. Geness yell "shut up" he walked towards the front door. Mr. McVey saw Mr. Geness come through the front door, go upstairs and then Mr. McVey walked through the front door and saw Mr. Fiffik on the ground. Mr. Geness produced no evidence Detective Cox should have doubted Mr. McVey's version of the events.[56]

Mr. Geness argues Detective Cox lacked probable cause because Detective Cox's probable cause is based on Mr. Geness' "coerced confession."[57] Pennsylvania has no "*per se* rule of incapacity to waive constitutional rights based on mental deficiencies."[58] The fact [Mr. Geness] has a low I.Q. does not in and of itself render his confession involuntary."[59] We review the facts and circumstances to determine if Mr. Geness' made a knowing, voluntary, and intelligent waiver of his constitutional rights.[60]

Detective Cox's affidavit sworn on March 16, 2017 states he advised Mr. Geness of his rights and believed Mr. Geness understood his rights and his reason for asking him questions.[61] Mr. Geness signed a waiver of his constitutional rights.[62] Detective Cox then swore Mr. Geness knew the correct date, day of the week, the correct president, and advised Detective Cox he graduated high school.[63] Detective Cox "believed that Craig A. Geness was able to continue with the interview and understood what I had explained to him regarding his rights and my purposes for being there to speak with him."[64]

8

Mr. Geness argues he is unable to understand Detective Cox's reasons for interrogating him due to his mental health condition. Mr. Geness directs us to testimony from Dr. Scott Tracy at a July 15, 2015 state court competency hearing. In the hearing, Dr. Tracy opines Mr. Geness cannot and will not ever be able to assist in his legal defense.[65] Dr. Tracy opined Mr. Geness' mental health condition makes him agreeable to whatever prompt another person gives him in conversation, regardless of veracity.[66] When asked by Attorney Tummons if Mr. Geness would have followed prompts or suggestions in conversation in 2006, Dr. Tracy responded "[a]gain, I didn't know or was able to interview him at the time, but the evidence that I am looking at from his medical records would also suggest that that has never changed."[67] Dr. Tracy never opines whether Mr. Geness could never make a knowing, voluntary, and intelligent waiver of his constitutional rights. Mr. Geness produced no expert witnesses opining no reasonable police officer meeting Mr. Geness, without knowing his diagnosis, would automatically be aware Mr. Geness could not understand his constitutional rights. There is no evidence disputing Detective Cox's belief Mr. Geness made a valid waiver and a valid confession.

While Detective Cox's acceptance of Mr. Geness waiver, in light of Dr. Tracy's testimony, does not seem prudent, it is not the perspective from which we evaluate. We evaluate Detective Cox's knowledge "at the moment the arrest was made" and we find "the facts and circumstances within [Detective Cox's] knowledge" were Mr. Geness made a knowing, voluntary, and intelligent waiver of his constitutional rights and stated he pushed Mr. Fiffik off the porch.[68] Mr. Geness adduced no evidence or testimony to create a genuine dispute regarding Detective Cox's belief Mr. Geness made a knowing, voluntary, and intelligent waiver of his constitutional rights.

## 2. Detective Cox is entitled to qualified immunity.

Even if Mr. Geness proved the elements of false arrest and false imprisonment, Detective Cox is entitled to qualified immunity unless "a reasonably well-trained officer in [Detective Cox]'s position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."[69] "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost."[70]

A reasonably well-trained officer would rely on Detective Cox's affidavit to establish probable cause to arrest Mr. Geness. Detective Cox swears Mr. Fiffik told Mr. McVey someone pushed him but did not know who. Detective Cox then swears he interviewed Mr. Geness at Highlands Hospital where Mr. Geness waived his constitutional rights. Detective Cox swears Mr. Geness admitted he pushed Mr. Fiffik because "voices inside his head told him to push Fiffik over the wall."[71] Detective Cox's affidavit acknowledges Mr. Geness has type of mental incapability because it references his statement he obeys voices in his head and his residency at Highlands Hospital. A reasonable well-trained officer would find probable cause to arrest Mr. Geness based on Detective Cox's affidavit recounting the confession. In an ideal criminal justice system, after this arrest attorneys and guardians would intervene to protect Mr. Geness' rights, suppress any statements, and facilitate his full access to justice. But we cannot hold a reasonable well-trained police officer cannot *per se* have probable cause to arrest a person who confesses to a crime because he or she has some form of mental incapability.

Mr. Geness directs us to *People v. Daniels* where the Appellate Court of Illinois found a "defendant lacked mental capacity to knowingly and intelligently waive her constitutional rights."[72] In *Daniels*, the defendant suffered from mild mental retardation, a low I.Q., and

10

impaired social functioning.[73] One evening, defendant arrived at the police station with her three children and told the front desk officers something bad happened at home.[74] When she told the officers she was "involved" with the bad thing, the officer stopped her.[75] The officer explained based on what she said next he might have to charge her with a crime and read her *Miranda* rights to her.[76] The officer then took defendant to an interview room and spoke with her for 15-20 minutes and believed she understood him.[77] The officer did not arrest the defendant then, but placed her and her children in a hotel because she believed the other people involved in the crime were threatening her.[78] The next morning, the officer interviewed the people the defendant implicated in the crime.[79] Based on their responses, the officer went to the hotel and arrested the defendant.[80] At the police station, the officer and state attorney read the defendant her rights; she waived them, and gave another statement.[81] At approximately 3 A.M. the next day, the defendant, without legal representation, consented to give a videotaped confession to the officers and the state's attorney.[82]

At trial, defendant moved to suppress her videotaped confession based on expert testimony she could not made a knowing and intelligent waiver of her constitutional rights.[83] The trial court denied her motion to suppress and admitted the videotape confession.[84] The defendant appealed the trial court's admission of her videotape confession as coerced by an invalid waiver.[85] The Illinois appeals court reversed the trial judge's finding the state's expert credible over the defendant's expert regarding defendant's ability to understand her waiver of constitutional rights because it is not "supported by the manifest weight of the evidence."[86]

*Daniels* does not govern or assist us in evaluating whether Detective Cox had probable cause to arrest Mr. Geness. We note the testimony of the first police officer the defendant confessed she was involved with something bad and knew what happened to the victim was

11

admitted at trial.[87] The defendant did not challenge its admissibility or whether the officers had probable cause to arrest based on her first confession.

We are not deciding the difficult and highly prejudicial question whether to admit Mr. Geness' confession at trial, but whether a reasonable well-trained officer in Detective Cox's place would have relied on Detective Cox's warrant and affidavit of probable cause to arrest Mr. Geness. Detective Cox is entitled to qualified immunity because his affidavit is not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost."[88]

**B.     Mr. Geness does not adduce evidence of a reckless investigation.**

Mr. Geness does not adduce facts showing Detective Cox recklessly investigated Mr. Fiffik's fall. To prove reckless investigation, Mr. Geness must prove Detective Cox "acted intentionally or recklessly, in a manner that shocks the conscience, in failing to investigate."[89]

The evidence from Detective Cox is he received the case from another officer to investigate and he then spoke with Chief Leichter of the Uniontown Hospital Police.[90] Chief Leichter told Detective Cox Mr. Fiffik may have been pushed by someone.[91] At this point, Mr. Fiffik is on a ventilator and declining.[92] Detective Cox then spoke with Mr. McVey who was present when Mr. Fiffik fell but did not witness it.[93] Mr. McVey described hearing Mr. Geness yell at Mr. Fiffik out front of the house and then come through the front door and go upstairs.[94] Mr. McVey then went out the front door and saw Mr. Fiffik laying on the ground in front of the porch.[95] Based on this information, Detective Cox then proceeded to interview Mr. Geness. We find no evidence of recklessness in Detective Cox's investigation. There is no evidence he ignored Mr. Geness' alibi or refused to investigate another likely suspect.

12

We are aware Detective Cox's incident report, affidavit for probable cause, and March 16, 2017 affidavit contain discrepancies. For example, in his earlier incident report he describes Mr. McVey's narrative of Mr. Fiffik's fall in detail while in his affidavit for probable cause he swears Mr. McVey reported Mr. Fiffik told him (Mr. McVey) he was pushed but did not know who did it.[96] Also Detective Cox's March 16, 2017 affidavit states Mr. Fiffik's daughter told him Mr. Geness pushed her father on the porch but this fact is not in the earlier incident report or affidavit of probable cause.[97] Unlike the typical case where an officer omits facts which detract from the probable cause affidavit, here, Detective Cox omitted facts which would have increased his already present probable cause. We do not find these discrepancies amount to a material dispute of genuine fact regarding Detective Cox's investigation.

Mr. Geness argues Detective Cox conducted a reckless investigation because he coerced a confession from Mr. Geness and "the facts taken from the documents in the record, which provide insight as to what information [Detective Cox] had access to prior to securing [Mr. Geness]'s arrest are inconsistent."[98] As we held for Mr. Geness' false arrest and false imprisonment claims, Detective Cox properly interviewed Mr. Geness because Detective Cox believed Mr. Geness made a knowing, voluntary, and intelligent waiver of his constitutional rights.

Mr. Geness' second argument is there are inconsistencies in documents existing when Detective Cox conducted his investigation so there are genuine disputes of material fact. Mr. Geness' argument fails. Mr. Geness argues Detective Cox could not believe Ms. Fiffik, Chief Leichter, or a hospital employee who told him Mr. Fiffik was or may have be shoved by another person because they did not witness it. Mr. Geness' theory would restrict police investigations to uselessness. No one but Mr. Fiffik and the alleged person who shoved him witnessed the

13

incident and, by the time Detective Cox began investigating, the hospital placed the dying Mr. Fiffik on a ventilator and he could not recount his story. Under Mr. Geness' argument, Mr. Fiffik's grievous injury/homicide should have gone uninvestigated because Detective Cox cannot rely on the other persons' belief someone shoved Mr. Fiffik (even if they were told by the now incapacitated Mr. Fiffik) because they did not witness the incident. We do not agree. Detective Cox did not conduct a witch hunt. The original responding officer referred him the case to investigate and he did so reasonably by asking the victim's family and nursing staff and then asking people who were present during the incident.

Mr. Geness also cites the EMS report statement from Mr. Fiffik's wife of him falling down the steps and the Uniontown Hospital record stating Mr. Fiffik is unsteady on his feet and not supposed to go near stairs.[99] Detective Cox's uncontradicted testimony is he did not see either of these documents while investigating Mr. Fiffik's fall.[100] Additionally, when Mr. Fiffik died, the forensic pathologist opined the manner of Mr. Fiffik's death is homicide.[101] In light of the facts and circumstances, it is not reckless for Detective Cox to believe someone pushed Mr. Fiffik and investigate it as a possible crime without investigating whether Mr. Fiffik fell particularly where, two days after Mr. Geness confessed to pushing Mr. Fiffik, the forensic pathologist ruled Mr. Fiffik's death a homicide.

## C. Mr. Geness does not adduce evidence of intentional infliction of emotional distress.

To prove intentional infliction of emotional distress, Mr. Geness must "demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotion distress to [Mr. Geness].'"[102] Mr. Geness must also prove the severe emotional distress he suffered caused "some type of physical harm due to [Detective Cox's] outrageous conduct."[103] Where a defendant claims "extreme and outrageous" conduct in the context of an arrest, whether

14

the officer had probable cause for the arrest is persuasive.[104]

Detective Cox's conduct in interviewing Mr. Geness based on Mr. McVey's narrative is not intentionally outrageous or extreme. Detective Cox believed Mr. Geness made a valid waiver of his constitutional rights and at the time, Detective Cox did not know Mr. Geness' mental health diagnosis. Detective Cox's conduct in interviewing and arresting Mr. Geness is not "beyond all possible bounds of decent, and to be regarded as atrocious, and utterly intolerable in a civilized community."[105]

Mr. Geness also provided no expert or medical testimony regarding Mr. Geness' severe emotional distress and its physical effect on him. Instead, he relies on our Memorandum responding to a motion to dismiss where we accepted Mr. Geness' allegations are true. In light of the facts adduced during discovery and Mr. Geness' failure to provide conflicting testimony from Detective Cox or evidence of Mr. Geness' severe emotional distress, Mr. Geness does not prove intentional infliction of emotional distress.

**D.  Mr. Geness claims are barred by the statute of limitations.**

Mr. Geness' four claims have a statute of limitations of two years. His three § 1983 claims expired at the absolute latest on April 3, 2009, two years after the magistrate judge held Mr. Geness over for court on homicide charges.[106] His intentional infliction of emotional distress claim expired on November 16, 2008, two years after Detective Cox interviewed him. We gave Mr. Geness the opportunity through discovery to show the two year statute of limitations should toll. Following discovery and close review of the facts adduced by the parties, we find no evidence allowing us to toll the statute of limitations any further than 2012.

We sidestep the question whether the public defender's knowledge of Mr. Geness' constitutional injury can be imputed onto Mr. Geness or if restrictions on the scope of their

representation of criminal defendants bar the inference. Instead, we focus directly on Attorney Tummons' 2012-2015 representation of Mr. Geness. Mr. Geness' present lawyer argues he can never understand the legal process and he places the accrual date of his constitutional injury on Attorney Tummons' receipt of the court ordered discovery in June 2015.[107]

Under the federal and Pennsylvania discovery rule, the statute of limitations begins when the injured party discovers or should have discovered with reasonable diligence he has been injured and his injury is caused by another party's conduct.[108] The crux of Mr. Geness' four claims is Detective Cox violated Mr. Geness' constitutional rights by "coercing" his confession without a knowing, voluntary, and intelligent waiver of his *Miranda* rights. Attorney Tummons became aware of Mr. Geness' alleged constitutional injuries shortly after she began representing him in March 2012.[109] Mr. Geness did not need the 2015 discovery from the Fayette County District Attorney's Office to discover this injury. She admittedly reviewed the long-pending omnibus motion to suppress. She sought no expedited consideration of the suppression motion.

These issues are evident from Detective Cox's incident report and affidavit of probable cause which Attorney Tummons testified she had shortly after starting her representation in 2012.[110] Attorney Tummons testified she met with Mr. Geness at the outset of her representation and she represented Mr. Geness in all his legal cases, not only the pending homicide charges from Mr. Fiffik's death.[111] Attorney Tummons testified she reviewed the Defenders' June 18, 2007 omnibus pre-trial motion where the Defenders moved to suppress his written and oral statements because "they were taken in violation of Mr. Geness' constitutional rights" and argued the officers lacked probable cause to arrest Mr. Geness.[112]

Attorney Tummons knew (or certainly should have known) of the issues surrounding Mr. Geness' alleged coerced confession in approximately March 2012. She met Mr. Geness, she saw

16

Detective Cox's affidavit of probable cause, and she learned the public defenders had already challenged Mr. Geness' waiver of his *Miranda* rights and Detective Cox's lack of probable cause. Attorney Tummons had all of the knowledge to bring Mr. Geness' § 1983 claims then but she chose not to. Nothing in the June 2015 discovery would have added to Mr. Geness' claims concerning Detective Cox's November 16, 2006 interview at Highlands Hospital except to bolster factual allegations for his reckless investigation claim.

We find particularly important Attorney Tummons met with Mr. Geness, in light of the argument Detective Cox should have been aware Mr. Geness could not make a knowing, voluntary, and intelligent waiver of his constitutional rights just based on physically speaking to him, without knowledge of his mental health diagnosis. If Mr. Geness' condition should have been immediately evident to Detective Cox, it also should be been immediately evident to Attorney Tummons when she met him. Attorney Tummons knew all the facts necessary to bring Mr. Geness' false arrest, false imprisonment, reckless investigation, and intentional infliction of emotional distress claims in March 2012. At this moment, the two year statute of limitations began to run and expired in March 2014. Mr. Geness' claims brought on June 17, 2016 are barred by the statute of limitations.

Mr. Geness' reasons for failing to timely file this civil rights case are equally unavailing. Attorney Tummons swears in March 2012 she informally requested discovery from the District Attorney and did not move to compel discovery until **June 2014** because it would "be seen as a violation of commonly accepted defense practices in Fayette County, that such a motion would not have been successful, and would have soured her already tenuous relationship with the Office of the District Attorney."[113]   Compounding this cowardice, during oral argument on motions to dismiss, Mr. Geness' present counsel presented a similar argument. Mr. Geness'

17

counsel guaranteed this Court didn't "know enough about Fayette County...when that DA doesn't want to give something, it takes somebody willing...to be held in contempt...if you're the public defender down there whose next judge is going to be the DA, you're not doing that to the DA."[114] We have no evidence besides counsels' "guarantee" of this perceived intimidation arising from an insular Bar. Attorney Tummons' professional duty not to prejudice her client's rights outweighs her professional standing with the District Attorney and her fear of violating local customs or even the next state court judge.

In March 2012, Attorney Tummons had the necessary information to challenge the violations of Mr. Geness' constitutional rights in this Court and timely protect Mr. Geness at the federal level, particularly, if she felt strongly the state level protections were not adequate. We must trust *pro bono* lawyers, albeit having to live in the real world and not in a constitutional torts law school classroom, will still timely bring these claims, adduce evidence and allow our juries speak truth to power.

## III. Conclusion

We dismiss Mr. Geness' false arrest, false imprisonment, reckless investigation, and intentional infliction of emotional distress claims because he fails to adduce evidence of these claims. Even if Mr. Geness did adduce evidence of his claims, he is barred by the statute of limitations.

---

[1] We consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to" Mr. Geness "the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). Our Policies require a Statement of Undisputed Material Facts be filed in support of a Rule 56 motion, as well as an appendix of exhibits. Detective Cox filed its Statement of Undisputed Material Facts and Appendix at ECF Doc. No. 88-89. Mr. Geness responded to Detective Cox's Statement of Undisputed Facts at ECF Doc. No. 103 and additional Appendix at ECF Doc. No. 104. Detective Cox responded to Mr. Geness' additional Statement of Undisputed Facts at ECF Doc. No. 105.

In his response to Detective Cox's Statement of Undisputed Facts, Mr. Geness often states he "is without knowledge or information sufficient to form an opinion as to the truth or falsity of the allegations set forth in this paragraph. Therefore, the same are denied and strict proof thereof is demanded at the time of trial." *See e.g.*, ECF Doc. No. 103 ¶ 6. Mr. Geness cannot simply deny facts at summary judgment stage, he needed to obtain discovery to adduce conflicting testimony. At this stage, he "must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact." *Sallavanti v. Unum Life Ins. Co., of Am.*, 980 F. Supp. 2d 664, 666 (M.D. Pa. 2013) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). We do not accept Mr. Geness' bald denial of Detective Cox's facts creates a genuine dispute of material fact where the record does not contradict Detective Cox's facts.

[2] ECF Doc. No. 103 ¶ 139; ECF Doc. No. 104 at 16.

[3] ECF Doc. No. 103 ¶ 140; ECF Doc. No. 105 ¶ 140.

[4] ECF Doc. No. 103 ¶ 141.

[5] ECF Doc. No. 88 ¶ 1.

[6] ECF Doc. No. 103 ¶ 3.

[7] ECF Doc. No. 88¶ 11, ECF Doc. No. 103 ¶ 11.

[8] ECF Doc. No. 88 ¶¶ 14, 15.

[9] ECF Doc. No. 89 at 5.

[10] *Id.*

[11] *Id.*

[12] ECF Doc. No. 88 ¶ 16.

[13] *Id.* ¶ 17.

[14] ECF Doc. No. 89 at 6.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

19

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] ECF Doc. No. 88 ¶¶ 40-42.

[25] ECF Doc. No. 89 at 32.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] ECF Doc. No. 88 ¶¶ 41-44; ECF Doc. No. 89 at 31.

[31] ECF Doc. No. 88 ¶¶ 45-46.

[32] ECF Doc. No. 89 at 48.

[33] ECF Doc. No. 88 ¶¶ 47, 49-50.

[34] *Id.* ¶¶ 52-53.

[35] *Id.* ¶¶ 53.

[36] *Id.* ¶ 54.

[37] *Id.* ¶ 56.

[38] ECF Doc. No. 89-2 at 96.

[39] *Id.* at 97.

[40] ECF Doc. No. 88 ¶ 65.

[41] ECF Doc. No. 89-1 at 86.

[42] *Id.* at 99-100.

[43] ECF Doc. No. 89-3 at 15.

[44] *Id.* at 16.

[45] *Id.* at 18.

[46] *Id.* at 20.

[47] ECF Doc. No. 89 at 24.

[48] *Id.* at 27.

[49] ECF Doc. No. 1. Mr. Geness also sued Fayette County, Jean McVey, and James McVey. We dismissed or Mr. Geness withdrew all claims against them.

[50] ECF Doc. No. 30.

[51] Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle*, 435 F.3d at 264 (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

[52] *See Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 573 n. 8 (E.D. Pa. 2005) (citing *Maiale v. Youse,* No. 03–5450, 2004 WL 1925004, at \*12 (E.D.Pa. Aug.27, 2004) and *Gagliardi v. Lynn,* 446 Pa. 144, 285 A.2d 109, 110 (1971)) ("False arrest and false imprisonment claims are 'nearly identical claims,' and 'are generally analyzed together'").

[53] *Dietrich v. Weibel*, No. 13-1404, 2014 WL 807987 at \*4 (W.D. Pa. Feb. 28, 2014) (quoting *Toribio v. Spece*, 558 Fed.Appx. 227, 229 (3d Cir. 2014)).

[54] *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

[55] ECF Doc. No. 89 at 32.

[56] Almost 10 years later, Mr. McVey testified to the same recollection of hearing Mr. Geness yell, seeing him come through the front door and up the stairs, then going outside to see Mr. Fiffik laying on the ground. The only minor difference between Detective Cox' summation of Mr. McVey's recollection and Mr. McVey's deposition testimony is Mr. Geness yelled "F*** you" instead of "shut up." ECF Doc. No. 89-1 at 28.

[57] ECF Doc. No. 102 at 11.

[58] *Whitney v. Horn*, 2008 WL 4761733 at *9 (E.D. Pa. Oct. 20, 2008) (quoting *Commonwealth v. Whitney*, 512 A.2d 1152, 1156 (Pa. 1986) and *Commonwealth v. Hicks*, 353 A.2d 803 (1976)).

[59] *Id.* (quoting *Commonwealth v. Whitney*, 512 A.2d at 1156-57) (internal citations omitted)).

[60] *See id.*

[61] ECF Doc. No. 89 ¶ 30. We understand Mr. Geness' counsel likely cannot depose Mr. Geness to offer his version of the events, however, we are unable to understand counsel's strategy in not deposing Detective Cox to challenge his claim Mr. Geness made a knowing, voluntary, and intelligent waiver.

[62] ECF Doc. No. 89 ¶ 32.

[63] *Id.* ¶¶ 33-37.

[64] *Id.* ¶¶ 38.

[65] ECF Doc. No. 104-1 at 23.

[66] *Id.* at 27.

[67] *Id.* at 28.

[68] *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

[69] *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255 (3d Cir. 2010) (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986) and *Orsatti v. N.J. State Police,* 71 F.3d 480, 484–85 (3d Cir.1995)).

[70] *Malley*, 475 U.S. at 344-45(citing *United States v. Leon*, 468 U.S. 897, 923 (1984)).

[71] ECF Doc. No. 89 at 32.

[72] ECF Doc. No. 102 at 12.

[73] *People v. Daniels*, 908 N.E.2d 1104, 1107-08 (Ill. App. 2009).

[74] *Id.* at 1109.

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *Id.* at 1122.

[84] *Id.*

[85] *Id.* at 1128.

[86] *Id.* at 1137.

[87] *Id.* at 1138.

[88] *Malley*, 475 U.S. at 344-45(citing *Leon*, 468 U.S. at 923.

[89] *Thomas v. Stanek*, No. 14-1415, 2015 WL 757574 at *7 (W.D. Pa. Feb. 23, 2015). Mr. Geness acknowledges our Court of Appeals has not recognized a § 1983 claim for reckless investigation but district courts in the Western District and Eastern District have recognized the claim.

[90] ECF Doc. No. 89 at 6; at 38 ¶ 5.

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *Id.*

[96] *Id.*

[97] ECF Doc. No. 89 ¶ 9. We note Ms. McVey testified while she was with Mr. Fiffik in the hospital he stated Mr. Geness "did this to me, he pushed me." ECF Doc. No. 74, 77, 80. Ms. McVey reiterated this statement five times in her deposition.

[98] ECF Doc. No. 102 at 7.

[99] ECF Doc. No. 106 at 10. Mr. Geness also argues the early reports starting Mr. Fiffik fell down the steps or off the porch but does not reference being shoved created an inconsistency. We do not agree. It is undisputed Mr. Fiffik fell off either the porch or the stairs but the responding officer statement he fell does not automatically preclude Mr. Fiffik falling because someone pushed him. In the flurry of activity when someone is injured and needs immediate medical treatment, we are not surprised some facts or details are left out. Particularly where Mr. Fiffik was injured and might not have directly spoken to the officer or emergency responders.

[100] ECF Doc. No. 89 at ¶¶ 57-61. Again, we question Mr. Geness' strategic decision not to depose Detective Cox.

[101] ECF Doc. No. 89 at 48.

[102] *Reedy v. Evanson*, 615 F.3d 197, 232 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. 2005)).

[103] *Id.* (quoting *Swisher*, 868 A.2d at 1230).

[104] *See, e.g., Gilbert v. Feld*, 842 F. Supp. 803, 821 (E.D.Pa. 1993) (plaintiff alleged an intentional infliction of emotional distress because officers arrested him without probable cause in front of his family. The district court granted summary judgment of plaintiff's intentional infliction of emotional distress claim because the officers had probable cause to arrest plaintiff).

[105] *Reedy*, 615 F.3d at 232 (quoting *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1184 (Pa. Super. 1989)).

[106] ECF Doc. No. 88 ¶¶ 53. *See Wallace v. Kato*, 549 U.S. 384, 397 (2007) (the statute of limitations for a false arrest claim "begins to run at the time the claimant becomes detained pursuant to legal process"). The court arraigned Mr. Geness on November 17, 2006.

[107] ECF Doc. No. 102 at 18.

[108] *See Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transp. Auth.*, 539 F.3d 199, 209 (3d Cir. 2008) and *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. Super. 2005). Whether our Court of Appeals applies federal or Pennsylvania law's discovery rule applies to § 1983 claims is unclear. *See Leonard v. City of Pittsburgh*, No. 13-455, 2013 WL 4541727 n. 7 (W.D.Pa. August 17, 2013). In *Kach v. Hose*, our Court of Appeals examined both the federal discovery rule and the Pennsylvania discovery rule to § 1983 claims. *Kach*, 589 F.3d at 635-37. In *Lake v. Arnold*, our Court of Appeals examined and applied Pennsylvania's discovery rule. 232 F.3d 360, 367 (3d Cir. 2000). In *Leonard v. City of Pittsburgh*, Judge Hornak concluded, and we agree, there is no meaningful difference between Pennsylvania's state rule of law and our Court of Appeals' federal standard regarding the discovery rule. *Leonard*, 2013 WL 4541727 at *fn. 8.

[109] Mr. Geness' counsel listed Attorney Tummons as a fact witness in December 201; she then entered her appearance on March 10, 2017 - three days before her deposition. Mr. Geness' counsel then asserted privilege during her deposition and defended his tactical action stating Attorney Tummons' entry of appearance merely corrected an "oversight." ECF Doc. No. 89-1 at 90. We have the benefit of hindsight to know Attorney Tummons then withdrew her entry of appearance eight days after her deposition. Mr. Geness' counsel vigorously denied gamesmanship accusations; however, in light of Attorney Tummons' withdrawal of her entry of appearance without providing counter testimony, we have no basis to find genuine issues of material fact on Attorney Tummons' admitted knowledge from the public record in 2012. Mr. Geness' counsel cannot have it both ways: as a shield to preclude the witness who may have knowledge on the tolling issue because she is co-counsel and then have her withdraw as co-counsel and use her partial testimony as a sword.

[110] ECF Doc. No. 89-2 at 1.

[111] ECF Doc. No. 89-1 at 86, 89.

[112] ECF Doc. No. 89-2 at 96.

[113] ECF Doc. No. 103 ¶¶ 213, 217.

[114] N.T. November 2, 2016 pp. 8-11. Mr. Geness' counsel also stated "You have no ability to fight the powers that be because the DAs tend to become the next judges down there. When you make the request, which [the public defender] did – that's the thing. If I sue [the public defender], he is going to defend by saying, we made requests for this discovery, we made several formal requests. The Court didn't rule on them." Mr. Geness' counsel does not explain why a federal civil rights case could not have been timely filed.