IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG A. GENESS, | CIVIL ACTION – LAW |
| Plaintiff, | No. 2:16-cv-00876-MAK |
| v. | DISTRICT JUDGE MARK A. KEARNEY |
| ADMINISTRATIVE OFFICE OF PENNSYLVANIA COURTS, et al., | *Electronically Filed* |
| Defendants. | **JURY TRIAL DEMANDED** |

**BRIEF IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT PURSUANT TO F.R.CIV.P. 12(b)(6)**

And now comes the defendant, the Commonwealth of Pennsylvania, by and through the undersigned, who file the within brief in support of the motion ot dismiss, and in support thereof set forth as follows:

I. RELEVANT PROCEDURAL HISTORY

The Commonwealth of Pennsylvania has been brought into this suit via an Amended Complaint filed on October 8, 2018 (ECF 121), following substantial activity involving the Plaintiff and numerous other Defendants. The original Complaint was filed on June 17, 2016. Within the original Complaint, plaintiff asserted claims against Fayette County, the City of Uniontown, Uniontown police officer Jason Cox, and the owners of a private personal care home, James and Jean McVey, raising the following claims:

a) Violation of the Americans with Disabilities Act against Fayette County and the City of Uniontown;

b) Malicious prosecution against Uniontown and Cox;

c) False arrest against Uniontown and Cox;

d) False imprisonment against Uniontown and Cox;

      e)      Reckless investigation against Uniontown and Cox;

      f)      Equal protection violation against Fayette County and Cox;

      g)      Conspiracy against the McVeys;

      h)      Municipal liability against Uniontown; and

      i)      Intentional infliction of emotional distress against the McVeys.

On July 13, 2016, Uniontown and Officer Cox executed waivers of service. On October 3, 2016, upon plaintiff's praecipe, a Summons was issued as to Fayette County and the McVeys. On October 12, 2016, Uniontown and Officer Cox filed their Motion to Dismiss Pursuant to F.R.Civ.P. 12(b)(6). Argument was scheduled for the co-defendants' Motion to Dismiss for November 2, 2016, prior to the time in which Fayette County was to respond to the Complaint. The Court took the Motion under advisement. Following argument, plaintiff advised the Court that the claims against Uniontown were withdrawn. The Court granted the Motion to Dismiss as to Officer Cox with respect to the equal protection and malicious prosecution claims and denied it as to all other causes of action. In support of the dismissal of the malicious prosecution claim, this Court determined that because the underlying criminal matter was disposed of by way of a *nolle prosequi* Order, this did not amount to a favorable termination. Thus, following the Order, plaintiff's claims against Cox sounding in false arrest, false imprisonment and reckless investigation remained.

On November 10, 2016, plaintiff filed a Notice of Voluntary Dismissal pursuant to F.R.Civ.P. 41(a)(1)(A)(1), dismissing all claims against Fayette County with prejudice. (ECF 33). By Order of that same date, this Court dismissed the County. (ECF 34). Additionally, on March 1, 2017, this Court granted the Voluntary Dismissal of James McVey. Although plaintiff had also

sought dismissal of Jean McVey, as Ms. McVey was the subject of a pending bankruptcy petition, the Court refused dismissal pending its completion.

While litigation was proceeding, plaintiff filed two Motions for Leave to Amend Complaint on February 14, 2017[1] and March 6, 2017(ECF 67 and 76).  The crux of each motion was plaintiff's contention that "recently discovered case law…supports a viable ADA claim against the Commonwealth of Pennsylvania." (See, Motion(s) for Leave to Amend Complaint, ¶ 3).  On March 21, 2017, this Court denied plaintiff's motions insofar as they sought leave to assert an ADA claim against the Commonwealth, finding that amendment would be futile, as any ADA claim is barred by application of the *Rooker-Feldman* doctrine.  (ECF. 93).

The matter proceeded forward only against defendant Cox, a detective with the Uniontown Police Department based upon his alleged reckless investigation, false arrest and false imprisonment claims.  On May 1, 2017, the Court granted Cox's Motion for Summary Judgment. (ECF 110).  In ruling on the motion, in addition to determining that plaintiff had failed to adduce any evidence supporting his then-pending claims, this Court also held that plaintiff's claims against Officer Cox were barred by the applicable two year statute of limitations.

Plaintiff appealed the Orders granting Cox's Motion to Dismiss and Motion for Summary Judgment as well as the Order denying his Motions for Leave to Amend Complaint.  The Third Circuit determined that this Court had erroneously dismissed the malicious prosecution claim by finding that the entry of *nolle prosequi* on the criminal charges was not a favorable termination, it affirmed dismissal because plaintiff had not produced evidence that Cox lacked probable cause to initiate the prosecution.  *Geness*, 902 F. 3d at 359.  The Third Circuit also held that this Court correctly dismissed the false arrest, false imprisonment, and reckless investigation claims by

---

[1] ECF 67, filed on February 14, 2017, is the earliest effort to pursue a claim against the Commonwealth.  This date becomes important for statute of limitation purposes.

application of the statute of limitation. *Geness,* 902, F. 3d at 355. Thus, dismissal of those claims has been affirmed on their merits and is not the subject of plaintiff's Amended Complaint.

The Third Circuit reversed the Order denying plaintiff's Motion for Leave to file an Amended Complaint with respect to the ADA and due process claims. The Court specifically held:

> We will reverse the District Court's denial of leave to amend, remanding for Geness to reinstate his claim *against the Commonwealth*, and we will affirm the District Court in all other respects.

*Geness*, 902 F.3d at 365.

Plaintiff has filed his Amended Complaint, naming as defendants the Commonwealth, the Administrative Office of Pennsylvania Courts, six (6) Judges of the Court of Common Pleas of Fayette County, two former District Attorneys of Fayette (one of whom is also one of the defendant Judges), and the Public Defender of Fayette County. (ECF 121).

## II. RELEVANT FACTS ALLEGED

The Commonwealth of Pennsylvania is sued in this action, and is alleged to have acted by and through its officials. (Amended Complaint, ¶ 6). Specifically, the Amended Complaint alleges that the Plaintiff was discriminated against by the actions of the Defendant judges, as they "repeatedly issued orders based on the possibility of Plaintiff regaining competency to stand trial when medical evidence clearly demonstrated that Plaintiff's disability was permanent and not treatable" (Amended Complaint, ¶ 72)  This allegation follows the history of criminal charges being filed against the Plaintiff.

On November 17, 2006, plaintiff, a mentally disabled man, was charged with aggravated assault (later amended to include homicide) and detained at the Fayette County Prison. (Amended Complaint, ¶¶ 17-18).  Over the course of the next ten (10) months, plaintiff was deemed

incompetent to stand trial, due to his mental incapacity, on three occasions. (Amended Complaint, ¶¶ 19-24). Following the third evaluation, plaintiff was transferred back to the Fayette County Prison from Mayview State Hospital, where he had been residing for three months. (Amended Complaint, ¶¶ 20, 25).

For the next three (3) years, until November of 2010, plaintiff remained at the Prison and his case was subjected to the "call of the list." (Amended Complaint, ¶¶ 26-29). During that period of time, defendant Vernon and then defendant Heneks were the elected District Attorneys of Fayette County. (Amended Complaint, ¶ 30). Defendant Whiteko was the Public Defender. (Amended Complaint, ¶ 30). In that capacity, on November 23, 2010, Whiteko filed a motion requesting trial be continued until plaintiff became competent. (Amended Complaint, ¶ 37). Although an Order was thereafter entered to transfer plaintiff to Torrance State Hospital, he remained in the Prison. (Amended Complaint, ¶¶ 39-45).

On August 17, 2011, Judge Solomon ordered a determination as to whether plaintiff was competent to stand trial. (Amended Complaint, ¶ 46). On September 4, 2011, a forensic assessment was performed, following which it was determined that plaintiff remained incompetent to stand trial and was unlikely to improve. (Amended Complaint, ¶¶ 47-48). As a result, plaintiff was ordered transferred to a Long Term Structured Residence. (Amended Complaint, ¶¶ 49-51). While in residence at the facility, plaintiff's case continued to be subject to the call of the list for the next four (4) years. (Amended Complaint, ¶¶ 52-53). On November 25, 2015, the Commonwealth filed a proposed *nolle prosequi* order with regard to the charges against plaintiff. (Amended Complaint, ¶ 54). On December 10, 2015, Judge Leskinen entered an Order *nolle prosequi* and plaintiff was released from confinement. (Amended Complaint, ¶¶ 56-57).

III.     STANDARD OF REVIEW

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. See also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir.2010). Although the plausibility standard "does not impose a probability requirement," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." *Id*. The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Under the pleading regime established by *Twombly* and *Iqbal,* a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*., at 679. *See also Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679. *See Connelly v. Lane Const. Corp.,* No. 14-3792, 2016 WL 106159, at *3-4 (3d Cir. Jan. 11, 2016). A complaint must "show" such an entitlement with its facts. *Iqbal,* 556 U.S. at 678-79. *See*

*Connelly*, 2016 WL 106159, at *3-4; *Santiago v. Warminster Twp.,* 629 F. 3d 121, 130 (3d Cir. 2010); *Phillips v. County of Allegheny*, 515 F. 3d 224, 234-235 (3d Cir. 2008).

## IV. ARGUMENT

.

### A. PLAINTIFF'S COMPLAINT AGAINST THE COMMONWEALTH SHOULD BE DISMISSED AS IT IS BARRED BY THE STATUTE OF LIMITATIONS

Plaintiff's Amended Complaint asserts claims under the Americans with Disabilities Act and violation of plaintiff's due process rights brought pursuant to Section 1983. With respect to the Commonwealth, both claims are time barred by application of the respective statutes of limitations.

It is well settled that a cause of action accrues for the statute of limitations purposes when a plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998); *Smith v. Delaware County Court*, 260 Fed. Appx. 454, 455 (3d Cir. 2008).

Claims under the ADA are governed by the statute of limitations for personal injuries in which the violation allegedly occurred. *Smith v. City of Philadelphia*, 345 F.Supp.2d 482, 485 (E.D. Pa. 2004), citing *Freed v. Consolidated Rail Corp.,* 201 F.3d 188 (3d Cir. 2000). Plaintiffs' due process claim is brought pursuant to 42 U.S.C. § 1983, a statute which does not itself create any constitutional rights, but is a statutory vehicle for plaintiffs to bring such claims. As with the ADA, Section 1983 contains no statute of limitations period and borrows the most applicable statute of limitations under state law. It is well established that the applicable statute of limitations

is that governing personal injury actions in a particular jurisdiction and, in Pennsylvania, that period is two years. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985); 42 Pa.C.S.A. § 5524.

The earliest Motion for Leave to File an Amended Complaint was filed on February 14, 2017 (ECF 67) In that pleading, the Commonwealth is first suggested as a defendant. Giving Plaintiff the benefit of 2/14/2017 as the date of filing, the[2] improper conduct must have occurred AFTER 2/14/2015. It thus becomes necessary to look at the allegations of misconduct set forth against the "State Officials" and when that misconduct occurred.

The Third Circuit has succinctly determined the acts which give rise to the cause of action:

Geness asserts that the orders requiring him to be held for future, duplicative examinations, despite the hopelessness of his gaining competence, and the prolonged detention that resulted, amounted to disability discrimination. *Geness v. Cox*, 902 F.3d 344, 360 (3d Cir. 2018)

A review of the Amended Complaint alleges the following court orders wherein Plaintiff was held for future duplicative orders after a determination that his regaining competence was hopeless:

19. Approximately seven (7) months later, on or about June 18, 2007, Fayette County Court of Common Pleas Judge, Defendant Wagner, deemed Plaintiff incompetent to stand trial, but not severely mentally disabled.

20. Defendant Wagner ordered that Plaintiff be transferred to Mayview State Hospital ("Mayview"), a psychiatric hospital, for no more than 60 days, at which time Mayview was to provide to the Court Plaintiff's capacity to stand trial and any findings relating to Plaintiff's ability to potentially regain competency within a reasonable period of time.

22. On or about August 21, 2007, Fayette County Court of Common Pleas Judge, Defendant Warman, deemed Plaintiff incompetent to stand trial and directed that a motion be filed when Plaintiff was deemed competent to proceed. Defendant Warman issued this order in the absence of any psychiatric evaluation of the Plaintiff, as Defendant Wagner's order had not yet been completed.

---

[2] Defendants do not concede that the motion to amend properly tolled the Statute of Limitation, and maintain their argument that the actual tolling date, as it relates to the Commonwealth, was the date of filing of the Amended complaint (ECF 121, filed on 10/08/208) They do, however use the earlier date for purposes of this argument, as the failure to meet even the more generous tolling date is obvious.

24. Plaintiff was evaluated on or about September 25, 2007, approximately ten (10) months after his initial arrest. At that time, Plaintiff was deemed incompetent to stand trial. The court ordered evaluation indicated that Plaintiff was unable "to understand the concept of trial" and that he was unable "to recognize the role of personnel in the court system" or the "various outcomes from his pending charges." The evaluation went on to hold that Plaintiff's prognosis for improvement was "poor." In fact, the report indicated the possibility of Plaintiff's condition deteriorating and/or the Plaintiff "decompensating."

26. Despite Mayview's evaluation of the Plaintiff and the results thereof, an order was not entered regarding Plaintiff's competency to stand trial for approximately three (3) years, until on or about November 29, 2010.

34. From September 25, 2007, until November 29, 2010, Defendants Solomon, Cappuzzi, Leskinen, Wagner and Warman all presided over the "call of the list" on numerous occasions.

35. Despite Plaintiff's known incompetency to stand trial, Defendants Solomon, Cappuzzi, Leskinen, Wagner, Warman, and later, Defendant Vernon, continued to list Plaintiff's case for trial every month.

39. On or about November 29, 2010, Defendant Wagner ordered that Plaintiff be transferred from Fayette County Prison to Torrance State Hospital ("Torrance") for a period not to exceed 90 days to again determine Plaintiff's capacity to stand trial and to evaluate Plaintiff's ability to potentially regain competency within a reasonable period of time.

46. On or about August 17, 2011, Fayette County Court of Common Pleas Judge, Defendant Solomon, ordered that it should be determined whether Plaintiff was competent to function in society, despite Plaintiff's prior psychiatric evaluation.

49. On or about September 21, 2011, Defendant Wagner ordered that Plaintiff was not competent to stand trial and released him to be involuntarily committed to a Long Term Structured Residence ("LTSR"), there to remain without contact with the general public and to be returned to Fayette County Prison upon completion of his therapeutic program or upon a determination that he is competent to stand trial.

Accordingly, the most recent order in time wherein Plaintiff's inability to stand trial was ignored was the September 21, 2011 order by Judge Warman. As the Third Circuit stated, It is the "standard rule" that accrual of a claim "commences when the plaintiff has a complete and

present cause of action," *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) *Geness v. Cox*, 902 F.3d 344, 354 (3d Cir. 2018) Plaintiffs cause of action accrued when he was continuously subjected to additional orders concerning his competency, despite the fact that his competency was medically determined as insufficient to stand trial. Those orders were all issued well prior to February 14, 2015.  Plaintiff is simply far out of time to file the within claim against the Commonwealth.

> B. PLAINTIFFF HAS FAILED TO SUFFICIENTLY PLEAD DELIBERATE INDIFFERENCE AND/OR A HISTORY OF CIVIL RIGHTS VIOLATIONS BY THE COMMONWEALTH, AS DIRECTED BY THE THIRD CIRCUIT.

Even if Plaintiff could demonstrate that he was denied specific services while awaiting determination of competency, his claims fail because he cannot show that such denial was because of his disability. The ADA prohibits discrimination against an individual "on the basis of disability." 42 U.S.C. § 12182. Therefore, a plaintiff must specifically demonstrate a connection between the alleged discrimination or retaliation and the plaintiff's disability – that the discrimination was *because of* the plaintiff's disability. *Derrick F. v. Red Lion Area School Dist.*, 586 F. Supp. 2d 282, 299 (M.D. Pa. 2008). As the Third Circuit has stated, a plaintiff cannot prevail "simply by proving (1) that he was denied some service and (2) he is disabled. The state must have failed to provide the service for the sole reason that the [individual] is disabled. *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir. 1998) (holding that the disability must be the cause of the discrimination or denial of benefits or services)." *Andrew M. v. Delaware County Office of Mental Health and Mental Retardation*, 490 F.3d 337 (3d Cir. 2007). *See also Derrick F.*, 586 F. Supp. 2d at 299.

None of Plaintiff's allegations support a conclusion that the Commonwealth Defendants discriminated against him because of, or solely by reason of his disability. The Amended

Complaint merely makes bald, conclusory statements, such as: "The conduct of the Defendant judges in ignoring clear medical evidence of the Plaintiffs inability to stand trial demonstrated deliberate indifference" (ECF 121 ¶ 78.a.)The Court is not required to accept such bald legal conclusions and, by themselves, they are not enough to support Plaintiffs' ADA claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Stone v. New Jersey Administrative Office of the Courts*, 2014 WL 260291, at *2 (3d Cir. Jan. 24, 2014); *Derrick F.*, 586 F. Supp. 2d at 299.

Indeed the Third Circuit's opinion, allowing Plaintiff to bring his claims against the Commonwealth specifically advised of the need for Plaintiff to satisfy this "causation" element.

To the extent Geness seeks monetary damages on his ADA claim, *see* App. 79, he must "adequately ple[a]d that [the Commonwealth] acted with deliberate indifference to the risk of an ADA violation." *Haberle*, 885 F.3d at 181. "[C]laims for compensatory damages under ... the ADA also require a finding of intentional discrimination," which requires proof, at minimum, of deliberate indifference, *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261-63 (3d Cir. 2013), which may be pleaded by showing that the defendant failed to "adequately respond to a pattern of past occurrences of injuries like the plaintiff['s]," *Beers-Capitol v. Whetzel*, 256 F.3d 120, 136 (3d Cir. 2001). Geness's complaint does not do this, thus, like we did recently in *Haberle*, we will grant him "the narrow opportunity to amend h[is] complaint with respect to [his] ADA claim, particularly [the] allegations of a history of civil rights violations by [the Commonwealth], because deliberate indifference was not discussed in the District Court as to that claim," 885 F.3d at 182 n.12. *Geness v. Cox*, 902 F.3d 344, 363 (3d Cir. 2018)

No doubt the Amended Complaint uses the words "deliberate indifference" in an effort to clear the hurdle of establishing the necessary intentional discrimination.  However, the Third Circuits directive was not just to use certain terminology, but to sufficiently allege that the Commonwealth failed to respond to a past pattern of violations similar to what the Plaintiff allegedly suffered.  The Amended Complaint simply lacks such allegations.  It is not enough, under the pleading standards set forth above to merely uses the term "deliberate indifference" and then fail to allege any facts to support the term.  There are no allegations of past practices wherein the Commonwealth failed to properly respond to similar situations as alleged by Geness.

Indeed, there are no allegations that Geness, or anyone on his behalf ever sought any ADA accommodations that were refused, let alone that such ADA violations previously occurred under the Commonwealths watch. Such allegations are absent as to the judiciary or any other Commonwealth agency or department. Plaintiff has thus failed to set forth facts sufficient to support his claim.

> C. THE COMMONWEALTH DOES NOT HAVE THE ABILITY TO COMPELL JUDICIAL ACTS ON THE PART OF THE JUDICIAL DEFENDANTS.

As noted by the judicial defendants, "The Constitution of Pennsylvania establishes three separate, equal and independent branches of government: the General Assembly, the Executive and the Judiciary. *Each branch is clothed with certain exclusive rights and powers.*" *L.J.S. v. State Ethics Comm'n*, 744 A.2d 798, 800 (Cmmw. 2000) (emphasis added); *see also Kremer v. State Ethics Comm'n,* 503 Pa. 358, 361, 469 A.2d 593, 595 (1983). Plaintiff's lawsuit, at least as it relates to the Commonwealth, asserts that the judges failed him. That failure allegedly arose through the issuance of multiple unnecessary orders, causing a continuing pretrial incarceration.

Plaintiffs Amended Complaint appears to allege improper acts by state court judges, which led to his extended incarceration. Those acts by the local court are asserted to be in violation of the terms and provisions of the ADA. However, it is apparent that all of the rulings were issued by the court, in their official capacity. The executive branch of the Commonwealth has no authority to supervise or determine the actions of the members of the judiciary, particularly when it relates to determinations on criminal matters before the court.

71 P.S. § 61 sets forth the scheme by which the executive and administrative work of the Commonwealth is performed:

**§ 61. Executive officers, administrative departments and independent administrative boards and commissions (Adm. Code § 201)**

(a) The executive and administrative work of this Commonwealth shall be performed by the Executive Department, consisting of the Governor, Lieutenant Governor, Secretary of the Commonwealth, Attorney General, Auditor General, State Treasurer, and Secretary of Education; by the Executive Board, and the Pennsylvania State Police; by the following administrative departments: Department of State, Office of Attorney General, Department of Corrections, Department of the Auditor General, Treasury Department, Department of Education, Department of Military Affairs, Insurance Department, Department of Banking, Department of Agriculture, Department of Transportation, Department of Health, Department of Drug and Alcohol Programs, Department of Labor and Industry, Department of Aging, Department of Public Welfare, Department of General Services, Department of Revenue, Department of Community and Economic Development, Department of Environmental Protection and Department of Conservation and Natural Resources; and by the following independent administrative boards and commissions: Pennsylvania Game Commission, Pennsylvania Fish and Boat Commission, State Civil Service Commission, Pennsylvania Public Utility Commission and the Pennsylvania Securities Commission.

(b) All of the provisions of this act, which apply generally to administrative departments, or generally except to the Department of the Auditor General, the Treasury Department and the Office of Attorney General, shall apply to the Executive Board and to the Pennsylvania State Police.

Notably, there is no provision by which the Executive branch oversees the operations of the Administrative Office of Pennsylvania Courts, or otherwise has authority to direct the actions of elected state court judges. Indeed, the only entity entitled to engage in discipline or oversight of judges within the Commonwealth is the Pennsylvania Supreme Court. Under Pennsylvania law, the Pennsylvania trial courts are part of the Unified Judicial System of the Commonwealth of Pennsylvania, and are under the direct supervision of the state Supreme Court. *Jakomas v. McFalls,* 229 F. Supp. 2d 412, 428 (W.D. Pa. 2002.) Certainly it is recognized that both the AOPC and the individual judges are part of the unified judicial system, and thus an instrumentality of the commonwealth. The Third Circuit Court of Appeals has explained that the Court of Common Pleas is an entity of the Unified Judicial System of Pennsylvania, and as such, it is an instrumentality of the Commonwealth. *Banks v. Court of Common Pleas FJD, 342 Fed.Appx. 818, 820, 2009 WL 2488941 (3d Cir., Aug.17, 2009).* In both Banks, supra, 342 Fed.Appx. at 820, and in Benn v. First Judicial District, 426 F.3d 233, 240–41 (3d Cir.2005) It

should, however, be equally understood that an assertion that the Commonwealth is responsible for improper judicial rulings, by elected judges, in their official capacities, as plead in the Amended Complaint, should not stand.  This is particularly so when reviewing the directive of the Third Circuit that Plaintiff identify prior occurrences of similar violations that were not properly responded to by an appropriate Commonwealth entity.  Absent such allegations, The Commonwealth is entitled to be dismissed from this action.

Wherefore The Commonwealth of Pennsylvania requests that the Court dismiss them from this action.

JOSH SHAPIRA
Attorney General

/s/ *Michael E. Kennedy*
MICHAEL E. KENNEDY
Senior Deputy Attorney General
PA ID 52780

Keli M. Neary
Chief Deputy Attorney General
Civil Litigation Section

OFFICE OF ATTORNEY GENERAL
1251 Waterfront Place
Mezzanine
Pittsburgh, PA  15222