# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CRAIG GENESS | : CIVIL ACTION |
|---|---|
| v. | : NO. 16-876 |
| COMMONWEALTH OF PENNSYLVANIA, *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                     **February 1, 2019**

In a situation our Court of Appeals aptly described as "a tragic case that suggests systemic deficiencies at the juncture of Pennsylvania's criminal justice and mental health systems",[1] the Commonwealth of Pennsylvania placed a life-long mentally impaired man in custody for 3,309 days without trial through a series of custodial trial competency evaluations relating to an alleged 2006 assault and death of a fellow group home resident before dismissing the charges against him. Our Court of Appeals found the evidence adduced in discovery showed an impaired man, Craig Geness, "an adult with mental retardation and other mental illness[,] was charged for a crime that may not have occurred and was then detained for nearly a decade awaiting trial, even though it was determined early in the proceedings that he was incompetent and unlikely to improve."[2] Compelled like us to find many of Mr. Geness's claims must be dismissed as time barred, our Court of Appeals remanded for us to consider whether Mr. Geness can state a claim against the Commonwealth seeking damages under the Americans with Disabilities Act and the due process clause. After careful review, we allow Mr. Geness's disabilities claims to proceed into discovery as they do not presently appear time barred, the Commonwealth is not immune for this claim, and the pleading of the Commonwealth actors' deliberate indifference is sufficient to state a claim.

## I. Allegations.

Mr. Geness is a fifty-one-year-old male with an intellectual disability. Medical professionals "diagnosed [him] with mental retardation, possessing a full scale IQ of 51," which falls "in the extremely low range."[3] In November 2006, prosecutors, apparently suspecting Mr. Geness pushed a man off the porch of the assisted living facility for intellectually disabled people where he resided, charged Mr. Geness with aggravated assault.[4] They later amended the charge to include homicide.[5] Commonwealth actors sent Mr. Geness to Fayette County Prison pending trial.[6]

Seven months later, however, Fayette County Court of Common Pleas Judge John F. Wagner, Jr. deemed Mr. Geness "incompetent to stand trial, but not severely mentally disabled."[7] Judge Wagner ordered Mr. Geness be transferred to Mayview State Hospital for no more than sixty days for a determination as to Mr. Geness's "capacity to stand trial and any findings relating to [his] ability to potentially regain competency within a reasonable period of time."[8] Commonwealth actors did "not immediately transfer[]" him to Mayview State Hospital.[9] It would take "approximately two" months for the Commonwealth to transfer Mr. Geness to Mayview State Hospital and undergo Judge Wagner's ordered psychiatric evaluation.[10] Meanwhile, after Judge Wagner's original incompetency finding, but before the ordered psychiatric evaluation was conducted, Fayette County Court of Common Pleas Judge Ralph C. Warman deemed Mr. Geness still "incompetent to stand trial and directed that a motion be filed when [Mr. Geness] was deemed competent to proceed."[11]

On September 25, 2007, roughly ten months after his initial arrest, and over three months after Judge Wagner originally found Mr. Geness incompetent to stand trial, Mr. Geness received

his court-ordered psychiatric evaluation.[12] The evaluation found Mr. Geness still incompetent to stand trial.[13] Specifically, the unnamed evaluator concluded Mr. Geness could not "understand the concept of trial," could not "recognize the role of personnel in the court system" or recognize "various outcomes from his pending charges."[14] The report also "indicated the possibility of [Mr. Geness's] condition deteriorating and/or [Mr. Geness] 'decompensating.'"[15] Following the evaluation, Commonwealth actors transferred Mr. Geness back to Fayette County Prison. He would remain there for a total of 1,769 days.[16]

Mr. Geness did not receive another competency determination until November 29, 2010,[17] when Judge Wagner ordered Mr. Geness be transferred from Fayette County Prison to Torrance State Hospital for a period not to exceed ninety days to determine Mr. Geness's capacity to stand trial and evaluate his ability to potentially regain competency within a reasonable time period.[18] Despite Judge Wagner's order, however, Mr. Geness remained at Fayette County Prison.[19] "During this time," Mr. Geness alleges, Judge Wagner "served on an advisory committee designed to address issues relating to the Fayette County Prison," along with prison warden Brian S. Miller.[20] Mr. Geness alleges "[t]hroughout the duration" of his incarceration, "Warden Miller made numerous complaints directly to [Judge] Wagner about [Mr. Geness's] mental health status and his unlawful and prolonged imprisonment."[21] Mr. Geness specifically alleges "Warden Miller insisted on multiple occasions that the Court remove [Mr. Geness] from the Fayette County Prison and repeatedly asked [Judge] Wagner to 'do something' about [Mr. Geness]."[22] "Despite Warden Miller's numerous complaints, [Judge] Wagner did not take any action to remove [Mr. Geness] from the Fayette County prison or to place [him] in a mental health facility."[23] All the while, Mr. Geness's case "was subjected to the 'call of the list,'"[24] a monthly proceeding attended by a

3

Common Pleas judge, the District Attorney and Public Defender's office.[25] Despite this opportunity to provide critical information about the status of Mr. Geness's case, the Commonwealth actors repeatedly "acquiesced" to the many continuances.[26]

On August 17, 2011, Fayette County Court of Common Pleas Judge Gerald R. Solomon ordered Mr. Geness should undergo an examination to "determine[] whether [Mr. Geness] was competent to function in society."[27] Unnamed officials conducted "a forensic psychiatric assessment" of Mr. Geness on September 4, 2011 at the Fayette County Prison.[28] The September assessment concluded Mr. Geness "was incompetent to stand trial and that he was unable to understand the nature of the charges against him," and also concluded Mr. Geness's "condition would likely not improve with any additional treatment or intervention."[29] Following the evaluation, Judge Wagner on September 21, 2011 found Mr. Geness "was not competent to stand trial" and ordered he be released "to be involuntarily committed to a Long Term Structured Residence ("LTSR") . . . and to be returned to Fayette County Prison upon completion of his therapeutic program or upon a determination that he is competent to stand trial."[30] Mr. Geness alleged Judge Wagner issued the order "despite his actual knowledge of [Mr. Geness's] prior psychiatric evaluations, both of which concluded that [his] mental state was not likely to improve."[31] A day later, Mr. Geness was transferred to a Long Term Structured Residence, where he would remain for a total of 1,540 days.[32]

Mr. Geness remained at the Long-Term Structured Residence until December 2015. The Commonwealth only released him after Judge Leskinen, upon the Commonwealth's motion, "entered an Order *nolle prosequi* all charges against" him.[33] In sum, Mr. Geness spent "a total of 3,309 days in custody without trial."[34] Though various counsel had filed four motions for habeas

4

corpus relief or motions to dismiss his charges, the judges neither held hearings nor ruled on the motions.[35]

## II. Our Court of Appeals remanded for Mr. Geness to reinstate his ADA and due process claims against the Commonwealth.

Mr. Geness sued for damages in June 2016, asserting various claims against the then-detective who investigated his case, the owners of the assisted living facility at which the alleged homicide occurred, the County of Fayette, and the City of Uniontown.[36] Upon transfer to our docket in mid-October 2016, we dismissed various claims on November 9, 2016 but allowed Mr. Geness to proceed to discovery on his claims against the detective for conspiracy, reckless investigation, false arrest, false imprisonment, and intentional infliction of emotional distress. On March 6, 2017, Mr. Geness requested leave to amend his complaint "to add the Commonwealth of Pennsylvania . . . as a party to this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C.[] § 12131 et seq."[37]

On March 21, 2017, before ruling on the detective's summary judgment motion, we denied Mr. Geness's motion to amend to the extent he sought to allege claims against the Commonwealth.[38] We later granted summary judgment in favor of the detective on all remaining claims against him. Mr. Geness appealed. Our Court of Appeals affirmed our findings based on the plead claims, but reversed our denial of Mr. Geness's request for leave to amend to assert claims under the Americans with Disabilities Act (ADA) and the due process clause claims against the Commonwealth of Pennsylvania. Our Court of Appeals "remand[ed] for [Mr. Geness] to reinstitute his due process and ADA claims against the Commonwealth."[39] Mr. Geness timely filed an amended complaint specifically detailing claims against the Commonwealth under Title II of the ADA by denying him due process of the law on the basis of his disability.

5

### III. Analysis

The Commonwealth moves to dismiss Mr. Geness's amended complaint in its entirety.[40] But we also consider the Commonwealth's arguments mindful our Court of Appeals already "considered whether Geness's proposed claim would be futile for any other reason and conclude[d] it would not."[41] We deny the Commonwealth's motion to dismiss because (1) Mr. Geness states timely claims for relief, (2) the Commonwealth's purported inability to direct the conduct of its judges is no bar to relief under Title II of the ADA relief, and (3) Mr. Geness plausibly pleads the deliberate indifference of Commonwealth actors such that he can sustain his claim for monetary damages under the ADA.

### A. Mr. Geness timely alleges the ADA/due process claim against the Commonwealth.

The Commonwealth first argues Mr. Geness's ADA/due process claim is time barred. The parties do not dispute Pennsylvania's two-year statute of limitations applies to this claim.[42] It instead contests the date on which Mr. Geness's claims accrued. The Commonwealth argues Mr. Geness's claims accrued on September 21, 2011, the "most recent [court] order" in which Mr. Geness's "inability to stand trial was ignored."[43] Mr. Geness argues the continuing pattern of harm he suffered at the hands of Commonwealth actors permits him to assert a timely claim under the continuing violations doctrine.[44] Applying this doctrine, Mr. Geness argues Judge Leskinen's December 10, 2015 "Order *nolle prosequi* all charges against"[45] him "is the last discriminatory act of Defendant Commonwealth's continuing violation of Plaintiff's rights under the ADA and the Fourteenth Amendment."[46]

There is no basis to dismiss Mr. Geness's claims as untimely. Our Court of Appeals addressed various issues relating to the timeliness of Mr. Geness's myriad claims but nonetheless

found his proposed claims would not be futile.[47] For example, our Court of Appeals found Mr. Geness's "§ 1983 claims expired sometime in 2009, rendering the filing of his complaint in 2016 far out of time."[48] Our Court of Appeals also found Mr. Geness's purported reckless investigation claim "would be time barred" even if it could overcome qualified immunity.[49] Notwithstanding its consideration of timeliness, our Court of Appeals held "Geness has stated cognizable ADA and due process claims," and "we have considered whether Geness's proposed claim would be futile for any other reason and conclude it would not."[50]

In any event, Mr. Geness plausibly shows the continuing violations doctrine applies to the unique facts of this case. The continuing violations doctrine is "an equitable exception to a strict application of a statute of limitations where the conduct complained of consists of a pattern that has only become cognizable as illegal over time."[51] Mr. Geness alleges only a pattern of deliberate indifference to his intellectual disability could result in the Commonwealth subjecting him to 3,309 days of pretrial detention. He alleges liability based on a connected pattern of indifference, not discrete acts or determinations. Our Court of Appeals also appeared to frame these claims as based on such a pattern. As our Court of Appeals aptly summarized, Mr. Geness was the victim of "multipoint failures in the criminal justice system,"[52] suffering "devastating consequences" because "one or more of" the critical players in the criminal justice system "fail[ed] to diligently safeguard the civil rights with which they are entrusted."[53]

We are not the first to apply the continuing violations doctrine to ADA claims alleged by persons in custody. Judge Gibson's application of the doctrine in *Scherer v. Pennsylvania Department of Corrections* is particularly relevant.[54] In *Scherer*, a cellmate killed an inmate suffering from schizophrenia, bipolar disorder and chronic paranoia in the prison's Restrictive

7

Housing Unit. The inmate's estate sued the Pennsylvania Department of Corrections and various Corrections Defendants, among others, alleging "their actions or inactions in treating the Decedent's mental illness and their manner of housing the Decedent prior to and including the day of his death" violated the Eighth Amendment, the ADA, and the Rehabilitation Act.[55]

The defendants argued the court must dismiss due to untimely claims. Judge Gibson rejected the argument and applied the continuing violation doctrine: "the Court views the placement of the Decedent in the [Restrictive Housing Unit] as an act which is part of a pattern of conduct alleged against the Corrections Defendants that allegedly violated the Decedent's rights as a person with mental illness."[56] Such an act, Judge Gibson found, "evidences and is part of the alleged lack of professional attention and care that the Plaintiff views as a continuing pattern of discrimination in the Corrections Defendants' manner of treatment of prisoners, such as the Decedent, who are afflicted with mental illnesses. It suffices to state, without reviewing each of the allegations challenged by the Corrections Defendants, that the Court views the allegations of the Amended Complaint, not as discrete acts, but as a pattern of conduct supporting the application of the continuing violations doctrine."[57]

Judge Gibson's reasoning applies with equal force to the Commonwealth's repeated lack of attention and care to Mr. Geness. Timeliness is no bar to Mr. Geness's claims proceeding to discovery.[58]

## B. The Commonwealth's purported inability to direct its judges does not shield it from liability.

The Commonwealth argues we must dismiss Mr. Geness's amended complaint because the Commonwealth cannot control or direct the conduct of its judges; such supervisory power, it argues, belongs exclusively to the Pennsylvania Supreme Court. But despite the Commonwealth's

8

attempt to shield itself from liability by relying on separation of powers principles, the Supreme Court in *Tenneesee v. Lane* held "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment."[59]

Nor did our Court of Appeals identify such concerns as an obstacle to recovery under the ADA in its detailed opinion. Rather, it found "[a]s alleged, these multiple, protracted, and inexcusable delays in the handling of Geness's examinations, transfers, and motions—resulting in nearly a decade of imprisonment and civil commitment before a hearing was finally held on his habeas petition—are more than sufficient to state a claim under the ADA."[60] Our Court of Appeals cited various cases applying the ADA to claims alleging discrimination surrounding access to the courts. Our Court of Appeals found Mr. Geness "sufficiently pleaded" the elements required to state a claim under Title II of the ADA.[61] And although our Court of Appeals found Mr. Geness had not plead the deliberate indifference of Commonwealth actors, he has, as we detail below, amended to include specific allegations of deliberate indifference. Our Court of Appeals also found Mr. Geness's allegation "sufficient to sustain" his claim "that he was deprived ... of normal benefits of criminal procedure and due process of law, both as to his protracted incarceration without prompt transfer to a mental health facility, and his protracted institutionalization without a realistic prospect of trial."[62]

The Commonwealth also cites authority from our Court of Appeals holding Pennsylvania courts are immune from suit under Section I of the ADA.[63] In what appears to be the inverse of its argument it cannot control state judges, the Commonwealth argues the courts are "instrumentalit[ies]" of the state. To the extent the Commonwealth attempts to invoke sovereign

9

immunity here, Congress in Title II of the ADA expressly waived such immunity.[64] When a plaintiff alleges a cause of action under Title II for conduct violating both the ADA and the Fourteenth Amendment, Congress's waiver of sovereign immunity is clear and valid. Title II, the Supreme Court held in *United States v. Georgia*, "creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment."[65]

Our Court of Appeals' detailed analysis demonstrates Mr. Geness's sufficiently states a claim for conduct "that *actually* violate[d] the Fourteenth Amendment," and neither sovereign immunity nor the purported inability to control judges requires dismissal.

### C. Mr. Geness pleads the Commonwealth actors' deliberate indifference.

The Commonwealth argues Mr. Geness still fails to plausibly allege the deliberate indifference of Commonwealth actors, despite our Court of Appeals holding his failure to cure this defect on remand would preclude recovery of monetary damages.[66] Mr. Geness, however, now "ma[kes] the bare showing in the allegations of the amended complaint required to survive a motion to dismiss" his claims for monetary damages.[67]

Our Court of Appeals held Mr. Geness can only recover monetary damages on his ADA claim if he "'adequately ple[a]d[s] that [the Commonwealth] acted with deliberate indifference to the risk of an ADA violation.'"[68] To plead deliberate indifference, Mr. Geness must plausibly "allege '(1) knowledge that a federally protected right is substantially likely to be violated ... and (2) failure to act despite that knowledge.'"[69] Our Court of Appeals recently explained a plaintiff can carry her burden of showing deliberate indifference "in two different ways: first, by alleging facts suggesting that the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs, or, second, by alleging facts indicating that she could

10

prove that the risk of ... cognizable harm was so great and so obvious that the risk and the failure ...to respond will alone support finding deliberate indifference."[70]

Mr. Geness plausibly alleges facts indicating he can prove the risk of cognizable harm was "great" and "obvious." Mr. Geness alleges Judge Wagner and Fayette County Prison Warden Brian S. Miller served together "on an advisory committee designed to address issues relating to the Fayette County Prison."[71] Mr. Geness alleges "[t]hroughout the duration of [Mr. Geness's] incarceration, Warden Miller made numerous complaints directly to Defendant Wagner about [Mr. Geness's] mental health status and his unlawful and prolonged imprisonment."[72] Specifically, Mr. Geness alleges "Warden Miller insisted on multiple occasions that the Court remove [Mr. Geness] from the Fayette County Prison and repeatedly asked Defendant Wagner to 'do something' about the Plaintiff."[73]

Despite Warden Miller's alleged requests to Judge Wagner, the Judge "did not take any action to remove [Mr. Geness] from Fayette County Prison or to place [him] in a mental health facility."[74] Meanwhile, Mr. Geness languished in pretrial detention. When considered against the backdrop of the repeated findings of Mr. Geness's incompetence, coupled with the monthly opportunities to assess the status of the case at the "call of the list," the risk of cognizable harm would have been great and obvious. On November 29, 2010, for example, Judge Wagner ordered Mr. Geness "be transferred from Fayette County Prison to Torrance State Hospital ("Torrance") for a period not to exceed 90 days to again determine [Mr. Geness's] capacity to stand trial and to evaluate [his] ability to potentially regain competency within a reasonable period of time."[75] Judge Wagner ordered this transfer even though he previously deemed Mr. Geness incompetent to stand trial on June 18, 2007,[76] Judge Warman made the same finding on August 21, 2007,[77] and a court-

11

ordered psychiatric evaluation of September 25, 2007 found Mr. Geness had a "poor" prognosis for improvement.[78]

Mr. Geness's allegations of deliberate indifference contrast with those in *S.H. ex rel. Durrell v. Lower Merion School District*, in which our Court of Appeals rejected a plaintiff's attempt to show deliberate indifference by relying on information post-dating the challenged Commonwealth decision. The plaintiff alleged the school district's mislabeling her as a disabled student violated the ADA. Plaintiff argued on appeal there was "a genuine factual dispute as to whether the School District was deliberately indifferent toward" the student,[79] and relied on evaluations of three psychologists, which, the plaintiff claimed, "put the School District on notice."[80] Our Court of Appeals found the argument unpersuasive because a party prepared two of the evaluations for the lawsuit and the other after the school designated the student as a having a disability.[81] This is not the case today. Mr. Geness alleges Commonwealth actors on the prison's advisory council had communicated concerns surrounding his treatment contemporaneous with repeated monthly continuances and determinations he was incompetent to stand trial. Mr. Geness may therefore proceed to discovery on his claim for monetary damages under the ADA.

## IV.  Conclusion

In the accompanying order, we deny the Commonwealth's motion to dismiss Mr. Geness's amended complaint.

12

---

[1] *Geness v. Cox*, 902 F.3d 344, 348 (3d Cir. 2018).

[2] *Id.*

[3] ECF Doc. No. 121 at ¶ 17.

[4] *Id.* at ¶ 18.

[5] *Id.*

[6] *Id.*

[7] *Id.* at ¶ 19.

[8] *Id.* at ¶ 20.

[9] *Id.* at ¶ 21.

[10] *Id.* at ¶ 23.

[11] *Id.* at ¶ 22.

[12] *Id.* at ¶ 24.

[13] *Id.*

[14] *Id.* (internal quotation marks omitted).

[15] *Id.*

[16] *Id.* at ¶ 58.

[17] *Id.* at ¶ 26.

[18] *Id.* at ¶ 39.

[19] *Id.* at ¶ 41.

[20] *Id.* at ¶ 42.

[21] *Id.* at ¶ 43.

[22] *Id.* at ¶ 44.

[23] *Id.* at ¶ 45.

13

²⁴ *Id.* at ¶ 28.

²⁵ *Id.* at ¶ 29.

²⁶ *Id.* at ¶ 30.

²⁷ *Id.* at ¶ 46.

²⁸ *Id.* at ¶ 47.

²⁹ *Id.* at ¶ 48.

³⁰ *Id.* at ¶ 49.

³¹ *Id.* at ¶ 50.

³² *Id.* at ¶¶ 51, 58.

³³ *Id.* at ¶ 56.

³⁴ *Id.* at ¶ 58.

³⁵ *Id.* at ¶¶ 60–61.

³⁶ *See* ECF Doc. No. 1.

³⁷ ECF Doc. No. 77.

³⁸ *See* ECF Doc. No. 92–93.

³⁹ *Geness*, 902 F.3d at 349.

⁴⁰ ECF Doc. Nos. 145–46. When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement

14

for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[41] *See Geness*, 902 F.3d at 361; *see also United States v. Kennedy*, 682 F.3d 244, 253 (3d Cir. 2012) ("A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir.1985))).

[42] *See Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008) (holding "the statute of limitations applicable to claims under Title II of the ADA . . . is the statute of limitations for personal injury actions in the state in which the trial court sits," and applying "42 Pa. Cons. Stat. § 5524, which prescribes a two-year statute of limitations"); *Wright v. City of Philadelphia*, 229 F. Supp. 3d 322, 330 (E.D. Pa. 2017) (stating "the statute of limitations for a § 1983 claim is governed by the limitations period provided by state law for personal injury actions," which "is two years" in Pennsylvania).

[43] ECF Doc. No. 146 at 9.

[44] ECF Doc. No. 149 at 5.

[45] ECF Doc. No. 121 at ¶56.

[46] ECF Doc. No. 149 at 7.

[47] *See Geness*, 902 F.3d at 355 (holding although "we may toll the statute of limitations pursuant to a state law discovery rule or applicable federal tolling principle," "Geness has waived any tolling arguments on appeal, and the District Court correctly dismissed Geness's false arrest, false imprisonment, and reckless investigation claims as time-barred.").

[48] *Id.*

[49] *Id.* at 354 n.5.

[50] *Id.* at 361.

[51] *Foster v. Morris*, 208 F. App'x 174, 177 (3d Cir. 2006).

[52] *Geness*, 902 F.3d at 365.

[53] *Id.*

[54] No. 2004-191, 2007 WL 4111412 (W.D. Pa. Nov. 16, 2007).

[55] *Id.*, at *1.

[56] *Id.*, at *3.

⁵⁷ *Id.*

⁵⁸ We are also mindful "[our] Court [of Appeals] (and [its] sister circuit courts) have reasoned that, because the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion." *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 301–02 (3d Cir. 2010), *as amended* (Oct. 20, 2010); *see also Elchik v. Akustica, Inc.*, No. 12-00578, 2013 WL 1403341, at *2 (W.D. Pa. Apr. 5, 2013) ("Our Court of Appeals has cautioned that it is generally inappropriate to resolve a plausible equitable tolling argument against a plaintiff at the Motion to Dismiss stage, especially considering that the statute of limitations is an affirmative defense."). The Commonwealth, consistent with its obligations under Fed. R. Civ. P. 11, may therefore renew this argument on summary judgment, but should the Commonwealth raise this issue again, Mr. Geness may renew his alternative argument tolling is warranted in this exceptional circumstance due to Mr. Geness's mental illness. *See Geness*, 902 F.3d at 355 (holding, when appropriately raised by a party, "we may toll the statute of limitations pursuant to a state law discovery rule or applicable federal tolling principle").

⁵⁹ *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004).

⁶⁰ *Geness*, 902 F.3d at 362.

⁶¹ *Id.* at 361.

⁶² *Id.* at 363.

⁶³ *See* ECF Doc. No. 146 at 13.

⁶⁴ We note the Commonwealth never uses the words "sovereign immunity." But because the cases it cites discuss the doctrine, we address it in any event.

⁶⁵ *United States v. Georgia*, 546 U.S. 151, 159 (2006).

⁶⁶ *See* ECF Doc. No. 146 at 10–12.

⁶⁷ *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

⁶⁸ *Id.* (quoting *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018)). The applicable deliberate indifference standard mirrors the deliberate indifference standard we apply "in the context of § 1983 suits by prison inmates." *S.H ex rel Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, n. 23 (3d Cir. 2013).

⁶⁹ *Haberle*, 885 F.3d at 181 (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013)).

[70] *Haberle*, 885 F.3d at 181 (citation and internal quotation marks omitted).

[71] *Id.* at ¶ 42.

[72] *Id.* at ¶ 43.

[73] *Id.* at ¶ 44.

[74] *Id.* at ¶ 45.

[75] *Id.* at ¶ 39.

[76] *Id.* at ¶ 19.

[77] *Id.* at ¶ 22.

[78] *Id.* at ¶ 24.

[79] 729 F.3d 248, 265 (3d Cir. 2013).

[80] *Id.* at 266.

[81] *Id.*