# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CRAIG GENESS | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | NO. 16-876 |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                              **May 28, 2019**

Craig Geness, a life-long mentally impaired man once living in an adult group home, now seeks damages under the Americans with Disabilities Act alleging the Commonwealth of Pennsylvania discriminated against him by holding him in custody in Fayette County Prison for 3,309 days without a trial before finally dismissing charges against him.

Mr. Geness struggles to timely sue a responsible party. We dismissed his civil rights and state law claims against the arresting detective as untimely. Our Court of Appeals affirmed on those claims but remanded for us to consider the Commonwealth's liability under the Americans with Disabilities Act (ADA). After we found Mr. Geness plead an ADA claim, the Commonwealth argued it can only be sued through its agencies and officials. Mr. Geness responded by adding two Commonwealth agency defendants, the Administrative Office of Pennsylvania Courts (AOPC) and Pennsylvania Department of Human Services. Mr. Geness alleges the AOPC can be liable under the ADA both for the conduct of its agent judges in administering dockets and for systemic failures to ensure accessible courts.

The AOPC, repeating some of the Commonwealth's failed arguments, moves to dismiss arguing Mr. Geness fails to plead it violated the ADA, it is shielded by sovereign immunity and quasi-judicial immunity, and Mr. Geness's claims are time barred. At this preliminary stage and

mindful Mr. Geness is not challenging judicial decision making but rather failures in court administration practices touted to ensure accessibility for mentally impaired persons, Mr. Geness may proceed in challenging the AOPC's alleged failures in the second amended complaint. Discovery may allow us to understand the potential liability and damages among allegedly responsible state actors under the ADA.

## I. Allegations.

The Commonwealth criminal justice system's treatment of Mr. Geness is fully described in our May 1, 2017 Memorandum[1] and our Court of Appeals' August 28, 2018 Opinion.[2] As the specific conduct relating to the dismissed arresting detective and failures of prosecutors and defense lawyers are not before us today, we do not repeat the often-inexplicable litany of what our Court of Appeals described as "multipoint failures in the criminal justice system."[3] In response to the Commonwealth's arguments it cannot be held liable because it is an improper party (notwithstanding the Court of Appeals' direction on remand), Mr. Geness responded with a second amended complaint adding the AOPC and the Pennsylvania Department of Human Services.

Mr. Geness pleads at least two theories of liability against the AOPC: (1) under an agency theory, the Fayette County judges' unexplained failure to proceed with hearings, rulings or direction violate the ADA; and, (2) under a direct liability theory, the AOPC systemically failed to monitor and impose policies to ensure access to the courts for mentally impaired persons.

In support of his agency theory, Mr. Geness pleads:

- Over the course of his detention, Mr. Geness filed four Motions for *habeas corpus* relief and/or Motions to dismiss charges.

- Despite numerous opportunities to do so over his 3,309 days in custody, the Pennsylvania courts held no hearings or issued rulings on those motions despite the judges and AOPC's actual knowledge of Mr. Geness's unchanging mental state and prolonged detention in Fayette County Prison and his later detention.

2

- Judges repeatedly adjourned trial dates despite knowing Mr. Geness's permanent inability to stand trial.

- The Fayette County Prison Warden made numerous complaints to the assigned trial judge asking the criminal justice system to "do something" to remove Mr. Geness from prison.

- The Commonwealth through AOPC's failure to monitor judges' docket management exhibited deliberate indifference to Mr. Geness's right to be provided statutory safeguards for the protection of disabled persons, and exhibited deliberate indifference to Mr. Geness's rights.

On his direct liability theory, Mr. Geness pleads:

- AOPC supervises and administers the judicial branch of the Commonwealth and acted by and through its officials. AOPC is a subsidiary unit of the Commonwealth and acts as an agent related to supervision and administration of the Pennsylvania Unified Judicial System. The Pennsylvania Unified Judicial System includes judges of the Court of Common Pleas of the various Pennsylvania counties, including Fayette County. In its capacity as a subsidiary unit of the Commonwealth, AOPC administers the Pennsylvania Unified Judicial System and is responsible for the prompt and proper disposition of all businesses of the courts of the Commonwealth of Pennsylvania.

- Among the duties and responsibilities of the AOPC is ensuring accessible and safe courts for all citizens. The duties of the AOPC include ensuring the courts of the Commonwealth comply with the ADA. The AOPC attempts to ensure compliance with the ADA through interaction with ADA coordinators in each county. For Fayette County, the deputy court administrator, who reports directly to the court administrator, is the ADA coordinator.

- As part of its effort to fulfill its responsibility to ensure the Commonwealth's compliance with the ADA, the AOPC regularly inquires of each county's ADA coordinator about cases involving criminal defendants who are pretrial detainees whose cases have not been timely called to trial under Pennsylvania law.

- AOPC repeatedly contacted the Fayette County court administrator directly to inquire about Mr. Geness's case and the reasons for extended incarceration without trial. Notwithstanding those inquiries, neither the AOPC, nor any other agent of AOPC, including the AOPC's local ADA coordinator in Fayette County, acted to provide Mr. Geness with his right to be brought to trial on the charges he faced.

- During the period of Mr. Geness's incarceration from in or about November 2006 through in or about December 2015, the Fayette County court administrator received from the Fayette County Prison a daily list of prisoners incarcerated in the Fayette County Prison. This list included various information about each

3

incarcerated individual, including the date the individual was incarcerated, as well as the minimum and maximum incarceration dates for each prisoner.

- Mr. Geness appeared on this list every day.

- The AOPC's actions are part of an unlawful pattern and course of conduct intended to harm Mr. Geness with reckless disregard and/or deliberate indifference to his rights.

## II. Analysis

### A. Mr. Geness continues to plead an ADA claim.

In our February 1, 2019 Memorandum explaining why we denied the Commonwealth's motion to dismiss, we found "Mr. Geness 'sufficiently pleaded' a claim under Title II of the ADA,"[4] pleaded "conduct 'that *actually* violate[d] the Fourteenth Amendment,'"[5] and properly "amended to include specific allegations of deliberate indifference."[6] Mr. Geness repeats the same allegations. He adds the AOPC as a responsible party. AOPC's argument of no involvement, or the more central involvement of the Department of Human Services, is based on facts requiring discovery on relative culpability.

The issue is whether the AOPC is immune from this type of ADA claim.

### B. The AOPC, like the Commonwealth, has not shown a basis for sovereign immunity.

In our February 1, 2019 Memorandum, we found sovereign immunity poses no bar to Mr. Geness's claim against the Commonwealth,[7] because "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."[8] The AOPC nonetheless argues it is entitled to sovereign immunity even though the Commonwealth of which it is "an arm" is not shielded by such immunity.[9] This argument is unavailing. Mr. Geness plausibly alleges the

4

AOPC's conduct violated Title II of the ADA[10] and the Fourteenth Amendment's due process protections, so "Title II validly abrogates state sovereign immunity."[11]

The AOPC argues liability cannot attach because it does "not [have] a duty to micromanage case filings."[12] But Mr. Geness does not allege the AOPC must act as standby legal counsel for all Pennsylvania citizens or supplant the crucial role of Pennsylvania trial or appellate judges. Mr. Geness instead alleges the AOPC is responsible for "[e]nsuring accessible and safe courts for all citizens" by "[e]nsuring that the courts of the Commonwealth comply with Title II of the Americans with Disabilities Act."[13]

Mr. Geness plausibly pleads the AOPC's failure to discharge its duties with respect to ADA compliance substantially—even if not exclusively—caused his lengthy pretrial detention. Mr. Geness alleges the AOPC discharges its critical ADA compliance duties by "mak[ing] regular inquiries of each county's ADA coordinator with regard to cases involving criminal defendants who are pretrial detainees whose cases have not been called to trial in a timely fashion according to Pennsylvania law."[14] In Fayette County, Pennsylvania, the deputy court administrator holds "the role of AOPC ADA coordinator" and "reports directly to the court administrator."[15]

As to his own case, Mr. Geness alleges "the Fayette County court administrator received from the Fayette County Prison a daily list of prisoners incarcerated in the Fayette County Prison," and Mr. Geness appeared on this list along with key "information about his incarceration."[16] Mr. Geness alleges the "AOPC repeatedly contacted the Fayette County court administrator directly to inquire about [Mr. Geness's] case and the reasons for [his] extended incarceration without trial."[17] But "neither the AOPC, nor any other agent of AOPC, including the AOPC's local ADA coordinator in Fayette County, took any action designed to provide [Mr. Geness] with his right to be brought to trial on the charges that he faced."[18]

Seemingly looking beyond these plausible allegations, the AOPC claims *as a matter of law* it could not have acted to help Mr. Geness. The Pennsylvania Rules of Judicial Administration suggest otherwise. Among numerous duties, these Rules charge the AOPC with "review[ing] the operation and efficiency of the system and of all offices related to and serving the system and, when necessary . . . report[ing] to the Supreme Court or the Judicial Council with respect thereto"[19]; "examin[ing] the state of the dockets and practices and procedures of the courts and of the magisterial district judges and mak[ing] recommendations for the expedition of litigation"[20]; and "prepar[ing] educational and training materials for system and related personnel and to conduct educational and training sessions."[21] Mr. Geness plausibly pleads the AOPC could have helped him by exercising its duty to monitor the status of dockets and make recommendations to expedite litigation, ensure ADA compliance at a systemic level in the courts of the Commonwealth, and reporting to the Pennsylvania Supreme Court.

We are again guided by our Court of Appeals' finding "the[] multiple, protracted, and inexcusable delays in the handling of [Mr.] Geness's examinations, transfers, and motions—resulting in nearly a decade of imprisonment and civil commitment before a hearing was finally held on his habeas petition—are more than sufficient to state a claim under the ADA,"[22] and "[t]hese same circumstances are also sufficient to sustain [Mr.] Geness's claim that he was depr[ived] ... of normal benefits of criminal procedure and due process of law, both as to his protracted incarceration without prompt transfer to a mental health facility, and his protracted institutionalization without a realistic prospect of trial."[23]

Of course, a developed factual record may show, *as a matter of fact*, the AOPC could not have done more. The question may then be left to our jury. But Mr. Geness's claim is plausible and we cannot resolve fact disputes at this stage. For the same reason we cannot now resolve the

6

AOPC's argument the Pennsylvania Department of Human Services is the party solely or more responsible for Mr. Geness's harm. The AOPC, however, may pursue this argument through a cross-claim against the Department of Human Services.

### C.     The AOPC cannot shield itself in quasi-judicial immunity.

The AOPC also fails to demonstrate quasi-judicial immunity categorically bars Mr. Geness from proceeding to discovery. "Quasi-judicial immunity, as one might guess, evolved out of its well-known namesake, judicial immunity,"[24] which "is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability."[25] Because "[t]he fair administration of justice depends not only on judges,"[26] "[q]uasi-judicial absolute immunity attaches when a public official's role is 'functionally comparable' to that of a judge.'"[27]

When considering a claim of quasi-judicial immunity, our Court of Appeals directs our focus to an official's duties rather than mere title. "Regardless of his job title, if a state official must walk, talk, and act like a judge as part of his job, then he is as absolutely immune from lawsuits arising out of that walking, talking, and acting as are judges who enjoy the title and other formal indicia of office."[28] Quasi-judicial immunity also protects "a range of judicial actors" performing functions integral to the judicial process.[29]

Before we can consider the AOPC's functions under this framework, however, we cannot avoid the AOPC's failure to clear a more fundamental hurdle to its claim of quasi-judicial immunity: it is not a public official acting in an individual capacity. It is not a *public official* at all. It is an entity. And courts across the country—including our Court of Appeals—have routinely declined to extend the "strong medicine"[30] of quasi-judicial and other absolute immunities to non-persons. Our Court of Appeals' analysis in *Lonzetta Trucking & Excavating Co. v. Schan*[31] is

7

instructive. In *Lonzetta*, a civil rights case stemming from a zoning dispute, our Court of Appeals acknowledged precedent finding zoning board members "ruling on a zoning permit for a particular piece of property are performing a quasi-judicial function" for purposes of quasi-judicial immunity.[32] But our Court of Appeals clarified an important distinction applicable here. Although the officials "would be entitled to absolute immunity in their *individual* capacities if they were performing 'quasi-judicial' functions[,] . . . the zoning officials in their *official* capacities, the Hazle Township Zoning Board, and the Hazle Township are not entitled to absolute immunity. The planning board as a governmental agency has no immunity whatsoever."[33]

In *Dotzel v. Ashbridge*, our Court of Appeals again recognized quasi-judicial immunity shields only individual actors "from suit in their individual capacities."[34] In *Dotzel*, members of the Board of Supervisors of Salem Township, Pennsylvania claimed quasi-judicial immunity in a suit for alleged constitutional violations stemming from their denial of a permit for a conditional use of a piece of land.[35] Our Court of Appeals held "[t]he Board members here were acting in a quasi-judicial capacity, and are absolutely immune from suit in their individual capacities."[36] Our Court of Appeals described "zoning disputes" as "among the most fractious issues faced by municipalities, and the risk of threats and harassment is great," and found, among other things, the township zoning proceedings bear the "hallmarks of adversarial proceedings."[37] But our Court of Appeals limited its finding of quasi-judicial immunity solely to "[a]ny actions against [the members] *in their individual capacities.*"[38] "The remaining substantive due process claim against the Township and the Board members in their official capacities," our Court of Appeals clarified, "is not affected by our decision in this appeal."[39]

Our Court of Appeals is not alone in finding quasi-judicial immunity inapplicable to entities—and for good reason. The United States Court of Appeals for the Seventh Circuit

8

described "[o]fficial immunities (judicial, legislative, absolute, qualified, quasi, and so on) a[s] personal defenses designed to protect the finances of public officials whose salaries do not compensate them for the risks of liability under vague and hard-to-foresee constitutional doctrines," and "[t]hat justification does not apply to suits against units of state or local government, which can tap the public fisc."[40]

Although our research primarily yielded cases discussing official immunity doctrines in the context of 42 U.S.C. § 1983, the parties do not address how, if at all, quasi-judicial immunity might apply differently under Title II of the ADA. We note ADA's focus on equal access to public services would be rendered toothless if every state agency could derivatively claim quasi-judicial immunity and avoid its obligation to ensure equal access to courtroom. Such an expansion of the quasi-judicial immunity doctrine to entities free to draw from the public fisc would disregard, and likely perpetuate, what our Supreme Court in *Tennessee v. Lane*, described as the "long history" of "unequal treatment of disabled persons in the administration of judicial services."[41] We decline to do so here.

But even if the AOPC's status as an entity did not preclude it seeking quasi-judicial immunity, the AOPC is not entitled to such immunity. As we have already described, the Pennsylvania Rules of Judicial Administration detail the AOPC's various administrative duties.[42] The AOPC lacks authority to exercise judicial decision-making powers or sit as an adjudicative body.[43] The AOPC does not hear cases or apply precedent. Nor does it have a duty to "micromanage case filings" or "prosecute any action on behalf of members of the general public."[44] The United States Supreme Court has instructed "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts."[45] The AOPC articulates no compelling explanation of how it is, or why it must

9

be, "insulat[ed] from political influence."[46] To the extent Mr. Geness premises liability on the AOPC's failure to conduct its duty to monitor and address "system-wide problems," the AOPC does not enjoy the broad shield of quasi-judicial immunity.[47] And as we have quoted at length above, Mr. Geness specifically pleads liability based on the AOPC's role in managing ADA compliance.

### D. We already held Mr. Geness's claims are timely.

We decline to revisit our February 1, 2019 finding Mr. Geness's claims are timely. They remain so.

## III. Conclusion

The Administrative Office of Pennsylvania Courts cannot rely upon fact-based arguments of "not me" when Mr. Geness pleads its role in managing access to courts including through an ADA coordinator in Fayette County. It has not shown a basis for immunity for systemic failures in policy-making to ensure ADA compliance. Mr. Geness's claims are not time-barred based on the plausible allegations of a continuing and "connected pattern of indifference."[48]

---

[1] *Geness v. Cox*, No. 16-876, 2017 WL 1653613 (W.D. Pa. May 1, 2017).

[2] *Geness v. Cox*, 902 F.3d 344 (3d Cir. 2018)).

[3] *Id.* at 365.

[4] *Geness v. Pennsylvania*, 364 F. Supp. 3d 448, 456 (W.D. Pa. 2019) (quoting *Geness*, 902 F.3d at 361).

[5] *Id.* (alteration in original) (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)).

[6] *Id.*

[7] *See Geness*, 364 F. Supp. 3d at 456.

⁸ *Georgia*, 546 U.S. at 159; *see also Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004) (holding "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment").

⁹ ECF Doc. No. 188 at 16 of 33.

¹⁰ 42 U.S.C. § 12131 *et seq.*

¹¹ *Georgia*, 546 U.S. at 159.

¹² *Gay v. Pines*, 835 A.2d 402, 404 (Pa. Commw. Ct. 2003).

¹³ ECF Doc. No. 183 at ¶ 7.

¹⁴ ECF Doc. No. 183 at ¶ 66.

¹⁵ *Id.* at ¶ 7.

¹⁶ *Id.* at ¶ 69–70.

¹⁷ *Id.* at ¶ 67.

¹⁸ *Id.*

¹⁹ Pa.R.J.A. No. 505(1).

²⁰ Pa.R.J.A. No. 505(6).

²¹ Pa.R.J.A. No. 505(12).

²² *Geness*, 902 F.3d at 362.

²³ *Id.* at 363 (third alteration in original) (internal citation and quotation marks omitted). Our Court of Appeals' findings undermine the AOPC's reliance on *King v. Indiana Supreme Court*, in which the district court in Indiana, as relevant here, dismissed the plaintiff's ADA claim against the court administrator because the plaintiff failed to allege a person or entity aside from the court "took part in the actual decision to deny his request for an [American Sign Language] interpreter." No. 14-01092, 2015 WL 2092848, at *15 (S.D. Ind. May 5, 2015). After the court later awarded damages to the plaintiff following a bench trial, the United States Court of Appeals for the Seventh Circuit reversed the judgment, finding Title II of the ADA "does not abrogate sovereign immunity" because the "case has no constitutional dimension at all." *King v. Marion Circuit Court*, 868 F.3d 589, 593 (7th Cir. 2017), *cert. denied sub nom. King v. Marion Cty. Circuit Court*, 138 S. Ct. 1582 (2018). Here, by contrast, Mr. Geness alleges the specific involvement of the AOPC in his case and its systemic failure and our Court of Appeals has already described in detail the plausibility of Mr. Geness's constitutional claims.

[24] *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018).

[25] *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993).

[26] *Russell*, 905 F.3d at 247.

[27] *Hamilton v. Leavy*, 322 F.3d 776, 785 (3d Cir. 2003) (quoting *Butz v. Economou,* 438 U.S. 478, 513 (1978)); *see also Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006) ("As its name suggests, 'quasi-judicial' immunity is a doctrine under which government actors whose acts are relevantly similar to judging are immune from suit.").

[28] *Dotzel*, 438 F.3d at 325.

[29] *Russell*, 905 F.3d at 247.

[30] *Forrester v. White*, 484 U.S. 219, 230 (1988) (quoting *Forrester v. White*, 792 F.2d 647, 660 (7th Cir. 1986) (Posner, J., dissenting)).

[31] 144 F. App'x 206 (3d Cir. 2005).

[32] *Id.* at 210; *see also Bass v. Attardi*, 868 F.2d 45, 51 (3d Cir. 1989) ("Thus in this case, the suit naming the members of the Planning Board in their official capacities in effect makes the Planning Board a defendant. The Planning Board as a governmental entity has no immunity whatsoever.").

[33] *Lonzetta*, 144 F. App'x at 211; *see also Teed v. Hilltown Twp.*, No. 03-6040, 2004 WL 1149486, at *7 (E.D. Pa. May 20, 2004) ("Governmental entities are not entitled to quasi-judicial immunity from a suit under § 1983.").

[34] *Dotzel*, 438 F.3d at 327.

[35] *Id.* at 322–23.

[36] *Id.* at 327.

[37] *Id.* at 325, 327.

[38] *Id.* at 327.

[39] *Id.* at n.5.

[40] *Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006), *cert. denied*, 552 U.S. 974 (2007); *see also VanHorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007) (finding "[c]ase law from our sister circuits also supports the conclusion that absolute, quasi-judicial immunity only extends to claims against defendants sued in their individual—not official—capacities").

[41] *Lane*, 541 U.S. at 531.

[42] *See* Pa.R.J.A. No. 505.

[43] *See Pines*, 835 A.2d at 404.

[44] *Id.* at 404–05.

[45] *Forrester v. White,* 484 U.S. 219, 228 (1988).

[46] *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985).

[47] *Pines*, 835 A.2d at 404.

[48] *Geness*, 364 F. Supp. 3d at 454.