## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CRAIG GENESS | : CIVIL ACTION |
| | : |
| v. | : NO. 16-876 |
| | : |
| COMMONWEALTH OF | : |
| PENNSYLVANIA | : |

## MEMORANDUM

**KEARNEY, J.**                                                      **December 5, 2019**

After court-ordered mediation, the Pennsylvania Department of Human Services agreed to pay $375,000 to settle claims brought against it in March 2019 by Craig Geness, a mentally impaired man who spent over nine years in custody awaiting a hearing on whether he was competent to stand trial for a criminal homicide before being released by a state court judge before he could answer the charges at trial. As required given Mr. Geness's incompetency, Mr. Geness and the Department now move for our approval of their settlement terms. As we previewed in a show cause order, we must evaluate the settlement's fairness given Mr. Geness's present needs, the possible effect of a settlement on remaining claims, and forty percent of the settlement allocated to attorney's fees.     Our concern is heightened when a limited guardian appointed by a Pennsylvania orphan's court offers no evidence to assess the fairness of the settlement amount based on her client's present need, the effect of the settlement on other claims, or as to the attorney's fees. Mindful of our duty, we deny the motion to approve the settlement without prejudice to be renewed with enough evidence adduced through the limited guardian's fulsome affidavit or possibly at an evidentiary hearing which may allow us to more fully evaluate the credibility of the limited guardian's possible newly articulated grounds warranting approval of this settlement. The parties may alternatively choose to proceed towards trial.

## I.    Facts

Craig Geness is a mentally disabled adult who lived at an assisted living facility for intellectually disabled individuals in 2006.[1]  On October 27, 2006, another resident fell from the facility's front porch and eventually died from his injuries.[2]  Three contemporaneous records demonstrated the resident accidentally fell, but police investigated, obtained a confession from Mr. Geness on November 16, 2006 and charged him with aggravated assault on November 17, 2006.[3]  After the resident died of his injuries, police charged Mr. Geness with criminal homicide.[4]

Mr. Geness then entered custody and control of the Pennsylvania criminal justice system for over nine years without a trial.  As our Court of Appeals observed, "[t]he administration of justice went awry for [Mr.] Geness from the outset."[5]  The state court did not schedule a preliminary hearing for over five months.[6]  Mr. Geness's public defender moved the Court of Common Pleas of Fayette County for habeas relief, asserting police obtained Mr. Geness's confession in violation of his constitutional rights.[7]  Fayette County Common Pleas Judge Leskinen declined to rule, opining Mr. Geness "was 'not at the present time competent to stand trial.'"[8]  Ten months passed after his arrest before a state doctor performed a psychological examination of Mr. Geness.[9]  The psychiatrist diagnosed Mr. Geness with mild mental retardation with an IQ of 51 and schizoaffective bipolar disorder.[10]

"[T]he cycle of indifference continued" as Mr. Geness remained trapped in a cycle of delayed psychiatric examinations and inaction by Judge Leskinen, the district attorney, and the public defender.[11]  Five years after Mr. Geness's arrest, and with the homicide charge still pending, Judge Leskinen transferred Mr. Geness to involuntary commitment in a long term structured residence.[12]  Mr. Geness obtained new counsel, Bernadette Tummons, in March 2012, but his fortunes did not improve.[13]  While Attorney Tummons made "numerous and repeated discovery

2

requests" of the district attorney, she failed to seek court intervention because "doing so would have flaunted [sic] the common practice of Fayette County ..., would not have been successful, and would have assuredly soured [her] already tenuous relationship with the Office of the District Attorney."[14]

Two years later, in June 2014, Attorney Tummons received document production prompting her to think Mr. Geness's November 17, 2006 *Miranda* waiver and confession might not have been voluntary.[15] Attorney Tummons met with Mr. Geness who told her he confessed on November 16, 2006 because "the police told him" to.[16] Ms. Tummons waited almost a full year, until May 2015, to move to compel further discovery from the district attorney.[17] In September 2015, Attorney Tummons finally moved to dismiss the indictment and moved again for habeas relief.[18] But rather than rule on Mr. Geness's motion to dismiss or habeas petition, Judge Leskinen invited the district attorney to abandon the charges and submit a request for *nolle prosequi*, and advised he would just "sign it" if submitted.[19]

When the district attorney complied, Judge Leskinen entered the *nol pros* Order but declined to mention the district attorney's inability to sustain its evidentiary burden, only referencing Mr. Geness's incompetence.[20] Judge Leskinen finally released Mr. Geness in mid-December 2015, over nine years after his arrest.[21]

### *Mr. Geness signs a contingency fee agreement.*

At or around the time the state court released Mr. Geness after nine years in prison, Attorney Tummons met with Attorney Joel Sansone to discuss a possible civil rights suit on behalf of Mr. Geness.[22] Attorney Sansone agreed to meet Mr. Geness. Attorney Sansone knew Mr. Geness lacked competency when he first met him.[23] But Attorney Sansone, "out of an abundance of caution," had Mr. Geness "sign a fee agreement at the first meeting."[24] Mr. Geness and

3

Attorneys Sansone and Terzigni signed a Power of Attorney and Contingent Fee Agreement on

February 29, 2016 ("Fee Agreement") providing:[25]

> KNOW ALL MEN BY THESE PRESENTS, that I, CRAIG A. GENESS, do hereby appoint LAW OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE and MASSIMO A. TERZIGNI, ESQUIRE, as my attorneys to represent me in a claim for damages that I have against FAYETTE COUNTY, JASON COX and JOHN/JANE DOES(S) based on violations of my civil rights which occurred on or about November 17, 2006.

> I hereby agree that the compensation for my attorneys for legal services

rendered shall be determined as follows:

> A. Out of whatever sum is secured from the *above-named Defendant*, either by verdict or by settlement, my attorneys shall retain forty (40%) percent of the gross amount received;[26] ...

Attorney Sansone defined his representation as against Fayette County, Jason Cox, and

Jane or John Does based on violations of his civil rights in the police investigation and conduct

which occurred on or about November 17, 2006.[27] There is no evidence Attorney Sansone sought

a guardian to review the Fee Agreement for Mr. Geness's best interests before he signed it although

Mr. Sansone knew Mr. Geness lacked competence. There is no evidence Attorney Sansone

addressed additional defendants with Mr. Geness or Attorney Tummons. There is no evidence the

Department of Human Services played a role in the November 17, 2006 conduct defined in the

Fee Agreement.

The Fee Agreement further contemplates fee shifting:

> I am aware that under the law a Defendant may be required to pay some amount as counsel fees if I am successful in pursuing my claim. In the event that counsel fees are awarded, I hereby agree to the following:

> (A) Said award of counsel feels shall be credited toward the gross amount received, as mentioned in Paragraph A above;

4

(B)     In the event that the amount awarded or agreed upon as counsel fees exceeds the sum recoverable under the contingent fee agreement outlined above, said fee shall remain the sole property of my attorneys; however, I shall have no obligation to pay any additional amount for services rendered by them in connection with this case; and

(C)     In the event that no counsel fees are awarded, the fees charged by my attorney shall be limited to the fees described above. Under no circumstances will I be required to pay my attorneys any legal fees other than those specified by the terms or conditions of this Agreement, excepting, however, that in the event of an appeal from a verdict or other dispositions, fees for said appeal will be negotiated separately.[28]

The Fee Agreement also required Mr. Geness pay "for the expenses incurred in this case."[29] The Fee Agreement explains "[s]uch costs include counsel fees assessed by the Court, and other expenses of suit, such as deposition costs, travel costs, witness fees and expert fees, together with long distance telephone charges, facsimile charges, messenger services, legal research, photocopying, etc. . . ."[30]

### *Mr. Geness's claims in this case.*

On June 17, 2016, Mr. Geness, now represented by Attorney Sansone, sued the City of Uniontown, Fayette County, arresting officer Detective Jason Cox, and the owners of Mr. Geness's assisted living facility, James and Jean McVey.[31] He alleged they violated: the Americans with Disabilities Act;[32] his constitutional rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendment for malicious prosecution, false arrest, false imprisonment, reckless investigation, violation of Mr. Geness's right to equal protection as a disabled person; and for conspiracy under 42 U.S.C. §§ 1983 and 1985; a *Monell* municipal liability civil rights claim;[33] and, a state law claim for intentional infliction of emotional distress.

Detective Cox and the City of Uniontown moved to dismiss for failure to state a claim.[34] Mr. Geness withdrew his claims against Uniontown during oral argument and we dismissed

Uniontown from the action.[35] We dismissed the equal protection and malicious prosecution claims against Detective Cox. We could not then determine if Detective Cox enjoyed qualified immunity.[36]

Detective Cox answered Mr. Geness's complaint, denying all claims and asserting affirmative defenses.[37] On February 10, 2017, we referred the case to mediation.[38] The parties did not resolve the case.[39] No guardian represented Mr. Geness's interests in this mediation.

On March 1, 2017, Attorney Sansone filed a notice of voluntary dismissal of James and Jean McVey.[40] Attorney Sansone then sought to amend the complaint to add the Commonwealth as a defendant on an Americans with Disabilities Act claim. After our earlier rulings in the case and Mr. Geness's voluntary dismissal of defendants, only Detective Cox remained as a defendant. Mr. Geness's proposed amended complaint named only Detective Cox and the Commonwealth of Pennsylvania. We granted Mr. Geness leave to amend his complaint to remove his conspiracy claim, but denied him leave to add an Americans With Disabilities Act claim against the Commonwealth.[41] Mr. Geness filed his amended complaint naming only Detective Cox.[42] Detective Cox moved for summary judgment. We granted Detective Cox's summary judgment motion, finding (1) Mr. Geness did not adduce evidence Detective Cox lacked probable cause, (2) Detective Cox entitled to qualified immunity, (3) Mr. Geness did not adduce evidence of a reckless investigation, (4) Mr. Geness did not adduce evidence of intentional infliction of emotional distress, and (5) the statute of limitations barred Mr. Geness's claims and closed the case.[43] Attorney Sansone filed a notice of appeal.[44]

### *After we closed the case, the state court appoints a limited guardian who allegedly ratified the Fee Agreement to assert claims against dismissed parties.*

In May 2017, after we closed the case and Attorney Sansone appealed, Attorney Sansone now apparently realized Mr. Geness (whom he knew to be incompetent since their first meeting)

6

required a guardian to protect his rights. Attorney Sansone asked Attorney Tummons for help to locate a suitable guardian for Mr. Geness. Attorney Tummons located Attorney Karen Kiefer, a lawyer in good standing in Fayette County but who now resides in Stuart, Florida. Attorney Kiefer agreed to represent Mr. Geness *pro bono*. The Fayette County Orphan's Court entered a decree on July 6, 2017 appointing Attorney Kiefer as a "Limited Guardian of the person and Estate of Craig A. Geness for the specific purpose of assisting in the prosecution of the federal lawsuit and making decisions with regard to all matters related thereto."[45]

Attorney Sansone now claims Limited Guardian Kiefer "agreed at that time, on behalf of [Mr. Geness], to ratify the existing fee agreement, although such ratification was oral and not put in writing."[46] There is no evidence Limited Guardian Kiefer ratified the Fee Agreement at the time of the appointment other than Attorney Sansone's representation. By the time of Limited Guardian Kiefer's appointment, we had already closed this case against the persons identified in the Fee Agreement and Attorney Sansone already appealed our entry of judgment dismissing Mr. Geness's case.

### *Our Court of Appeals remands to consider the Commonwealth's ADA liability.*

In August 2018, our Court of Appeals affirmed our dismissal of Mr. Geness's civil rights claims as either time-barred or insufficiently substantiated through discovery.[47] It affirmed our dismissal of Mr. Geness's malicious prosecution claim.[48] But it reversed our denial of Mr. Geness's request to amend,[49] holding Mr. Geness's proposed amended complaint to add Americans with Disabilities Act and Due Process claims against the Commonwealth were not futile.[50] It remanded to allow Mr. Geness to "reinstate his claims against the Commonwealth."[51]

Mr. Geness, through Attorney Sansone, filed an amended complaint against the Administrative Office of Pennsylvania Courts, the Commonwealth of Pennsylvania, Judges

7

Solomon, Leskinen, Wagner, Warman, and Cappuzzi of the Court of Common Pleas of Fayette County, Fayette County District Attorneys Vernon and Heneks, and Fayette County Public Defender Jeffrey Whiteko.[52] The Commonwealth then moved to dismiss for failure to state a claim.[53]

On February 1, 2019, we denied the Commonwealth's motion to dismiss because (1) Mr. Geness stated a timely claim for relief; (2) the Commonwealth's purported inability to direct the conduct of its judges is no bar to relief under Title II of the Americans with Disabilities Act; and, (3) Mr. Geness plausibly plead deliberate indifference of Commonwealth actors so he may sustain his claim for monetary damages under the Act.[54] The Commonwealth answered Mr. Geness's lawsuit on March 1, 2019.[55]

We allowed Mr. Geness to again amend his complaint and, on March 27, 2019, Mr. Geness filed his second amended complaint adding the Pennsylvania Department of Human Services (the "Department").[56] On May 28, 2019, we denied the Administrative Office's motion to dismiss.[57] On June 14, 2019, we denied the Department's motion to dismiss.[58] The Department answered the second amended complaint on June 28, 2019.[59]

### Mr. Geness and the Department agree to settle.

We found Mr. Geness's second amended complaint stated claims under the Americans with Disabilities Act against the Commonwealth of Pennsylvania, the Administrative Office of Pennsylvania Courts, and the Department. On July 22, 2019, we ordered Mr. Geness, the Commonwealth, Administrative Office of Pennsylvania Courts, and the Department to mediation on August 30, 2019 before Attorney David B. White.[60] On October 24, 2019, Mr. Geness and the Department jointly moved to approve a settlement agreement ("Proposed Settlement Agreement").[61]

The Proposed Settlement Agreement releases the Department from all liability in exchange for a payment of $375,000.00.[62] The parties agreed to divide the settlement, allocating $214,363.26 to a special needs trust established for Mr. Geness, and $160,636.74 to Attorney Sansone for attorney's fees and costs under the Fee Agreement.[63]

Limited Guardian Kiefer swears she participated in the parties' mediation on August 30, 2019 by telephone; she participated in negotiations between Mr. Geness and all parties including the Department; she agreed to the $375,000 settlement with the Department; she believes the settlement amount with the Department is commensurate with its liability in the action; and, she reviewed the settlement agreement and believes the terms and conditions are acceptable and reflect the agreement between the parties.[64] Limited Guardian Kiefer swears the money obtained from the settlement will be placed in a special needs trust "to finance any health issues [Mr. Geness] may experience, as well as for any of [Mr. Geness's] daily living needs [and] if feasible, the money may be used to place Mr. Geness in a more accommodating living facility."[65] The Limited Guardian does not explain her basis for concluding the settlement amount is reasonable or the fairness of the fees to be paid to Attorney Sansone other than the terms reflect an agreement between the parties.

### *Attorney Sansone's responses to our October 25, 2019 Order.*

Concerned with a settlement awarding substantial fees to Attorney Sansone arising from limited work involving the Department since March 27, 2019, we ordered Attorney Sansone produce an *in camera* copy of the signed Fee Agreement. In the same October 25, 2019 Order, we directed Attorney Sansone and Limited Guardian Kiefer address three questions:

> 1. What is the standard for approval of this contingent attorney's fee given Mr. Geness's ability to contract or appreciate the use of the funds particularly in a fee shifting claim under the Americans with Disabilities Act;

9

2. Why does the guardian view the forty percent contingent fee as fair mindful we possibly have not reached a "gross" settlement amount or should we hold the fee in escrow until final order; and,

3. Why should the consideration paid by the Department of Human Services satisfy counsel's out of pocket costs incurred to date when only one of several Defendants settled and for costs incurred before adding the Department to the case on March 24, 2019 (ECF Doc. No. 183).[66]

Attorney Sansone addressed our first question regarding the standard for approval of the Fee Agreement by explaining his relationship with Mr. Geness, including the circumstances through which Attorney Sansone began his representation of Mr. Geness.[67] Attorney Sansone explained he had no earlier experience with clients with a "significantly low I.Q." and "out of an abundance of caution" instructed Mr. Geness to sign the February 29, 2016 Fee Agreement.[68]

Over a year later, Attorney Sansone realized Mr. Geness required a guardian and reached out to Attorney Tummons to help him locate one.[69] Attorney Kiefer (residing in Florida) agreed to act as Mr. Geness's guardian on a *pro bono* basis, and, after the Court of Common Pleas of Fayette County appointed her as a limited guardian, Attorney Kiefer orally ratified the Fee Agreement.[70] There is no evidence Attorney Sansone provided Limited Guardian Kiefer an amended or revised Fee Agreement reflecting an agreement as to payment of fees for a recovery from anyone other than Fayette County, Detective Cox or Jane/John Does relating to the events of November 17, 2006.

Attorney Sansone directs us to three cases for the standard of approval for contingent attorney's fees: *Coleman v. U.S.*;[71] *Gilmore v. Dondero*;[72] and *Johnson v. Clearfield Area School District*.[73] In *Coleman*, Judge Robreno applied Pennsylvania substantive law to the allocation of settlement funds and the approval of attorney's fees even in a case based on federal question jurisdiction.[74] In *Gilmore*, the Pennsylvania Superior Court affirmed the trial court's reduction of counsel fees paid from the proceeds of a minor's compromise claim from one-third under a fee

agreement between the minor's parents and counsel to a one-quarter fee. The superior court analyzed the trial court's decision under Pennsylvania Rule of Civil Procedure 2039. Rule 2039 requires "[n]o action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor."[75] Affirming the trial court, the superior court recognized while "this court is reluctant to poke its judicial nose into contracts between client and counsel, and even with the situation involving the rights of a minor, we are reluctant to be too intrusive, too assertive. But under our Rule 2039 mandate, we have an affirmative duty to be more than a passive, *pro forma* rubber stamp [of attorney's fees.]"[76]

In *Johnson*, the district court applied a ten-factor test used in the application of Rule 2039 to requested attorney's fees.[77] Evaluation of the effectiveness of an attorney's performance is analyzed under the following factors: "(1) the amount of work performed; (2) the character of the services rendered; (3) the difficulty of problems involved; (4) the importance of the litigation; (5) the degree of responsibility incurred; (6) whether the fund involved was 'created' by the attorney; (7) the professional skill and standing of the attorney in her profession; (8) the result the attorney was able to obtain; (9) the ability of the client to pay a reasonable fee for the services rendered; and (10) 'very importantly' the amount of money in question."[78]

Attorney Sansone did not address our question concerning a contingent fee agreement in a fee shifting case under the Americans with Disabilities Act. He instead stated, "under this point, counsel does not understand the Court's reference to the fee shifting provisions of the ADA. Certainly, if the Plaintiff, through the guardian and counsel, elected to go to trial against [the Department], the issue of recovery after a successful verdict of fees and costs would be a salient

11

claim. However, as counsel, in consultation with the guardian, has elected to resolve the claims against Defendant DHS, this issue appears to be moot."[79]

Our question concerned the standard for approving Attorney Sansone's contingent fee where the ADA allows for the recovery of attorney's fees to the prevailing party.[80] Attorney Sansone seemingly argues because the matter resolved through mediation and did not go to trial, whether the ADA's fee shifting provision applies is moot. Our first question remains unanswered.

Our second question asked why Limited Guardian Kiefer views the forty percent contingent fee as fair. In response, Attorney Sansone (not the Limited Guardian) contends his contingent fee is fair, arguing "this case presented challenges like no other case in counsel's long and varied career"; he faced "many challenges … in pursuing the rights of [Mr. Geness]"; Attorney Sansone and his team "overc[a]me significant obstacles in the way of any recovery for [Mr. Geness]"; and he "has been able to obtain this first amount of funds by virtue of a settlement that resulted from a mediator's recommendation that was embraced by both sides."[81] Attorney Sansone argues his four year litigation "fight," the expenditure of "hundreds of hours and thousands of dollars on behalf of [Mr. Geness] without any compensation, and without any guarantee of compensation" makes it fundamentally fair and proper for an award of attorney's fees for Attorney Sansone's efforts to date without holding fees until conclusion of the entire case.

Attorney Sansone appends affidavits from attorneys familiar with his practice and the appropriateness of the fee award. He tells us Limited Guardian Kiefer "reviewed the affidavits submitted in connection with this request, and has accepted the opinions contained therein as valid as they related to the ultimate award of fees in this case."[82] Attorney Sansone supplied no case law in support of his position.

Most tellingly, Limited Guardian Kiefer offered no response to our questions. We do not know why she would, in the exercise of her fiduciary obligations, view this forty percent fee as fair especially when the Fee Agreement she reviewed and ratified after we closed the case involved payments from other defendants and not a payment from the Department. We do not know why she would not provide evidence in response to our questions.

In response to our third question regarding satisfying out-of-pocket costs from the Department's proposed $375,000 settlement, Attorney Sansone cites the Fee Agreement involving payment by parties other than the Department: "[t]he simple answer here is to cite the contingent fee agreement between the parties, ratified by the guardian."[83]  He explained the payment of costs by a client "has been a component of counsel's fee structure throughout his practice," and [n]othing in the agreement limits counsel from recovering any and all costs from any monies paid by any Defendant."[84]  Of course, nothing in the Fee Agreement identifies the Department as a defendant.

Attorney Sansone argues "the vast majority of costs expended relate directly or generally to establishing and sustaining the claims made against Defendant [Department], since that agency is a representative or agent of the real party in interest, the Commonwealth, which has been a Defendant from the inception of the case."[85]

In sum, Attorney Sansone argues the Commonwealth is the "ultimate [d]efendant" and since the Department's settlement funds will flow from the Commonwealth, "it seems reasonable … the requested costs will be reimbursed from the settlement money tendered by the Commonwealth."[86]

## II.  Analysis

Mr. Geness and the Department move to approve the Proposed Settlement Agreement including the payment of attorney's fees and costs.[87]  The Proposed Settlement Agreement releases the Department from all liability in exchange for a payment of $375,000.00.[88]  The Proposed Settlement Agreement allocates $214,363.26 to a special needs trust established for Mr. Geness and $160,636.74 to Attorney Sansone for attorney's fees and costs under Mr. Geness's Fee Agreement.[89]

We have an inherent duty to protect the interests of minors and incompetents who appear before us.[90]  "As part of that duty, the court must determine the fairness of any settlement agreement and the reasonableness of any attorneys' fees to be paid from the settlement amount in a suit brought on behalf of a minor or incompetent."[91]  The United States District Court for the Western District of Pennsylvania Local Rule 17.1 requires court approval for settlement of actions involving minors or incompetent persons: "No action to which a minor is a party shall be compromised, settled, discontinued or dismissed except after approval by the Court pursuant to a petition presented by the guardian of the minor or the natural guardian of the minor, such as the circumstances might require."[92]  The minor or incompetent's attorney "shall file with the Clerk of the Court, as part of the record, a petition containing (1) a statement of the nature of the evidence relied on to show liability, (2) the elements of damage, (3) a statement of the services rendered by counsel, (4) the expenses incurred or to be incurred and (5) the amount of fees requested.  The petition shall contain written statements of minor's attending physicians, setting forth the nature of the injuries and the extent of recovery.  If required by the Judge, such statements of attending physicians shall be in affidavit form.  The petition shall be verified by the affidavit of the minor's counsel. …"[93]

"The determination of the fairness of a settlement agreement involving a minor and the reasonableness of the amount to be apportioned from the proceeds of that settlement agreement in payment of attorneys' fees implicates the parties' substantive rights."[94] Federal courts exercising diversity jurisdiction apply state law to consider the fairness of a minor's or incompetent person's compromise and the reasonableness of the attorney's fees to be apportioned from the settlement amount.[95] Federal courts exercising federal question jurisdiction apply federal law to substantive rights except where "federal law does not expressly establish a rule of decision."[96] In that case, "where the state law on the issue is well-developed and the application of state law will not impinge upon any federal interest, the court may 'borrow' state law to fill the gap in the federal statutory scheme."[97]

Mr. Geness asserted claims against the Department under the Americans with Disabilities Act. There is nothing in the Act providing a standard for a court to evaluate a minor's or incompetent person's compromise. Like the courts in *Nice* and *Johnson* assessing minors' compromise in federal civil rights litigation, we apply Pennsylvania law to determine the fairness of the Proposed Settlement Agreement. [98]

Pennsylvania Rule of Civil Procedure 2064 requires court approval for a settlement of an incapacitated person's claim: "[n]o action to which an incapacitated person is a party shall be compromised, settled, or discontinued except after approval by the court pursuant to a petition presented by any party in interest."[99] "When a compromise or settlement has been approved by the court, or when a judgment has been entered upon a verdict or by agreement, the court, upon petition by the guardian or the guardian ad litem or any party to the action, shall make an order approving or disapproving any agreement entered into by the guardian or the guardian ad litem for the payment of counsel fees and other expenses out of the fund created by the compromise,

15

settlement or judgment; or the court may make such order as it deems proper fixing counsel fees and other proper expenses. The balance of the fund shall be paid to the guardian of the estate of the incapacitated person qualified to receive the fund, if there is one or one is to be appointed. The balance of the fund payable to the guardian of the estate may include a structured settlement underwritten by a financially responsible entity that assumes responsibility for future payments or a trust as described in subdivision (b)(4) of this rule."[100]

We may evaluate the reasonableness of Attorney Sansone's fees and costs under both Rule 2064 and Local Rule 17.1.[101] The court in *Johnson* applied both Pennsylvania law and Local Rule 17.1 because "the Commonwealth's jurisprudence in this area is well-developed, and Pennsylvania where the alleged civil rights violations occurred clearly has an interest in safeguarding the affairs of minor litigants."[102] We see no authority to distinguish the settlement of minor's claims from the settlement of an incompetent person's claims and, in response to our show cause order, Attorney Sansone cited cases addressing the settlement of minors' claims.

Pennsylvania courts are "given the mandate to supervise all aspects of settlements in which a minor is a party in interest, ... and in considering whether to approve a settlement, the Court is charged with the best interests of the minor."[103] "In considering petitions to approve compromise settlement and distribution, the court must assess the following: (1) the sufficiency of the petition; (2) the fairness of the proposed settlement amount; and (3) the reasonableness of the requested counsel fees."[104]

Applying these standards, we consider the sufficiency of the Motion to approve the settlement agreement and attorney's fees; the fairness of the proposed Settlement Agreement; and, the reasonableness of the requested forty percent attorney's fees.

16

The parties' Motion argues they engaged in mediation and agreed to settle all claims against the Department in exchange for a $375,000 payment by the Department.[105] Attorney Sansone "believes that a settlement in this amount was a proper decision given the risks inherent in the litigation of this matter and that the settlement amount is proportional to [the Department's] liability" and, "[t]herefore, it was in [Mr. Geness's] best interest to secure this amount in settlement with [the Department] without adversely affecting his claims against [the Administrative Office of the Pennsylvania Courts]."[106] Attorney Sansone additionally states his Fee Agreement with Mr. Geness, "ratified by [Limited Guardian Kiefer], provides for payment to [Attorney Sansone] of 40 percent of the gross settlement amount" as well as out-of-pocket costs to date of $10,636.74.[107] In support, the parties attach the Affidavit of Limited Guardian Kiefer and a statement of out-of-pocket expenses.[108]

In response to our show cause order raising concerns about the contingency Fee Agreement, Attorney Sansone submitted a copy of the Fee Agreement; time sheets for Attorneys Sansone, Terzigni, and Tuttle; time sheets for Paralegal Ridjaneck; and five affidavits from attorneys attesting to the appropriateness of a forty percent contingent fee.[109]

A motion for approval of a settlement must adduce sufficient evidence on which we may base a determination.[110] A motion should include "all relevant facts and the reasons why the minors' guardian believe the settlement is desirable and why it is in the minors' best interest to settle the action."[111] "[R]elevant facts include a description of the minor's physical and/or psychological condition, a statement and/or discussion regarding the minor's current physical and/or mental health needs, evidence of the extent of the minor's condition, and the need for future medical and/or psychological care, as well as future expenses."[112]

## A. We lack evidence to determine the fairness of the Proposed Settlement Agreement with the Department.

We are aware generally the "parties and counsel are ... in the best position to evaluate the settlement and their judgments are entitled to considerable weight."[113] But we "must make an independent evaluation with regard to the fairness of the settlement value" to a minor or incompetent person to ensure these "litigants receive a fair settlement under the circumstances."[114]

Limited Guardian Kiefer submitted an Affidavit in support of the Motion to approve the settlement agreement with the Department.[115] Limited Guardian Kiefer swears to her involvement in the negotiations between Mr. Geness and all parties, including the Department; she made the decision to agree to a $375,000 settlement with the Department; she believes the settlement with the Department is commensurate with its liability in this matter; and "the money obtained from the settlement will be placed in a special needs trust to finance any health issues [Mr. Geness] may experience, as well as for any of [his] daily living needs" and, "if feasible, the money may be used to place Mr. Geness in a more accommodating living facility."[116]

But we have no other information. We have no idea of Mr. Geness's current health condition to determine whether the settlement proceeds placed in a special needs trust "to finance any health issues" is reasonable; we have no idea of Mr. Geness's current living arrangements and of his daily living needs; and, we have no idea how to determine whether it will ever be "feasible" to place Mr. Geness "in a more accommodating living facility" which seems to suggest his current living arrangement is less than accommodating.[117]

In *Nice*, the court examined the settlement of minor's federal civil rights claim against a school district for damages resulting from a hazing incident while participating in a high school sports program. In *Johnson*, the court examined the settlement of a minor's claim alleging the denial of a free appropriate public education in violation of the federal statute, including the

18

Americans with Disabilities Act. And in *Calvert*, the court examined the settlement to minors' claims against an insurance policy after the death of a parent. In all three cases, the courts conducted an independent evaluation of the proposed settlements. For example, in *Calvert* the court concluded the distribution of the proposed settlement served the best interests of the children but, because the court did not have information to assess the current and future health of the children, it ordered the guardian to submit an amended petition addressing the children's current mental and physical statute and future medical needs to "allow the Court to better assess the sufficiency of the Petition and therefore ensure that the best interests of the minors are served."[118] The court denied the petition with leave to renew. Similarly in *Johnson*, the court found it did not have sufficient information about the minor's physical and mental condition and educational needs to determine if the settlement is fair and proper, and denied the motion without prejudice with leave to renew.[119] In *Nice*, the court approved the settlement agreement but only after conducting a hearing and the representations of counsel and the parents of the minor there were no unpaid medical bills and no future medical expenses.[120]

We have no such information here. We will allow Limited Guardian Kiefer to submit a fulsome affidavit providing evidence as to Mr. Geness's condition necessary for our mandated independent evaluation of the fairness of the settlement agreement.

### B. We lack evidence to approve attorney's fees to be apportioned from the settlement amount.

Even assuming we could evaluate the proposed settlement's fairness, we must still assess the reasonableness of Attorney Sansone's fees. In doing so, we must "strike a balance between being a 'passive *pro forma* rubber stamp' ... and being too intrusive in [our] consideration of the fairness of counsel fees."[121] Especially where, as here, the attorney's fees affect the ultimate amount awarded to Mr. Geness for his continuing care in a special needs trust, "[i]t is incumbent

19

upon counsel to persuade [us] ... the attorneys' fees and costs requested are reasonable and equitable."[122]

"Under Pennsylvania law, when a trial judge determines the amount of reasonable attorneys' fees in cases involving minors, the judge is not bound to all of the terms of a contingency fee agreement."[123] Rule 2064(b) expressly provides "[w]hen a compromise or settlement has been approved by the court, or when a judgment has been entered upon a verdict or by agreement, the court, upon petition by the guardian or the guardian ad litem or any party to the action, shall make an order approving or disapproving any agreement entered into by the guardian or the guardian ad litem for the payment of counsel fees and other expenses out of the fund created by the compromise, settlement or judgment; or the court may make such order as it deems proper fixing counsel fees and other proper expenses."[124]

Mr. Geness filed a second amended complaint on March 27, 2019 against the Commonwealth, Administrative Offices of Pennsylvania Courts, and the Department.[125] Attorney Sansone has not adduced evidence of a written fee agreement or oral agreement with Mr. Geness or ratified by the Limited Guardian allowing a contingency fee for a recovery against the Department. If we liberally construe Attorney Sansone's responses to our show cause Order, Limited Guardian Kiefer reviewed the settlement with the Department, presumably including the fee included in the settlement, and found the settlement fair. But we curiously do not have an affidavit from Limited Guardian Kiefer swearing she reviewed or approved the Fee Agreement and, even if she did approve it, an explanation why Mr. Sansone's forty percent contingent fee is appropriate today.

### 1. There is no fee agreement for Mr. Geness's action against the Department.

Under Pennsylvania law, "the intent of the parties to a written contract is contained in the writing itself."[126] "'Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence,' instead, the meaning of a clear and unequivocal written contract 'must be determined by its contents alone.'"[127] "[W]here language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended."[128] We give effect to "clear contractual terms ... capable of one reasonable interpretation ... without reference to matters outside the contract."[129] We look outside the "four corners" of a contract if its terms are unclear, ambiguous, and susceptible to more than one reasonable interpretation.[130]

Mr. Geness agreed to appoint Attorney Sansone, his law firm, and Attorney Terzigni to represent him "in a claim for damages that I have against Fayette County, Jason Cox and John/Jane Doe(s) based on violations of my civil rights which occurred on or about November 17, 2006."[131] Mr. Geness agreed compensation "for legal services rendered shall be determined as follows: A. Out of whatever sum is secured *from the above-named Defendant* ...." The Fee Agreement addresses fee shifting providing, in part, "[u]nder no circumstances will I be required to pay my attorneys and any legal fees other than those specified by the terms or conditions of this Agreement ...."[132] This unambiguous language excludes all attorney's and "any legal fees" not specified in the Fee Agreement. The Department is not included as "an above-named Defendant" from which a "sum is secured" nor do Mr. Geness's claims against the Department arise out of the events of November 17, 2006.

Attorney Sansone argues the Fee Agreement, ratified by Limited Guardian Kiefer, "calls for a contingent recovery 'out of whatever sum is secured' from the Defendant (the Department

became a defendant [in March 2019 in the] Second Amended Complaint)." But the Fee Agreement does not say any Defendant; the words used are "out of whatever sum is secured from the above-named Defendant" and the Department is not one of them. For unknown reasons, Mr. Geness did not have a guardian at the time he signed the Fee Agreement. The Orphan's Court appointed Attorney Kiefer a year-and-a-half later and after we dismissed all claims against all named parties and we dismissed all parties defined in the Fee Agreement. Attorney Sansone tells us the Limited Guardian orally ratified the Fee Agreement. We have no other fee agreement. Even if the Fee Agreement is ambiguous, we would construe an ambiguity against Attorney Sansone as the drafter.[133] The Fee Agreement ratified by the Limited Guardian does not specify fees to be paid for a recovery paid by the Department for its conduct long after November 16, 2006. The Fee Agreement has no bearing on Attorney Sansone's fee for recovery against the Department.

### 2. Review of Attorney Sansone's fees under quantum meruit.

Absent a written fee agreement against the Department for conduct unrelated to November 2006, we may evaluate whether the attorneys should be paid based on an unjust enrichment or quantum meruit theory. If so, we examine the reasonableness of fees submitted by Attorneys Sansone, Terzigni, Tuttle, and Paralegal Ridjaneck.[134]

Pennsylvania law requires us to conduct a two-step analysis when considering the reasonableness of Attorney Sansone's attorney's fees paid from the Proposed Settlement Agreement.[135] First, we consider whether the Pennsylvania "court of common pleas in the county with jurisdiction over [Mr. Geness] has adopted a presumptive lodestar for fees involving the settlement of [an incompetent person's] claims."[136] Second, if a lodestar exists, we "may adjust that lodestar depending upon the effectiveness of counsel's performance under the circumstances."[137]

22

Assuming the Court of Common Pleas of Fayette County has jurisdiction over Mr. Geness, we look to its local rules. The Fayette County Court of Common Pleas does not have a presumptive lodestar for fees involving the settlement of a minor or incompetent.[138] Under this circumstance, we look to "Pennsylvania case law for policies underlying a presumptive lodestar for such cases, and [we] examine the effectiveness of the counsels' performance" under the ten-factors applied in *Nice*.[139] These factors are: "(1) the amount of work performed; (2) the character of the services rendered; (3) the difficulty of problems involved; (4) the importance of the litigation; (5) the degree of responsibility incurred; (6) whether the fund involved was 'created' by the attorney; (7) the professional skill and standing of the attorney in her profession; (8) the result the attorney was able to obtain; (9) the ability of the client to pay a reasonable fee for the services rendered; and (10) 'very importantly' the amount of money in question."[140]

We are mindful we "have an affirmative duty to be more than a passive *pro forma* rubber stamp" and our "continuing responsibility to guard the interests of the [incompetent] and, where necessary, to disapprove the payment of a windfall to counsel from the fund recovered on behalf of the [incompetent],"[141] as well as Pennsylvania Rule of Civil Procedure 2064(b) requiring a court "shall make an order approving or disapproving any agreement entered into by the guardian … for the payment of counsel fees and other expenses out of the fund created by the … settlement." Lacking any evidence from Limited Guardian Kiefer on the appropriateness of the attorney's fees sought by Attorney Sansone and his firm absent a written fee agreement, we cannot determine the appropriateness of the attorney's fees sought today under this alternative theory.

## III.    Conclusion

In the accompanying Order, we deny the parties' Motion to approve settlement agreement without prejudice to be renewed with sufficient evidence.

23

[1] *Geness v. Cox*, 902 F.3d 344, 349 (3d Cir. 2018).

[2] *Id.*

[3] ECF Doc. No. 1 at ¶¶ 22-23.

[4] *Id.* at ¶ 29.

[5] *Geness*, 902 F.3d at 350.

[6] *Id.* at 351.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* at 352.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 353.

[21] *Id.*

[22] ECF Doc No. 251 at 2 n. 3; ECF Doc. No. 251-2 at 1.

[23] ECF Doc. No. 251 at 1-2 ("When [Mr. Sansone] first met [Mr. Geness], [Mr. Sansone] had a general understanding . . . [Mr. Geness] suffers from a significantly low I.Q., and . . . he suffers from complex mental health issues which impact on his ability to give cogent answers to questions posed to him.").

[24] *Id.* at 2.

[25] ECF Doc. No. 251-1.

[26] ECF Doc. No. 251-1 at 1, ¶ A (emphasis added).

[27] *Id.*

[28] *Id.* at 2.

[29] *Id.* at 1, ¶ B.

[30] *Id.*

[31] ECF Doc. No. 1.

[32] 42 U.S.C. § 12131 *et seq.*

[33] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[34] ECF Doc. No. 15.

[35] ECF Doc. No. 30.

[36] ECF Doc. No. 31 at 11.

[37] ECF Doc. No. 36.

[38] ECF Doc. No. 64.

[39] ECF Doc. No. 99.

[40] We granted Mr. Geness's voluntary dismissal of James McVey and dismissed him with prejudice and vacated an earlier default judgment against him. We denied Mr. Geness's voluntary dismissal of Jean McVey without prejudice because of Mrs. McVey's bankruptcy filing. We granted Mr. Geness leave to file an amended complaint not naming Mrs. McVey as a party. ECF Doc. No. 75.

[41] ECF Doc. Nos. 92, 93.

[42] ECF Doc. No. 100.

[43] ECF Doc. Nos. 110, 111.

[44] ECF Doc. Nos. 113, 115.

[45] ECF Doc. No. 246-2, Affidavit of Karen Kiefer at ¶ 2. We are not provided with the order appointing Limited Guardian Kiefer as the limited guardian of Mr. Geness and the Estate of Craig A. Geness. Pennsylvania law provides for a limited guardian of a person and of the estate: "Upon a finding that the person is partially incapacitated and in need of guardianship services, the court shall enter an order appointing a limited guardian of the person with powers consistent with the court's findings of limitations, which may include: (1) General care, maintenance and custody of the incapacitated person. (2) Designating the place for the incapacitated person to live. (3) Assuring that the incapacitated person receives such training, education, medical and psychological services and social and vocational opportunities, as appropriate, as well as assisting the incapacitated person in the development of maximum self-reliance and independence. (4) Providing required consents or approvals on behalf of the incapacitated person." 20 Pa. Con. Stat. Ann. § 5512.1(b). "Upon a finding that the person is partially incapacitated and in need of guardianship services, the court shall enter an order appointing a limited guardian of the estate with powers consistent with the court's finding of limitations, which shall specify the portion of assets or income over which the guardian of the estate is assigned powers and duties." *Id.* at § 5512.1(d).

[46] ECF Doc. No. 251 at 3.

[47] *Geness*, 902 F.3d at 354.

[48] *Id.* at 359.

[49] ECF Doc. Nos. 67, 69.

[50] *Geness*, 902 F.3d at 360.

[51] *Id.* at 365.

[52] ECF Doc. No. 121. Mr. Geness later withdrew his claims against the judges of the Court of Common Pleas of Fayette County and one claim against the Administrative Office of Pennsylvania Courts. ECF Doc. No. 150.

[53] ECF Doc. No. 145.

[54] ECF Doc. No. 153.

[55] ECF Doc. No. 167.

[56] ECF Doc. No. 183.

[57] *Geness v. Pennsylvania*, 388 F. Supp. 3d 530, 531-32 (W.D. Pa. 2019), *appeal docketed sub nom.* No. 19-2253, *Geness v. Administrative Office of Pa. Courts, et al.* (3d Cir. June 3, 2019).

[58] ECF Doc. No. 217.

[59] ECF Doc. No. 221.

[60] ECF Doc. No. 223.

[61] ECF Doc. No. 246. Mr. Geness and the Commonwealth filed cross-motions for summary judgment which remain pending. The Administrative Office of Pennsylvania Courts appealed our order denying its Motion to dismiss and moved to stay further proceedings, including Mr. Geness's motion for summary judgment against the Commonwealth. The Administrative Office's motion to stay remains pending.

[62] ECF Doc. No. 246-1 at 2, ¶ 2.

[63] *Id.* The contingency fee agreement allocated forty percent of any recovery, before costs, to Mr. Sansone.

[64] ECF Doc. No. 246-2, Affidavit of Karen Kiefer at ¶¶ 3-6, 9.

[65] *Id.* at ¶ 8.

[66] ECF Doc. No. 248.

[67] Attorney Sansone's response began by suggesting he may be confused:

> Counsel for the Plaintiff wishes to be respectfully candid with the Court related to the issues raised in the instant Order. Counsel does not completely understand all of the references in the Court's Order, nor the exact nature of the information requested within each of the three areas of interest identified by the Court. Therefore, Counsel will endeavor to answer, to the greatest extent possible, what counsel perceives the Court to be requesting.

ECF Doc. No. 251 at 1 n.1.

[68] *Id.* at 2.

[69] *Id.*

[70] *Id.* at 2-3.

[71] No. 04-3994, 2005 WL 2230319 (E.D. Pa. Sept. 13, 2005).

[72] 582 A.2d 1106 (Pa. Super. Ct. 1990).

[73] 319 F. Supp. 2d 583 (W.D. Pa. 2004).

[74] *Coleman*, 2005 WL 2230319 at *1.

[75] Pa. R. Civ.P. 2039(a).

[76] *Gilmore*, 582 A.2d at 1109 (quoting *Edwards v. Downingtown Area Sch. Dist.*, 34 Ches. Co. Rep. 346, 347 (1986)).

[77] *Johnson*, 319 F. Supp. 2d at 590.

[78] *Id.* at 590-91 (citing *Nice v. Centennial Area Sch. Dist.*, 98 F. Supp. 2d 665, 671 (E.D. Pa. 2000)).

[79] ECF Doc. No. 251 at 6-7.

[80] 42 U.S.C. § 12205.

[81] ECF Doc. No. 251 at 7.

[82] *Id.*

[83] ECF Doc. No. 251 at 8.

[84] *Id.*

[85] *Id.* at 8-9.

[86] *Id* at. 9. His admission fairly raises the question whether this payment then releases the Commonwealth from remaining liability.

[87] ECF Doc. No. 246.

[88] ECF Doc. No. 246-1 at 2, ¶ 2.

[89] *Id.*

[90] *Nice*, 98 F. Supp. 2d at 667 (citing *Eagan by Keith v. Jackson*, 855 F. Supp. 765, 775 (E.D. Pa. 1994)).

[91] *Id.*

[92] Local R. Civ. P. 17.1(A).

[93] *Id.* at 17.1(B).

[94] *Nice*, 98 F. Supp. 2d at 667 (citing *Calvert v. Gen. Accident Ins. Co.*, No. 99-3599, 2000 WL 124570 at * 5 (E.D. Pa. Feb. 2, 2000)).

[95] *Id.* (citations omitted).

[96] *Id.*

[97] *Id.* at 668.

[98] In *Nice*, the court applied Pennsylvania law to evaluate a minor's compromise of claims asserting violations of federal civil rights and attorney's fees to be apportioned from the settlement. The court found nothing in the civil rights statutes at issue, 42 U.S.C. §§ 1983-1988, "supplies the rule of decision by which a minor's compromise of a civil rights claim should be reviewed by a court." *Id.* at 669 (footnote omitted). In *Johnson*, the court applied Pennsylvania law to determine the fairness of minor's compromise and requested attorney's fees in action claiming denial of free appropriate public education under federal statute. including the ADA. *Johnson*, 319 F. Supp. 2d at 589. In *Eagan*, the court sitting in diversity applied New Jersey law to evaluate the settlement of claims brought by the guardian of an accident victim rendered incompetent. *Eagan by Keith*, 855 F. Supp. at 776.

[99] Pa. R. Civ. P. 2064(a). Similarly, Pennsylvania Rule of Civil Procedure 2039(a) provides "[n]o action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor." Pa. R. Civ. P. 2039(a).

[100] Pa. R. Civ. P. 2064(b).

[101] In *Johnson*, the court considered the reasonableness of the request for attorney's fees drawn from the settlement amount under both Rule 2039(b) and Local Rule 17.1 "as both have been interpreted to include the same discretionary requirement." *Johnson*, 319 F. Supp. 2d at 588 n.4.

[102] *Id.*, at 586 n.3 (citations omitted).

[103] *Johnson*, 219 F. Supp. 2d at 586 (citing *Power by Power v. Tomarchio*, 701 A.2d 1371, 1374 (Pa. Super. Ct. 1997)).

[104] *Id.* (citing *Calvert*, 2000 WL 124570 at * 5-6). Attorney Sansone provided us timesheets documenting his firm's work on this case. ECF Doc. No. 251-2. These records reflect work completed by Attorneys Sansone, Terzigni, Tuttle, and Paralegal Ridjaneck. Mr. Sansone sets his hourly fee at $600, Attorney Terzigni at $300, Attorney Tuttle at $225, and Paralegal Ridjaneck at $85. *Id.* at 6, n.8. Attorney Sansone's timesheets first reflect work relating to the Department's liability on March 20, 2019. *Id.* at 10. From March 20, 2019 to today, Mr. Sansone recorded approximately 31.1 hours relating to the Department. We do not include time Attorney Sansone spent preparing for appellate practice, time designated "AOPC," and undesignated time we cannot divine to relate to Attorney Sansone's representation with respect to the Department. Attorney Terzigni recorded approximately 20.85 hours on his representation with respect to the Department.

*Id.* Attorney Tuttle recorded approximately 14.2 hours on her representation with respect to the Department. *Id.* Paralegal Ridjaneck recorded approximately 1.5 hours assisting with the representation with respect to the Department. In sum, the firm spent approximately 66.15 attorney hours and 1.5 paralegal hours directly representing Mr. Geness with respect to the Department. Alternatively, calculating all the time the Sansone firm spent on the entire representation since March 27, 2019, Mr. Sansone billed 134.35 hours, Attorney Terzigni billed 74.4 hours, Attorney Tuttle billed 65.6 hours, and Paralegal Ridjaneck billed 43 hours.

[105] ECF Doc. No. 246 at ¶ 1.

[106] *Id.* at ¶ 2.

[107] *Id.* at ¶ 3.

[108] ECF Doc. Nos. 246-2, 246-3.

[109] ECF Doc. No. 251.

[110] *Johnson*, 319 F. Supp. 2d at 586 (citing *Sligh v. Friskies Petcare, Inc.*, No. 00-5559, 2001 WL 1549544, at *1 (E.D. Pa. Dec. 3, 2001) and *Calvert*, 2000 WL 124570 at *5-6).

[111] *Calvert*, 2000 WL 124570 at * 5 (citing *Collier v. Officer*, No. 98-3261, 1998 WL 666036, at *1 (E.D. Pa. Sept. 24, 1998)).

[112] *Johnson*, 319 F. Supp. 2d at 587.

[113] *Id.* (quoting *Calvert*, 2000 WL 124570 at * 5).

[114] *Id.* (quoting *Collier v. Officer*, No. 98-3261, 1998 WL 666036, at *1 (E.D. Pa. Sept. 24, 1998)

[115] ECF Doc. No. 246-2.

[116] *Id.* at ¶ 8.

[117] We also lack information required by Local Rule 17.1 requiring Limited Guardian Kiefer to petition the court containing (1) a statement of the nature of the evidence relied on to show liability, (2) the elements of damage, (3) a statement of the services rendered by counsel, (4) the expenses incurred or to be incurred and (5) the amount of fees requested. Local Rule 17.1(B) requires statements from the minor's or incompetent person's physician regarding the nature of injuries and extent of recovery. While this appears to pertain to tort injuries, these factors are at least relevant to Mr. Geness's current physical and mental state and living conditions and expenses.

[118] *Calvert*, 2000 WL 124570 at *6.

[119] *Johnson*, 319 F. Supp. 2d at 588.

[120] *Nice*, 98 F. Supp. 2d at 670.

[121] *Stecyk v. Bell Helicopter Textron, Inc.*, 53 F. Supp. 2d 794, 800-01 (E.D. Pa. 1999) (quoting *Gilmore*, 582 A.2d at 1109).

[122] *Sonsenke v. Norwood*, No. 91-2623, 1993 WL 512824, at \*5 (E.D. Pa. Dec. 6, 1993), *aff'd*, 37 F.3d 1489 (3d Cir. 1994).

[123] *Id.* at \*3 (citing *Estate of Murray v. Love*, 602 A.2d 366 (Pa. Super. Ct. 1992); *Gilmore*, *supra*).

[124] Pa. R. Civ. P. 2064(b).

[125] ECF Doc. No. 183.

[126] *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 92 (3d Cir. 2001) (quoting *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. Ct. 1993)).

[127] *Id.* (quoting *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)).

[128] *Id.* at 93.

[129] *Id.* (quoting *Krizovensky*, 624 A.2d at 642).

[130] *Id.*

[131] ECF Doc. No. 251-1 at 1.

[132] ECF Doc. No. 251-1 at 2, ¶ C.

[133] *Nguyen v. O'Neill*, 894 EDA 2013, 2013 WL 11250766, at \* 3 (Pa. Super. Ct. Nov. 27, 2013) (citing *In re Jerome Markowitz Trust*, 71 A. 3d 289, 301 (Pa. Super. Ct. 2013)).

[134] ECF Doc. No. 251-2.

[135] *Nice*, 98 F. Supp. 2d at 670 (citing *Gilmore*, 582 A.2d at 1109-10).

[136] *Id.*

[137] *Id.*

[138] *See Johnson*, 319 F. Supp. 2d at 589 n.7 ("[V]arious other counties in Pennsylvania have adopted a presumptive lodestar for fees involving the settlement of a minor's claims); *Nice,* 98 F. Supp. 2d at 670-71 (adopting the presumptive lodestar of twenty-five percent promulgated by the Court of Common Pleas of Bucks County); *Stecyk*, 53 F. Supp. 2d at 801 (adopting the Delaware County presumptive lodestar of twenty-five percent); *Gilmore*, 582 A.2d at 1109-10 (approving trial court's application in determining fee award, of the then in place Chester County Court of

Common Pleas local rule providing for a 25% presumptive lodestar); *Henderson ex rel. Bethea v. Nationwide Mut. Ins. Co.*, No. 00-1215, 2001 WL 43648, at *2 (E.D. Pa. Jan. 4, 2001) (adopting the Philadelphia County local rule providing for a presumptive lodestar of one-third of the amount of the net fund recovered).

[139] *Johnson*, 319 F. Supp. 2d at 589.

[140] *Nice*, 98 F. Supp. 2d at 671 (citing *Gilmore*, 582 A.2d at 1109-10).

[141] *Gilmore*, 582 A.2d at 1110 (footnote omitted0.