**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CRAIG GENESS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  16-876** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                            **July 29, 2020**

Craig Geness is a fifty-three-year-old mentally disabled man who spent nearly ten years in Fayette County custody (rather than in an appropriate facility supervised by the Pennsylvania Department of Human Services) awaiting a repeatedly postponed hearing on his competence to stand trial for a charged homicide the Commonwealth later conceded it could not prove. After spending months attempting to pursue an untimely civil rights claim filed in Fall 2016, his experienced counsel persuaded our Court of Appeals to remand so we may explore a possible disabilities act claim against the Commonwealth.  His counsel then sued several Commonwealth parties before adding the Department in March 2019 under the Americans with Disabilities Act. After we denied the Department's motion to dismiss last summer, Mr. Geness's counsel negotiated a $375,000 payment from the Department in exchange for releasing the Department.  He continues to proceed towards trial against the remaining defendants Commonwealth and Administrative Office of Pennsylvania Courts.  We earlier denied Mr. Geness's first motion for approval.

We today evaluate a more fulsome attempt to persuade us as to the fairness of a proposed $375,000 partial settlement.  After considering the newly appointed Limited Guardian's sworn representations based on the type of investigation we expected when we first denied this request in December 2019, we approved this partial settlement in a July 16, 2020 Order.  This

compensation paid in exchange for a release of one of three defendants provides funds deposited into a special needs trust for his long-term or catastrophic care as it appears his present needs are met by state programs.  Mr. Geness's counsel believes he can supplement the special needs trust with later recoveries from the remaining defendants.

The tougher question is how much of this partial settlement will be paid into the special needs trust.  All must agree more money into Mr. Geness's special needs trust is better than less.  While we approve the partial settlement, we are not persuaded as to the fairness of deducting a forty percent contingent attorney's fee without a valid agreement or to a quantum meruit fee award for work with no relationship to the Department's potential liability. Counsel suggests a forty percent contingency is fair compared to his invested time. We ordered counsel to submit timesheets for our *in camera* review.  Counsel responded he does not maintain contemporaneous time records but "reconstructs" them.  We find no basis to dispute the reasonableness of counsel's normal hourly rate.  We did witness counsel's efforts.  He undertook a difficult case against the Department and obtained a fair partial settlement.  We cannot guess whether he will recover further.  Based on our case management and witness to counsel's efforts, we today direct payment to Mr. Geness's counsel for the reasonable hours and costs incurred in obtaining the benefit of this settlement from the Department which can be partially discerned from inappropriately reconstructed billing.  We also direct counsel to share with Mr. Geness in the eminently reasonable payment owed to the new Limited Guardian for his extraordinary service.

We already partially granted the parties' motion to approve the settlement and required the Department pay the $375,000 to the escrow account of the Limited Guardian. Under the accompanying Order, the Limited Guardian shall now pay a total of $116,883.57 to Mr. Geness's counsel representing quantum meruit compensation for services and reasonable costs to date to

secure this settlement. This total compensation includes $8,000 for the reasonable time invested since counsel presented reconstructed bills nine months ago and accounts for our decision to deduct $6,000 from his reasonable time to account for counsel's 20% obligation to pay the Limited Guardian's compromised fees. The Limited Guardian shall then pay his law firm the $30,000 reduced invoice from the remaining settlement funds. The Limited Guardian shall then escrow $5,000 in an interest bearing escrow account for future as yet-unbilled fees and costs billed to ensure Mr. Geness's protection through the special needs trust including fees for creating and counseling on the trust which shall be paid by the Limited Guardian only upon suitable evidence of the reasonableness and necessity of these payments. The Limited Guardian shall then approve the tender of the balance of the settlement funds of $223,116.43 to the administrator of the special needs trust and timely file a certificate of compliance with this distribution.

**I.     Facts**[1]

Mr. Geness lived at an assisted living facility for intellectually disabled individuals in 2006.[2] On October 27, 2006, another resident fell from the facility's front porch and eventually died from his injuries.[3] Three contemporaneous records demonstrated the resident accidentally fell, but police investigated, obtained a confession from Mr. Geness on November 16, 2006 and charged him with aggravated assault on November 17, 2006.[4] After the resident died of his injuries, police charged Mr. Geness with criminal homicide.[5]

Mr. Geness then entered custody and control of the Pennsylvania criminal justice system for nearly ten years without a trial.  As our Court of Appeals observed, "[t]he administration of justice went awry for [Mr.] Geness from the outset."[6] The state court did not schedule a preliminary hearing for over five months.[7]  Mr. Geness's public defender moved the Court of Common Pleas of Fayette County for habeas relief, asserting police obtained Mr. Geness's confession in violation of his constitutional rights.[8] Fayette County Common Pleas Judge Leskinen declined to rule,

opining Mr. Geness "was 'not at the present time competent to stand trial.'"[9]  Ten months passed after his arrest before a state doctor performed a psychological examination of Mr. Geness.[10]

Described by our Court of Appeals as a "cycle of indifference" in the Court of Common Pleas of Fayette County and the offices of its district attorney and public defenders, Mr. Geness spent nearly ten years in prison.[11]  After finally being released on *nolle prossed* charges, Mr. Geness's attorney Bernadette Tummons met with Attorney Joel Sansone to discuss a possible civil rights suit on behalf of Mr. Geness.  Attorney Sansone agreed to represent Mr. Geness and brought a civil rights claim on his behalf.  Attorney Sansone and Mr. Geness signed a contingent fee agreement ("Fee Agreement") providing a forty percent fee of the amount of recovery, but it did not include the later added defendant Pennsylvania Department of Human Services (the "Department").  Attorney Sansone apparently did not consider a need for a limited guardian for Mr. Geness.  He presumably thought he could have an enforceable fee contract with Mr. Geness without an independent guardian's review.

On June 17, 2016, Mr. Geness, represented by Attorney Sansone, sued the City of Uniontown, Fayette County, arresting officer Detective Jason Cox, and the owners of Mr. Geness's assisted living facility.[12]  He alleged they violated the Americans with Disabilities Act;[13] his constitutional rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendment for malicious prosecution, false arrest, false imprisonment, reckless investigation, violation of Mr. Geness's right to equal protection as a disabled person; and for conspiracy under 42 U.S.C. §§ 1983 and 1985; a *Monell* municipal liability civil rights claim;[14] and, a state law claim for intentional infliction of emotional distress.  Many of these claims allow a court to order defendants to pay reasonable fees and costs incurred by counsel for a prevailing plaintiff who can demonstrate the work effort.

Detective Cox and the City of Uniontown moved to dismiss for failure to state a claim.[15] Mr. Geness withdrew his claims against Uniontown during oral argument and we dismissed Uniontown from the action.[16] We dismissed the equal protection and malicious prosecution claims against Detective Cox because we could not then determine if Detective Cox enjoyed qualified immunity.[17] Detective Cox answered Mr. Geness's complaint, denying all claims and asserting affirmative defenses.[18] On February 10, 2017, we referred the case to mediation.[19] The parties did not resolve the case.[20] No guardian represented Mr. Geness's interests in this mediation.

On March 1, 2017, Attorney Sansone voluntarily dismissed the owners of the assisted living facility. Attorney Sansone then sought to amend the complaint to add the Commonwealth as a defendant on an Americans with Disabilities Act claim. After our earlier rulings in the case and Mr. Geness's voluntary dismissal of defendants, only Detective Cox remained as a defendant. Mr. Geness's proposed amended complaint named only Detective Cox and the Commonwealth of Pennsylvania. We granted Mr. Geness leave to amend his complaint to remove his conspiracy claim but denied him leave to add an Americans With Disabilities Act claim against the Commonwealth.[21] Mr. Geness filed his amended complaint naming only Detective Cox.[22] We granted Detective Cox's motion for summary judgment and closed the case.[23] Attorney Sansone filed a notice of appeal.[24] He sought to reverse our dismissal of the civil rights claims and reverse our decision denying him leave to amend to add the Commonwealth as a defendant on a disabilities claim.

In May 2017, after we closed the case and Attorney Sansone appealed, Attorney Sansone asked Attorney Tummons for help to locate a suitable guardian for Mr. Geness. Attorney Tummons located Attorney Karen Kiefer, a lawyer in good standing in Fayette County but who now resides in Stuart, Florida. Attorney Kiefer agreed to represent Mr. Geness *pro bono*. The

Fayette County Orphan's Court entered a decree on July 6, 2017 appointing Attorney Kiefer as a "Limited Guardian of the person and Estate of Craig A. Geness for the specific purpose of assisting in the prosecution of the federal lawsuit and making decisions with regard to all matters related thereto."[25]

In August 2018, our Court of Appeals affirmed our dismissal of Mr. Geness's civil rights claims as either time-barred or insufficiently substantiated through discovery.[26] It affirmed our dismissal of Mr. Geness's malicious prosecution claim.[27] But it reversed our denial of Mr. Geness's request to amend,[28] holding Mr. Geness's proposed amended complaint to add Americans with Disabilities Act and Due Process claims against the Commonwealth may not be futile.[29] It remanded to allow Mr. Geness to "reinstate his claims against the Commonwealth."[30]

Mr. Geness filed an amended complaint on October 8, 2018 against the Administrative Office of Pennsylvania Courts, the Commonwealth of Pennsylvania, judges of the Court of Common Pleas of Fayette County, Fayette County district attorneys and a public defender.[31] He did not sue the Department of Human Services.

Six months later, we allowed Mr. Geness leave to amend his complaint to add the Pennsylvania Department of Human Services in March 2019.[32] Finding Mr. Geness's second amended complaint stated claims under the Americans with Disabilities Act against the Commonwealth, the Administrative Office of Pennsylvania Courts, and the Department, we ordered the parties to mediation. Mr. Geness and the Department reached a partial settlement. We stayed resolving summary judgment motions involving the Commonwealth's potential liability while our Court of Appeals evaluates the Administrative Office's appeal of our denial of its motion to dismiss on immediately appealable immunity grounds. We are presently awaiting the decision of our Court of Appeals and will then progress towards trial against remaining defendants.

***We denied the parties' first motion to approve a signed settlement agreement.***

The settlement agreement releases the Department from all liability in exchange for a payment of $375,000.00. The parties also recited they would allocate $214,363.26 to a special needs trust established for Mr. Geness and $160,636.74 to Attorney Sansone and his firm for attorney's fees and costs under the Fee Agreement. The parties included a severance clause confirming a court's rejection of one aspect of the settlement would not affect the parties' release and payment obligations.

The parties moved for approval of this settlement last October.[33]  Attorney Sansone submitted the affidavit of Attorney Karen Kiefer, appointed by the state court as the limited guardian for Mr. Geness.[34] Limited Guardian Kiefer swears she participated in the parties' mediation on August 30, 2019 by telephone; participated in negotiations between Mr. Geness and all parties including the Department; she agreed to the $375,000 settlement with the Department; she believes the settlement amount with the Department is commensurate with its liability in the action; and, she reviewed the settlement agreement and believes the terms and conditions are acceptable and reflect the agreement between the parties.[35]  Limited Guardian Kiefer swore the money obtained from the settlement will be placed in a special needs trust "to finance any health issues [Mr. Geness] may experience, as well as for any of [Mr. Geness's] daily living needs [and] if feasible, the money may be used to place Mr. Geness in a more accommodating living facility."[36] Limited Guardian Kiefer did not explain the basis for concluding the settlement amount is reasonable or the fairness of the fees to be paid to Attorney Sansone other than the terms reflect an agreement between the parties.

Concerned with a partial settlement awarding substantial fees to Attorney Sansone arising from limited work involving the Department since March 27, 2019, we ordered Attorney Sansone

produce an *in camera* copy of the signed Fee Agreement.  In the same October 25, 2019 Order, we directed Attorney Sansone and Limited Guardian Kiefer to address three questions:

> 1. What is the standard for approval of this contingent attorney's fee given Mr. Geness's ability to contract or appreciate the use of the funds particularly in a fee shifting claim under the Americans with Disabilities Act;
>
> 2. Why does the guardian view the forty percent contingent fee as fair mindful we possibly have not reached a "gross" settlement amount or should we hold the fee in escrow until final order; and,
>
> 3. Why should the consideration paid by the Department of Human Services satisfy counsel's out of pocket costs incurred to date when only one of several Defendants settled and for costs incurred before adding the Department to the case on March 24, 2019 (ECF Doc. No. 183).[37]

Dissatisfied with Attorney Sansone's response and having no response from Limited Guardian Kiefer to our questions, we lacked sufficient evidence to (1) determine the fairness of the proposed settlement agreement with the Department; and, (2) approve attorney's fees to be apportioned from the settlement amount.[38]  We noted a lack of evidence regarding: Mr. Geness's current health condition; status of his current living arrangements and daily living needs; and the possibility of moving Mr. Geness to "a more accommodating living facility," if feasible, as sworn to by Limited Guardian Kiefer.[39] With regard to attorney's fees, we noted: Limited Guardian Kiefer did not affirm she reviewed or approved the Fee Agreement, and, even if she did approve it, provide an explanation why Attorney Sansone's forty percent contingent fee is appropriate; the absence of a fee agreement for any recovery against the Department; and, considering the appropriateness of Attorney Sansone's fees under a quantum meruit theory, we lacked evidence from Limited Guardian Kiefer on the appropriateness of the attorney's fees absent a written fee agreement.[40]

On December 5, 2010, we denied the parties' motion to approve the partial settlement "without prejudice to be renewed with more sufficient evidence either through affidavit and

possibly in testimony at a requested hearing in our Philadelphia courtroom (if warranted) from the limited guardian explaining the fairness of the total settlement amount given Mr. Geness's present condition relative to the claims against the Department of Human Services and the proposed settlement's possible effect on the remaining claims and on the appropriate attorney's fee absent a written retainer agreement governing claims against the Department of Human Services unrelated to conduct by other parties occurring on November 17, 2006."[41]

### *Appointment of new limited guardian and renewed motion to approve settlement.*

In response to our December 5, 2019 Order, Attorney Sansone sought a new limited guardian for Mr. Geness.[42] On March 18, 2020, the Orphans Court Division of the Court of Common Pleas of Fayette County appointed the Honorable Lawrence F. Stengel, retired chief judge of the United States District Court for the Eastern District of Pennsylvania and formerly a judge serving on the Court of Common Pleas of Lancaster County, as limited guardian for Mr. Geness.[43]

Judge Stengel reviewed documents, including medical records, our October 25, 2019 Order and our December 5, 2019 memorandum, the decision from our Court of Appeals, and attorney affidavits, and interviewed Mr. Geness, staff at the group home where he currently resides, and Mental Health of Fayette County.[44] Judge Stengel thoroughly reviewed the factual and procedural background of the case, developed an understanding of Mr. Geness's mental and physical health, current needs, and current living arrangement.[45]

After Judge Stengel's review, the parties renewed their motion for approval of the settlement, attaching Judge Stengel's affidavit and memorandum approving the proposed settlement agreement. Based on detailed findings from his investigation, Judge Stengel concludes the proposed settlement with the Department is in the best interests of Mr. Geness, the amount is

substantial and can be used to supplement services already provided to him. Placed in a special needs trust, the settlement funds will be available to supplement his care, furnish his home, provide entertainment and, "most importantly," finance long term care if he needs skilled care as he ages.[46]

On the issue of attorney's fees, Judge Stengel concluded the fee agreement is without effect because of Mr. Geness's lack of mental capacity. Judge Stengel then reviewed Attorney Sansone's and his firm's time records, concluding the fees claimed are within a reasonable range and a forty percent contingent fee is appropriate under the circumstances.[47]

### Supplemental memoranda addressing our concerns regarding the proposed settlement.

Our review of the renewed motion raised three areas of concern. We granted Mr. Geness's counsel leave to file supplemental Memoranda answering whether: (1) Medicaid will continue to pay if the Plaintiff deposits the settlement proceeds in a special needs trust or, for example, will the Plaintiff need to spend down the amount presently allocated for a special needs trust from the settlement proceeds and then resort to Medicaid; (2) Plaintiff is seeking reimbursement of fees owed to the earlier limited guardian and the present limited guardian and what is the present amount of costs Plaintiff seeks to reimburse from the settlement; and, (3) We should direct the limited guardian to hold all or a portion of the awarded fees or costs in an interest-bearing escrow until a final Order which may then include settlement proceeds from the Administrative Office of Pennsylvania Courts and the Commonwealth as we are not aware of a present need for these funds and the extent of ongoing costs.[48]

Attorney Sansone responded with a supplemental memorandum and supplemental affidavit of Judge Stengel.[49] In response to our Medicaid question, Judge Stengel confirmed Mr. Geness's Medicaid payments will not be interrupted as long as the proceeds from the settlement are placed in a special needs trust; Attorney Sansone engaged the firm of NFP Structured Settlements

("NFP"), a Pittsburgh-based firm specializing in structured settlements; NFP engaged Pittsburgh law firm Tucker Arensberg to create the trust; attorney Nora Gieg Chatha of the Tucker Arensberg firm swore Medicaid assistance to Mr. Geness will not be interrupted if the settlement funds are placed in a special needs trust as long as there are no third-party Medicaid liens; and, Attorney Sansone's firm confirmed with the third-party provider for Mr. Geness's Medicaid benefits there are no liens.[50]

In response to our second concern regarding costs, Attorney Sansone represents the original limited guardian Kiefer rendered her fees and costs *pro bono*.[51] Judge Stengel, the current limited guardian, attests his fees and those of an associate attorney and paralegal assisting him amount to $34,925 which he will reduce to $30,000.[52] Attorney Sansone's firm seeks costs, incurred before Judge Stengel's services, of $10,636.74.[53]

In response to our third concern regarding whether we should direct Judge Stengel to hold all or a portion of the awarded fees or costs in escrow until the entry of a final order which may include settlement proceeds from the Administrative Office and the Commonwealth, Judge Stengel believes the current settlement funds should be released now. Judge Stengel attests: he anticipates any costs in connection with any settlement proposal with the Administrative Office of the Pennsylvania Courts will be substantially less given his work to date understanding Mr. Geness's history, background, condition, and circumstances; if the case against the AOPC goes to trial, his fees will depend on the amount of time spent working with Mr. Geness and his counsel in preparation for trial and participation in trial, if that is appropriate; and factors weigh in favor of releasing settlement funds now, including counsel for Mr. Geness have not been compensated for their time or costs since litigation began in 2016, the approximate $10,000 in costs incurred to date are reasonable, substantially greater costs going forward are unlikely, and Mr. Geness is

presently well-cared for, there is adequate funding to ensure his care continues, he has no immediate financial needs for basic food, clothing and shelter, the settlement with the Department will be sufficient to supplement his social security benefits with the majority of the funds placed in a special needs trust to provide for his personal and medical care as the required levels of care, and the attendant costs, increase in the future.[54]

## II.    Analysis

We again review the proposed settlement agreement releasing the Department from all liability in exchange for it paying $375,000.00. The Limited Guardian opines allocating $214,363.26 to a special needs trust established for Mr. Geness and $160,636.74 to Attorney Sansone for attorney's fees and costs is appropriate.[55]

We begin by recognizing the unique plaintiff before us.  We have an inherent duty to protect the interests of minors and incompetents who appear before us.[56]  "As part of that duty, the court must determine the fairness of any settlement agreement and the reasonableness of any attorneys' fees to be paid from the settlement amount in a suit brought on behalf of a minor or incompetent."[57]  Our Local Rule 17.1 requires court approval for settlement of actions involving minors or incompetent persons: "No action to which a minor is a party shall be compromised, settled, discontinued or dismissed except after approval by the Court pursuant to a petition presented by the guardian of the minor or the natural guardian of the minor, such as the circumstances might require."[58]  The minor or incompetent's attorney "shall file with the Clerk of the Court, as part of the record, a petition containing (1) a statement of the nature of the evidence relied on to show liability, (2) the elements of damage, (3) a statement of the services rendered by counsel, (4) the expenses incurred or to be incurred and (5) the amount of fees requested.  The petition shall contain written statements of minor's attending physicians, setting forth the nature

of the injuries and the extent of recovery.  If required by the Judge, such statements of attending physicians shall be in affidavit form.  The petition shall be verified by the affidavit of the minor's counsel. …"[59] "The determination of the fairness of a settlement agreement involving a minor and the reasonableness of the amount to be apportioned from the proceeds of that settlement agreement in payment of attorneys' fees implicates the parties' substantive rights."[60]

Federal courts exercising federal question jurisdiction, as we are today, apply federal law to substantive rights except where "federal law does not expressly establish a rule of decision."[61] In that case, "where the state law on the issue is well-developed and the application of state law will not impinge upon any federal interest, the court may 'borrow' state law to fill the gap in the federal statutory scheme."[62]

Mr. Geness asserted claims against the Department under the Americans with Disabilities Act.  There is nothing in the Act providing a standard to evaluate a minor's or incompetent person's compromise. Like the courts in *Nice* and *Johnson* assessing minors' compromise in federal civil rights litigation, we will borrow Pennsylvania law to determine the fairness of the Proposed Settlement Agreement. [63]

Pennsylvania Rule of Civil Procedure 2064 requires court approval for a settlement of an incapacitated person's claim: "[n]o action to which an incapacitated person is a party shall be compromised, settled, or discontinued except after approval by the court pursuant to a petition presented by any party in interest."[64]  "When a compromise or settlement has been approved by the court, or when a judgment has been entered upon a verdict or by agreement, the court, upon petition by the guardian or the guardian ad litem or any party to the action, shall make an order approving or disapproving any agreement entered into by the guardian or the guardian ad litem for the payment of counsel fees and other expenses out of the fund created by the compromise,

settlement or judgment; or the court may make such order as it deems proper fixing counsel fees and other proper expenses. The balance of the fund shall be paid to the guardian of the estate of the incapacitated person qualified to receive the fund, if there is one or one is to be appointed. The balance of the fund payable to the guardian of the estate may include a structured settlement underwritten by a financially responsible entity that assumes responsibility for future payments or a trust as described in subdivision (b)(4) of this rule."[65]

We may evaluate the reasonableness of Attorney Sansone's fees and costs under both Rule 2064 and Local Rule 17.1.[66]  The court in *Johnson* applied both Pennsylvania law and Local Rule 17.1 because "the Commonwealth's jurisprudence in this area is well-developed, and Pennsylvania where the alleged civil rights violations occurred clearly has an interest in safeguarding the affairs of minor litigants."[67]  We see no authority to distinguish the settlement of minor's claims from the settlement of an incompetent person's claims and the parties do not contest the issue.

Pennsylvania courts are "given the mandate to supervise all aspects of settlements in which a minor is a party in interest, … and in considering whether to approve a settlement, the Court is charged with the best interests of the minor."[68]  "In considering petitions to approve compromise settlement and distribution, the court must assess the following: (1) the sufficiency of the petition; (2) the fairness of the proposed settlement amount; and (3) the reasonableness of the requested counsel fees."[69]

Applying these standards, we consider the sufficiency of the renewed motion to approve the settlement agreement and attorney's fees to address the fairness of the proposed settlement agreement and the reasonableness of the requested attorney's fees.

**A.     Judge Stengel fully answered our evidentiary concerns to sufficiently evaluate and approve the fairness of the settlement agreement.**

In our evaluation of the first motion to approve settlement, we found a lack of evidence regarding Mr. Geness's current health condition, living arrangements, and needs of daily living prohibited our determination of the fairness of the settlement agreement. Whatever concerns we had then have been thoroughly addressed by Judge Stengel's investigation.

Judge Stengel interviewed Mr. Geness by video conference and spoke to his caregivers and staff in the home where he currently resides. Mr. Geness has several physical and mental health conditions for which he is prescribed twelve medications. He resides in a private home within a residential neighborhood owned by Fayette Resources, a company owning and staffing homes for disabled people in Western Pennsylvania. Mr. Geness receives twenty-four-hour care seven days a week and relies on his caregivers in the home to prepare his meals, do his laundry, clean the home, keep him company and keep him safe.[70]

Mr. Geness receives Supplemental Security Income ("SSI"). The Mental Health Association of Fayette County is the representative payee and forwards money to Fayette Resources monthly to pay for Mr. Geness's room and board. Judge Stengel interviewed staff at Fayette Resources who pays the bills for Mr. Geness and staff at the Mental Health Association of Fayette County who oversees payments to Fayette Resources. Judge Stengel reports there is money available to pay for Mr. Geness's basis needs and the funding source seems to be secure.[71]

Judge Stengel reports Mr. Geness's medical care is provided through Medicaid and, as he ages and needs additional care, a portion of care will be paid by SSI. If Mr. Geness's needs require a skilled care facility, he will be required to pay additional funds himself. Judge Stengel opines an important use of the settlement proceeds, placed in a special needs trust under the terms of the settlement agreement, will be the payment of these additional funds. The settlement proceeds may

also be used to enhance his living conditions now, for example, purchasing new bedroom furniture (which staff indicated he needs), vacation time, entertainment, and sporting events.[72]

Mr. Geness's caregivers report his current needs are being met. Judge Stengel's inquiries confirm Mr. Geness is currently safe, healthy and appears to be happy in his current living conditions. Funding for his full-time care comes from state funding, administered through Fayette Resources, which provides his care. Mr. Geness has no savings or assets, nor does he have long term care insurance.[73]

Based on his investigation, Judge Stengel concludes the proposed settlement agreement with the Department providing a partial settlement is in the best interests of Mr. Geness. Judge Stengel finds the settlement amount substantial and can be used to supplement Mr. Geness's care, furnish his home, provide entertainment, and finance long term care if he so needs in the future.[74] Placed in a special needs trust, the funds will not affect or reduce SSI funding or Medicaid benefits, Mr. Geness will not be required to "spend down" the monies in the special needs trust to continue eligibility for Medicaid, and there are no Medicaid liens to be satisfied.[75]

Judge Stengel's thorough affidavit and counsel's memorandum supplementing the affidavit addresses the concerns we raised in our December 5, 2019 memorandum. Consistent with our inherent duty to protect Mr. Geness, we find the proposed settlement fair as a partial settlement mindful Mr. Geness will proceed in his claims against others. We next consider the reasonableness of the attorney's fees to be apportioned from the settlement.

### B.    We deny a forty percent contingent fee.

Mr. Geness's counsel now seeks to have Mr. Geness pay forty percent of this recovery to him. He bases this request on a contingency fee agreement signed by an admittedly incompetent man which related to a lawsuit against different parties on a different theory. Judge Stengel, as a

Limited Guardian, recognized enforcing this contingency fee agreement on its terms creates problems. But Mr. Geness's counsel inexplicably undertook an incompetent person on a civil rights case and decided not to keep contemporaneous time records. He must have known we would need to eventually review his time. He still decided not to keep time records. He is left trying to enforce a forty percent contingency fee. We will not enforce this contingency fee agreement as there is no evidence of assent or basic contract formation. The terms apply to a different representation.

The question is the fair compensation for Mr. Geness's counsel for obtaining an appropriate settlement from the Department. Counsel should be paid for their work. We must evaluate this compensation based on the services counsel invested in representing Mr. Geness and aware of Mr. Geness's incapacity.

In our October 25, 2019 Order and December 5, 2019 memorandum, we expressed concern about a forty percent contingent fee apportioned from the partial settlement, including whether the fee agreement applied because it did not include claims against the Department and Mr. Geness's capacity to sign such an agreement. Addressing our concerns, Judge Stengel opined even if the Fee Agreement applies to claims against the Department, it should not be given weight as evidence of Mr. Geness's intent given his mental incapacity. Based on his review, Judge Stengel still approves the forty percent contingency for work performed by Mr. Sansone and his firm on behalf of Mr. Geness. Judge Stengel considered the effectiveness of Mr. Sansone's performance and a presumptive loadstar as we discussed in our December 5, 2019 memorandum.[76]

We disagree with Judge Stengel as to a forty percent fee. We must consider several factors: "(1) the amount of work performed; (2) the character of the services rendered; (3) the difficulty of problems involved; (4) the importance of the litigation; (5) the degree of responsibility incurred;

(6) whether the fund involved was 'created' by the attorney; (7) the professional skill and standing of the attorney in her profession; (8) the result the attorney was able to obtain; (9) the ability of the client to pay a reasonable fee for the services rendered; and (10) 'very importantly' the amount of money in question."[77]

Applying these *Nice* factors, Judge Stengel concluded Attorney Tummons and Attorney Sansone and his firm "performed a high level of legal work over a period of years in difficult and challenging litigation"; "called into question the performance of four (4) judges of the Fayette County Court of Common Pleas, the District Attorney of Fayette County, the investigating detective and his police department and reviewed medical and mental health records dating back to 2004"; fully litigated in the district court, including a creative claim under the Americans with Disabilities Act; took a successful appeal to our Court of Appeals; and put the case in a position for settlement.  Judge Stengel found the claims brought by counsel on behalf of Mr. Geness against the Fayette County bench, its District Attorney, and law enforcement community "was a daunting and uphill battle" which, from his experience, "would not have been easy at any step and they had to know they were asserting claims that would be, and in fact were, vigorously contested."[78] He found the case is not only important to Mr. Geness, but also as a public service in exposing a "glaring weakness in the Fayette County criminal justice system, at least insofar as it intersects with the mental health system."[79]

Based on these factors, as well as a review of the affidavits submitted by prominent plaintiffs' counsel in civil rights litigation, Judge Stengel concludes a forty percent contingency is appropriate under the circumstances. He concluded there is a substantial recovery from the Department with a potentially large recovery from the Administrative Office of Pennsylvania Courts currently in litigation, leaving more than adequate funds for Mr. Geness's needs.

Addressing our concern regarding costs, Judge Stengel noted costs will come out of the settlement, but the costs do not appear to be high or inconsistent with the complexity and duration of the case and, if paid out of the Department's settlement, there will be little, if any costs remaining unpaid from a potential settlement with the Administrative Office.[80]  Counsel requests we hold another $35,000 in escrow to cover his costs moving forward which represents over three times the amount of costs incurred to date.

We find no basis to award a forty percent contingency fee.  Our concern is with the amount of fees sought by Mr. Geness's counsel for work done to secure this partial settlement.  Judge Stengel's analysis is entirely proper if we reviewed a settlement with original parties or had the benefit of a competent contracting party in a fee agreement.

We do not have such a case.  Mr. Geness's counsel sued the Department in March 2019 after beginning this suit in June 2016.  He sued other state actors under a disabilities theory in October 2018.  According to his submitted reconstructed "invoices," Mr. Geness's counsel began working on a claim against the Department in March 2019.  We denied the Department's motion to dismiss last June.  The parties proceeded to mediation on August 30, 2019 and Mr. Geness's counsel and his then-court-appointed limited guardian Kiefer agreed to release Mr. Geness's claim against the Department in exchange for $375,000.

### C.    We award fees following a quantum meruit analysis.

We will evaluate an award of fees based on a quantum meruit contractual analysis.  We give a substantial amount of weight to Mr. Geness's incapacity. An attorney representing an incapacitated person is charged with a great responsibility.[81] Like other courts, we recognize representation of incapacitated individuals is a "necessary" legal service compensable on a quantum meruit basis based on the relevant adduced facts.[82]

Because legal fees involving incapacitated individuals are of special concern, we must evaluate "all the circumstances under which the services were rendered have been established in due course of law."[83]  For example, the Pennsylvania Superior Court concluded in *Feely* when there is a contract for legal services with an incompetent party, the legal fees need to be determined on a fact-based quantum meruit basis.[84] "[It is] essential to show that the legal services rendered were reasonably necessary for the welfare of the incompetent before a recovery therefore on the theory that they are necessaries will be allowed."[85] In *Bradley v. GMAC*, our Court of Appeals affirmed the district court requiring an hourly accounting and excluding 41.9 hours of counsel's work from consideration of counsel fees.[86]

An action in quantum meruit "sounds in quasi-contract or contract implied in law and seeks the equitable remedy of restitution where one person has been unjustly enriched by the services of another."[87]  The determination of the proper amount of a quantum meruit award is left to our sound discretion.[88] Fees are "limited to the reasonable value of the services performed."[89] Questions arise when we attempt to determine the methodology for measuring the value of services performed by counsel.

Pennsylvania does not have a specific method for determining attorney's fees in quantum meruit.[90] Pennsylvania courts use the standard lodestar approach: multiply the number of hours worked by the attorney's reasonable fee.[91] Another method suggests a court may have more flexibility in fashioning a quantum meruit attorney's fee award. The Pennsylvania Superior Court noted "a *quantum meruit* recovery need not be limited to an hours and expenses analysis," and "principles of fairness should prevail."[92]

A judge in the United States District Court for the Eastern District of Pennsylvania applying Pennsylvania law recently addressed the amount of fees owed in *quantum meruit* to

counsel.[93] In *Mirarchi Legal Servs., P.C. v. Thorpe*, the court began by looking to section 374 of the Restatement (Second) of Contracts to determine the proper fee.[94] "In effect, the Restatement presents a formula for calculating the recovery: the full value of the services a party provided, minus any losses the party inflicted by his own breach."[95] The court first looked to apply the lodestar method but, like here, counsel did not keep contemporaneous time records.[96] The court reasoned the lack of time records undercut the reliability of the calculated lodestar approach.[97] The court found  counsel's estimations were an "unverified approximation that he appears to have compiled over four years after he finished working on the case."[98]

Mr. Geness's counsel admits he uses a "'reconstruction' method on the rare occasion that calls for filing a fee request in a case such as this." [99] . Counsel cites cases from our Court of Appeals and this district, including a 2018 decision from our Court of Appeals, *Clemens v. New York Central Mutual Fire Insurance Co.*[100]

In *Clemens*, our Court of Appeals examined a petition for attorney's fees under Pennsylvania's fee-shifting bad faith statute.  The court affirmed the district court's denial of the fee petition in its entirety based on its "reasoning that it was not adequately supported and that the requested amount was grossly excessive given the nature of the case."[101]  Finding no abuse of discretion by the district court, our Court of Appeals affirmed, "in doing so, [took] the opportunity to formally endorse a view already adopted by several other circuits—that is, where a fee-shifting statute provides a court discretion to award attorney's fees, such discretion includes the ability to deny a fee request altogether when, under the circumstances, the amount requested is 'outrageously excessive.'"[102] The court recognized the lodestar is the method used to calculate attorney's fees under fee-shifting statutes.  The court noted counsel "did not maintain contemporaneous time records for most of the litigation. Instead, by their own admission, counsel 'recreate[d]' all of the

records provided as part of the fee petition, using an electronic case management system that did not keep track of the amount of time expended on particular tasks. … Even worse, the responsibility of reconstructing the time records was left to a single attorney, who retrospectively estimated not only the length of time she herself had spent on each individual task, but also the amount of time others had spent on particular tasks, including colleagues who could not be consulted because they had left the firm by the time the fee petition was filed."[103] And while our Court of Appeals stated while "[w]e have never strictly required that fee petitions be supported by contemporaneous records," it "[has] long been 'the preferred practice.' Thus, although reconstructed records in and of themselves do not justify complete disallowance of a fee award, they may warrant 'more exacting scrutiny than we would bring to contemporaneous and detailed records.'"[104]

This is hardly a ringing endorsement of counsel's "reconstruction" method. Without reliable contemporaneous time records, the court in *Mirarchi Legal Servs., P.C. v. Thorpe* decided to use a qualitative holistic approach to measure counsel's services and gave weight to a variety of factors used to determine the value of an attorney's service.[105] The court found other relevant factors include the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the degree of responsibility incurred; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, the amount of money in question.[106] Taking into account all of these principles, the court found counsel entitled to a fee based off his contingency fee and then deducted awards after reviewing relevant factors.

Applying a required holistic approach to measure Mr. Geness's counsels' services, we first agree with Judge Stengel as to the importance of counsels' representation. Nothing in our Order

today is or should be intended to be a disincentive or discouragement for the important work performed by Mr. Geness's counsel in obtaining this partial settlement from the Department. The system in Fayette County appears to have failed Mr. Geness at many levels but particularly in his legal representation. Mr. Geness's counsel undertook an unpopular case and, after considerable time pursing the wrong parties on the wrong theories, moved to add the Commonwealth on a disabilities act claim. He successfully persuaded our Court of Appeals to recognize the potential for such a claim against the Commonwealth in a novel precedential extension of the Americans with Disabilities Act against state actors. Counsel then sued a variety of Commonwealth agents and eventually the Administrative Office of Pennsylvania Courts. He then sued the Department six months later.

Counsel faced several difficult problems in getting to March 2019. Even after suing the Department, he addressed the Department's substantial and thoughtful Motion to dismiss. He prepared for a mediation resulting in a proper settlement with the Department. The questions involved are among the most difficult at the intersection of mental health and the administration of justice. Mr. Geness's counsel undertook this representation against these difficult odds. Given Mr. Geness's incompetence and the apparent absent guardianship belatedly afforded by his earlier limited guardian, Mr. Geness's counsel took on a significant responsibility. We are also aware of the professional standing of Mr. Geness's counsel in this District. He has often succeeded in difficult cases. His interactions have been professional and consistent with his obligation to Mr. Geness. He zealously represented Mr. Geness before our Court and the United States Court of Appeals. He eventually selected a limited guardian beyond reproach who provided the necessary investigation to approve a settlement against one of three potential defendants. He obtained a suitable result against the Department. He again represented to us this is a partial settlement and

he expects to recover from the Commonwealth and possibly the Administrative Office. His client is otherwise unable to pay anything for these vigorous services. He recovered a suitable amount under today's analysis, but we should not suggest a jury could not return a much larger verdict against responsible parties. The amount of money involved in this case could easily be a multiple of today's settlement following a jury verdict. But there is risk in getting to that verdict as to who will be responsible.

Several months into the case, Mr. Geness's counsel turned his attention to a potential responsible party in theory when he moved to amend his flawed civil rights claims to bring in the Commonwealth on a disabilities theory. He succeeded with this claim before the Court of Appeals. But he did not add the Department or review its liability (if we accept his reconstructed time records), until March 2019. He has invested substantial hours since then.

We have no basis to dispute the hourly rates he represents to us as being his normal hourly rates. No one objects to these hourly rates including, most importantly, the Limited Guardian. We will apply the hourly rates of $600 for Attorney Sansone, $300 to Attorney Terzigni, $225 for Attorney Tuttle, and $85 for non-attorney staff.

But we will not provide hourly payment for services unrelated to the Department or which are so poorly identified in reconstructed bills we cannot fairly describe them as compensable. For example, we will not pay two hours for a "staff meeting."[107] There is no way to determine what is done there. We will not compensate counsel for costs of depositions before he recognized a theory allowing today's recovery. For example, we will not allow costs for a deposition in 2017.

We cannot rely upon counsel's reconstructed block billing in a fee shifting case. We are not suggesting they did not work. We witnessed their vigorous advocacy. They never gave up and still have not. Mr. Geness is fortunate to have this counsel undertake this difficult case. We will

accept the reconstructed block billing only as a guidepost to remind us of the work effort.   We are also aware of the efforts since this reconstructed billing in obtaining our July 16, 2020 Order approving the settlement and will award $8,000 in fees for those services.

Applying these factors to arrive at a holistic quantum meruit fee, we award counsel $118,260, representing payment of $8,000 for the services in presenting this Motion and leading to today's approval, plus 114.85 hours for Attorney Sansone's time, 75.85 hours for Attorney Terzigni's time, 66.40 hours for Attorney Tuttle's time, and 43 hours for paralegal services. Except for limited instances of vague block billing during the relevant time, we find the services identified in counsel's reconstructed invoices fairly represent a benefit to Mr. Geness.   We are not including appellate practice.   But we are including all time invested in pursuing recovery against all the defendants in this Court during this time frame.[108]   We will not double count this fee in a quantum meruit analysis if Mr. Geness later obtains a recovery from the Administrative Office or the Commonwealth.

Mr. Geness's counsel further moves for reasonable costs which he claims Mr. Geness incurred under a fee agreement. We found the Fee Agreement is not enforceable against Mr. Geness at least as to the claims against the Department.   But Mr. Geness received the benefit of some of these services in this recovery.   But he received no benefit for costs incurred before the filing of the amended Complaint in March 2019 other than the filing fee which started this case.

We award reasonable costs of $4,623.57 incurred since Mr. Geness sued the Department plus the filing fee.   We deduct costs for the appeal, depositions in the dismissed claims, and copying charges from before 2019.   Those deducted costs may be partially recoverable from the other recoveries on a quantum meruit basis depending on the benefit shown then.

### D. Mr. Geness and his counsel shall partially share in the obligation to pay the Limited Guardian.

Mr. Geness's counsel requests we direct Mr. Geness to pay Judge Stengel's compromised invoice. We agree Mr. Geness should pay $24,000 of Judge Stengel's compromise invoice but require counsel pay $6,000 from the $118,260 in awarded fees.

Counsel is correct Judge Stengel provided the value to Mr. Geness and should understandably pay for this benefit. But we are also mindful Mr. Geness would not have to pay for this benefit with the original limited guardian Kiefer selected for him by his counsel. The earlier limited guardian agreed to provide these services pro bono. After reading our December 5, 2019 memorandum, Mr. Geness's counsel decided his client would be better served with another limited guardian. In doing so, he appreciated the need for a limited guardian with the reputation and experienced judgment of Judge Stengel. But this level of expertise may involve reasonable fees. Judge Stengel and his firm billed in excess of $34,000 but, mindful of the public importance of this case and as a courtesy to Mr. Geness, is reducing his bill to $30,000. Today's Order requires payment in full of this compromised invoice.

Rather than seeking input from the court-appointed lawyer serving as Mr. Geness's limited guardian who provided these services without seeking a fee for several years with no new learning curve, Mr. Geness's counsel chose to change tactics and moved the Fayette County Orphans Court for appointment of an eminently fair and thoughtful limited guardian. We have the highest regard for Judge Stengel. We appreciate his thoughtful and experienced judgment. Counsel chose wisely and Mr. Geness is fortunate to have Judge Stengel's review. But he chose to pay for Judge Stengel's learning curve and top-level services when the earlier court-appointed guardian did not charge fees.

26

While we see ample basis for Mr. Geness to pay his share, he should not be forced to pay for the entire benefit. Mr. Geness's counsel's original choice of a limited guardian did not meet the necessary review. We allocate Judge Stengel's invoice with eighty percent ($24,000) paid from the settlement fund and the remaining twenty percent ($6,000) deducted from the $118,260 in fees we awarded to Mr. Geness's counsel.

### E.    The Limited Guardian shall escrow $5,000 to pay demonstrated reasonable costs attendant to administering the special needs trust in the future.

Mr. Geness's counsel requests we escrow $35,000 of the Department's settlement for costs he may incur in pursuing other defendants. He has no contractual basis for this reach. It also seems to evidence a lack of recognition for our role. Counsel may recover future costs from future recoveries. And, as Judge Stengel notes, counsel expects most of the out-of-pocket costs are behind us. We see no basis to keep this money from Mr. Geness.

But there is a basis for escrowing $5,000 to ensure the proper administration of the special needs trust now funded by the Department's settlement. Counsel explained he hired counsel to arrange the trust. We are not aware of a need for further work. We are also not aware whether Judge Stengel will need to invest further time in ensuring distribution under today's Order. We leave those decisions to counsel and Judge Stengel. Judge Stengel shall escrow $5,000 from the settlement fund in an interest-bearing account to pay invoices relating to administering the special needs trust which Judge Stengel finds are reasonable and necessary for Mr. Geness's best interest.

## III.    Conclusion

The private enforcement of our civil rights laws requires experienced counsel to sue state actors and others we trust with power to represent us. Congress allows lawyers undertaking these important cases to recover their reasonable fees and costs from the state actors if they prevail. We today evaluate the efforts of an experienced civil rights lawyer in this District who undertook to

bring a civil rights case at the crux of the mental health and the criminal justice systems in Fayette County.  Referred to him by a local lawyer, the Pittsburgh civil rights lawyer undertook substantial effort and vigorously fought for his mentally impaired client's interest.  He did not prevail on his initial theories during the first couple of years of his case but eventually decided to proceed on a disabilities act claim against the Commonwealth, the Administrative Office of Pennsylvania Courts and eventually the Department of Human Services.  He has now obtained a partial settlement of his mentally impaired client's issues for the Department of Human Services. Judge Stengel's exhaustive analysis persuades us to approve the settlement understanding all funds not paid to Mr. Geness's lawyer and Limited Guardian will be deposited into a special needs trust to support Mr. Geness as he ages in a group home designed to protect him.  Mr. Geness must still proceed against the Commonwealth and the Administrative Office of Pennsylvania Courts through summary judgment, trial, and possibly appeals.  We found his settlement to be fair. And he should be paid for his efforts from this settlement.

But to do so he must show a basis for his requested fee.  We will not accept an initial contingency fee agreement with a mentally impaired adult who could not capably assent to contract terms.  The lawyer then failed to keep contemporaneous time records even though he knew he was bringing claims with statutory fee shifting.  Absent an enforceable fee agreement and now relying on "reconstructed" billing, we today scrutinize the quantum meruit fee for the lawyer.

We see no basis to set a lodestar based on admittedly reconstructed time records. Applying recognized factors in setting a quantum meruit value for counsel's services, we award reasonable fees and costs earned by counsel in securing this partial settlement from the Department.  We also direct payment of Judge Stengel's compromised limited guardian invoice with Mr. Geness responsible for 80% of the fee and his counsel responsible for 20% of the fee. Judge Stengel shall

further hold $5,000 in an interest-bearing escrow account to satisfy demonstrated and as-yet unbilled reasonable fees and costs attendant solely to administering the special needs trust.  The remainder of the partial settlement fund shall be forwarded to the administrator of the special needs trust and, if not applied towards the costs of the special needs trust, shall be paid to Mr. Geness's special needs trust.

---

[1] Our December 5, 2019 memorandum denying the parties' first motion to approve settlement agreement provides further details largely unrelated to today's decision.  *See* ECF Doc. No. 285.

[2] *Geness v. Cox*, 902 F.3d 344, 349 (3d Cir. 2018).

[3] *Id.*

[4] ECF Doc. No. 1 at ¶ 27.

[5] *Id.* at ¶ 29.

[6] *Geness*, 902 F.3d at 350.

[7] *Id.* at 351.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] ECF Doc. No. 1.

[13] 42 U.S.C. § 12131 *et seq.*

[14] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[15] ECF Doc. No. 15.

[16] ECF Doc. No. 30.

[17] ECF Doc. No. 31 at 11.

[18] ECF Doc. No. 36.

[19] ECF Doc. No. 64.

[20] ECF Doc. No. 99.

[21] ECF Doc. Nos. 92, 93.

[22] ECF Doc. No. 100.

[23] ECF Doc. Nos. 110, 111.

[24] ECF Doc. Nos. 113, 115.

[25] ECF Doc. No. 246-2, Affidavit of Karen Kiefer at ¶ 2.

[26] *Geness*, 902 F.3d at 354.

[27] *Id.* at 359.

[28] ECF Doc. Nos. 67, 69.

[29] *Geness*, 902 F.3d at 360.

[30] *Id.* at 365.

[31] ECF Doc. No. 121. Mr. Geness later withdrew his claims against the judges of the Court of Common Pleas of Fayette County and one claim against the Administrative Office of Pennsylvania Courts. ECF Doc. No. 150.

[32] ECF Doc. No. 183.

[33] ECF Doc. No. 246.

[34] ECF Doc. No. 246-2.

[35] *Id.* at ¶¶ 3-6, 9.

[36] *Id.* at ¶ 8.

[37] ECF Doc. No. 248.

[38] ECF Doc. No. 285.

[39] *Id.* at 18-19.

[40] *Id.* at 19-23.

[41] ECF Doc. No. 286.

[42] ECF Doc. No. 313 at ¶¶ 4-5.

[43] *Id.* at ¶ 5; ECF Doc. No. 313-1 at ¶ 1 (Affidavit of Lawrence F. Stengel).

[44] ECF Doc. No. 313-1 at ¶ 2.

[45] *Id.* at ¶¶ 3-5.

[46] *Id.* at ¶ 11.

[47] *Id.* at ¶¶ 19-22.

[48] ECF Doc. No. 314.

[49] ECF Doc. No. 319.

[50] *Id.* at 2-3.

[51] *Id.* at 3.

[52] ECF Doc. No. 319-1 at ¶ 7.

[53] ECF Doc. No. 313 at n. 1.

[54] ECF Doc. No. 319-1 at ¶ 10.

[55] ECF Doc. No. 246-1 at 2, ¶ 2.

[56] *Nice v. Centennial Area Sch. Dist.*, 98 F. Supp. 2d 665, 667 (E.D. Pa. 2000) (citing *Eagan by Keith v. Jackson*, 855 F. Supp. 765, 775 (E.D. Pa. 1994)).

[57] *Id.*
[58] Local R. Civ. P. 17.1(A).

[59] *Id.* at 17.1(B).

[60] *Nice*, 98 F. Supp. 2d at 667 (citing *Calvert v. Gen. Accident Ins. Co.*, No. 99-3599, 2000 WL 124570 at * 5 (E.D. Pa. Feb. 2, 2000)).

[61] *Id.*

[62] *Id.* at 668.

[63] In *Nice*, the court applied Pennsylvania law to evaluate a minor's compromise of claims asserting violations of federal civil rights and attorney's fees to be apportioned from the settlement. The court found nothing in the civil rights statutes at issue, 42 U.S.C. §§ 1983-1988, "supplies the rule of decision by which a minor's compromise of a civil rights claim should be reviewed by a court." *Id.* at 669 (footnote omitted). In *Johnson v. Clearfield Area School District*, the court applied Pennsylvania law to determine the fairness of minor's compromise and requested attorney's fees in action claiming denial of free appropriate public education under federal statute. including the ADA. *Johnson,* 319 F. Supp. 2d 583, 589 (W.D. Pa. 2004). In *Eagan*, the court sitting in diversity applied New Jersey law to evaluate the settlement of claims brought by the guardian of an accident victim rendered incompetent. *Eagan,* 855 F. Supp. at 776.

[64] Pa. R. Civ. P. 2064(a). Pennsylvania Rule of Civil Procedure 2039(a) similarly provides "[n]o action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor." Pa. R. Civ. P. 2039(a).

[65] Pa. R. Civ. P. 2064(b).

[66] In *Johnson*, the court considered the reasonableness of the request for attorney's fees drawn from the settlement amount under both Rule 2039(b) and Local Rule 17.1 "as both have been interpreted to include the same discretionary requirement." *Johnson*, 319 F. Supp. 2d at 588, n.4.

[67] *Id.* at 586, n.3 (citations omitted).

[68] *Id.* at 586 (citing *Power by Power v. Tomarchio*, 701 A.2d 1371, 1374 (Pa. Super. Ct. 1997)).

[69] *Id.* (citing *Calvert*, 2000 WL 124570 at * 5-6).

[70] ECF Doc. No. 313-1 at ¶ 5.f.

[71] *Id.* at ¶ 5.b.

[72] *Id.* at ¶ 5.d.

[73] *Id.* at ¶ 5.g.

[74] *Id.* at ¶ 11.

[75] ECF Doc. No. 319-2; ECF Doc. No. 319-3.

[76] *See Johnson*, 319 F. Supp. 2d at 589, n.7 ("[V]arious other counties in Pennsylvania have adopted a presumptive lodestar for fees involving the settlement of a minor's claims); *Nice,* 98 F. Supp. 2d at 670-71 (adopting the presumptive lodestar of twenty-five percent promulgated by the Court of Common Pleas of Bucks County); *Stecyk v. Bell Helicopter Textron, Inc.*, 53 F. Supp. 2d 794, 801 (E.D. Pa. 1999) (adopting the Delaware County presumptive lodestar of twenty-five percent); *Gilmore by Gilmore v. Dondaro*, 582 A.2d 1106, 1109-10 (Pa. Super. Ct. 1990)

(approving trial court's application in determining fee award, of the then-in-place Chester County Court of Common Pleas local rule providing for a twenty-five percent presumptive lodestar); *Henderson ex rel. Bethea v. Nationwide Mut. Ins. Co.*, No. 00-1215, 2001 WL 43648, at *2 (E.D. Pa. Jan. 4, 2001) (adopting the Philadelphia County local rule providing for a presumptive lodestar of one-third of the amount of the net fund recovered).

[77] *Nice*, 98 F. Supp. 2d at 671 (citing *Gilmore*, 582 A.2d at 1109-10).

[78] ECF Doc. No. 313-2 at 16.

[79] *Id.* at 17.

[80] *Id.* at 17-19.

[81] *In re Estate of Gregory*, No. 1265, 2006 WL 3041968, at *22 (Phila. Cnty. Court of Common Pleas May 31, 2006).

[82] *Id.* at *21-*22.

[83] *In re Weightman's Estate*, 190 A. 552, 554-557 (Pa. Super. Ct. 1937).

[84] *In re Feely Estate*, 98 A.2d 738, 742 (Pa. Super. Ct. 1953).

[85] *Id.*

[86] *Bradley v. GMAC Ins. Co.*, 320 F. App'x 125 (3d Cir. 2008).

[87] *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1250 n.4 (Pa. 2016) (citing *Shafer Elec. & Constr. v. Mantia*, 96 A.3d 989, 992 n.3 (Pa. 2014)). In *Shafer Electric*, the Pennsylvania Supreme Court explained a claim for damages in quantum meruit is fundamentally an equitable claim of unjust enrichment in which the party seeking recovery must demonstrate: "(1) [the] benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Shafer Electric*, 96 A.3d at 993 (quoting *Durst v. Milroy Gen. Contracting, Inc.,* 52 A.3d 357, 360 (Pa. Super. Ct. 2012)).

[88] *Mager v. Bultena*, 797 A.2d 948, 961 (Pa. Super. Ct. 2002) (citing *Robbins v. Weinstein*, 17 A.2d 629, 633 (Pa. Super. Ct. 1941)).

[89] *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C.*, 137 A.3d at 1250.

[90] *Mulholland v. Kerns,* 822 F. Supp. 1161, 1169 (E.D. Pa. 1993).

33

[91] *See e.g.*, *Krishnan v. Cutler Grp., Inc*., 171 A.3d 856, 903 (Pa. Super. Ct. 2017) ("In general, 'the manner by which attorneys' fees are determined in this Commonwealth, under fee-shifting provisions, is the lodestar approach'" (quoting *Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 792-93 (Pa. Super. Ct. 2006)); *Hiscott & Robinson v. King*, 626 A.2d 1235, 1238 (Pa. Super. Ct. 1993) (in dispute over attorney's fees, applying quantum meruit theory to recovery of fees by multiplying hours worked at the hourly rate).

[92] *Joseph Q. Mirarchi Legal Servs., P.C. v. Thorpe*, No. 19-3102, 2020 WL 2030036, at *6 (E.D. Pa. Apr. 28, 2020) (quoting *Angino & Rovner v. Jeffrey R. Lessin & Assocs.*, 131 A.3d 502, 511 (Pa. Super. Ct. 2016)).

[93] *Id.* at *1.

[94] *Id.* at *2. The text of the court's opinion cites the Restatement (Second) of Torts § 374.  It appears this is a typographical error and the court meant to refer to the Restatement (Second) of **Contracts** § 374.  Section 374, Restitution in Favor of Party in Breach, provides:

(1) Subject to the rule stated in Subsection (2), if a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach.

(2) To the extent that, under the manifested assent of the parties, a party's performance is to be retained in the case of breach, that party is not entitled to restitution if the value of the performance as liquidated damages is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss.

Restatement (Second) of Contracts § 374 (1981).

[95] *Id.* at *4.

[96] *Id.* at *5.  Counsel asserts he spent a certain number of hours working on the dispute and shared his reasonable hourly fee.

[97] *Id.* at *5-*6.

[98] *Id.* at *5. The court explained the record on the issue on fees is too sparse to accurately approximate the value of the benefits the counsel conferred.

[99] ECF Doc. No. 323 at 3, n.  3.

[100] 903 F.3d 396 (3d Cir. 2018).

[101] *Id.* at 398.

[102] *Id.*

---

[103] *Id.* at 400-01 (internal citation to the record omitted) (footnote omitted).

[104] *Id.* (citations omitted).

[105] *Joseph Q. Mirarchi Legal Servs., P.C.,* 2020 WL 2030036 at *7.

[106] *Id.* at *6-*7 (quoting *In re LaRocca Estate*, 246 A.2d 337, 339 (Pa. 1968)).

[107] Time entry, July 18, 2019, ECF Doc. No. 251-2 at  14 of 41 (using the pagination supplied by the CM/ECF docketing system).

[108] *E.g.*, May 1, 2019 time entry "Review brief in response to AOPC MD [motion to dismiss], ECF Doc. No. 251-2, p. 35 of 41; August 22, 2019 time entry "Review AOPC document production re: Criminal Justice Advisory Board. (200 pages)", ECF 251-2 at 15 of 41.