IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG A. GENESS, | ) | CIVIL ACTION NO. 2:16-cv-00876 |
| | ) | |
| Plaintiff, | ) | HONORABLE MARK A. KEARNEY |
| | ) | |
| v. | ) | |
| | ) | |
| COMMONWEALTH OF PENNSYLVANIA, et al., | ) | |
| | ) | |
| Defendants. | ) | Electronically Filed. |

PLAINTIFF'S PRETRIAL MEMORANDUM

COMES NOW, the Plaintiff, CRAIG A. GENESS, by and through his attorneys, LAW OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE, MASSIMO A. TERZIGNI, ESQUIRE, and ELIZABETH A. TUTTLE, ESQUIRE, and hereby files his Pretrial Memorandum as follows:

A. Brief Statement of the Nature of the Action

This action is brought against the Defendant for violating Plaintiff's rights under the Fourteenth Amendment of the United States Constitution and the Americans with Disabilities Act.

B. Brief Statement of Facts

**Plaintiff is a Qualified, Disabled Individual under the Americans with Disabilities Act.**

Plaintiff, Craig A. Geness, is a qualified, disabled individual as defined by Title II of the Americans with Disabilities Act ("ADA"), as he suffers from various mental impairments, all of which limit one or more of his major life activities. These mental impairments include, but are not limited to, low Intelligence Quotient (I.Q.) and Schizo-Affective Disorder.

**Plaintiff was Denied Participation in the Services and/or Programs and/or Activities of a Public Entity by Reason of his Disability.**

On November 17, 2006, Plaintiff was charged with aggravated assault stemming from an incident that occurred at Plaintiff's group home. On that same day, the Plaintiff was incarcerated in the Fayette County Jail. On November 20, 2006, those charges were upgraded to criminal homicide due to the death of the individual involved in that incident.

On June 18, 2007, Plaintiff, through the public defender, filed an omnibus pre-trial motion including a motion for *habeas corpus* relief. Plaintiff's criminal docket shows no evidence that that motion was ever ruled upon. On that same day, Plaintiff was first determined to be incompetent to stand trial.

Plaintiff remained in the Fayette County Jail from November 17, 2006, through September 21, 2011.

On September 21, 2011, Plaintiff was determined to be incompetent to stand trial for a second time, and was involuntarily committed to a state institution where he was required to remain without contact with the general public and required to wear an ankle monitor. Plaintiff remained in this enforced custody for more than four (4) years.

On May 13, 2015, Plaintiff, through private counsel, filed a motion for *habeas corpus* relief. The docket shows no evidence that this motion was ever ruled upon. On July 15, 2015, after a competency hearing, Plaintiff was deemed not competent to stand trial for a third time. On September 9, 2015, Plaintiff, through private counsel, filed a third motion for *habeas corpus* relief. The docket shows no evidence that this motion was ever ruled upon. On November 23, 2015, Plaintiff, through private counsel, filed a fourth motion for *habeas corpus* relief. The docket shows no evidence that this motion was ever ruled upon.

In a proposed Order dated November 25, 2015, the Commonwealth stated that "[i]t is evident to the Commonwealth that the defendant will never be competent for trial. There exist substantive evidentiary issues in this matter that likely could and would impair the Commonwealth's ability to meet its burden of proof, even if the defendant were competent." On December 10, 2015, acting upon the Commonwealth's proposed order for entry of *nolle prosequi*, Judge Leskinen of the Common Pleas Court of Fayette County dismissed all charges against the Plaintiff.

The record is devoid of any evidence that the Plaintiff was ever brought to trial on the charges against him from the time of his original incarceration on September 17, 2006, through his release from custody on or about December 10, 2015. The definition of "services, programs, or activities of a public entity" includes criminal trials and is a service provided by the Pennsylvania Unified Judicial System.

**Defendant Commonwealth of Pennsylvania, through the Judges of the Court of Common Pleas of Fayette County, Acted with Deliberate Indifference towards the Rights of the Plaintiff.**

Plaintiff was initially deemed incompetent to stand trial on June 18, 2007. On August 13, 2007, Judge John F. Wagner, Jr., ("Wagner") of the Common Pleas Court of Fayette County, ordered that the Plaintiff be evaluated at Mayview State Hospital regarding whether or not he was competent to stand trial and whether or not a probability existed that the Plaintiff would regain competency in a reasonable period of time. On September 25, 2007, Dr. Rathore of Mayview State Hospital tendered a report regarding Plaintiff's competency. In that report, Dr. Rathore diagnosed the Plaintiff as suffering from, *inter alia*, Schizo-Affective Disorder, Bipolar Disorder, as well as mental retardation. Dr. Rathore indicated that on these diagnosis, Plaintiff's prognosis was "poor." Dr. Rathore indicated that the Plaintiff remained incompetent to stand

trial and noted the possibility that the Plaintiff could "decompensate." Notwithstanding the diagnoses and prognosis obtained by the court-ordered Mayview Report, no action was taken on this report at any meaningful time from August 13, 2007, when the report was ordered, for a period of more than three (3) years.

On November 29, 2010, Judge Wagner ordered the Plaintiff to be examined a second time to determine whether the probability existed that the Plaintiff would regain competency in a reasonable time period. No action was taken on this order for nearly ten (10) months.

On August 17, 2011, Judge Gerald R. Solomon ("Solomon") ordered that Plaintiff be evaluated to determine whether or not he was competent to function in society. On September 4, 2011, Dr. Safdar Chaudhary ("Chaudhary") of Torrence State Hospital completed an assessment of the Plaintiff at Fayette County Prison. In that assessment, Dr. Chaudhary confirmed the diagnosis of Schio-Affective Disorder, Bipolar and mental retardation. Dr. Chaudhary also indicated that Plaintiff had a "significant intellectual impairment" and that Plaintiff was "not likely to regain competency." Dr. Chaudhary also indicated that the Plaintiff was not likely to respond to any additional treatment interventions. Judge Wagner reviewed the Torrence Report, as described hereinbefore above. Judge Wagner ordered the Plaintiff involuntarily committed to a state institution to be held without contact with the general public until "completion of [Plaintiff's] therapeutic program or a determination that he is competent to stand trial, whichever comes first," notwithstanding that Dr. Chaudhary had already indicated in the Torrence Report that the Plaintiff was unlikely to improve or become competent to stand trial.

Plaintiff continued to be held in custody from September 21, 2011, until Plaintiff's release from a state institution on or about December 10, 2015. Notwithstanding previous medical reports obtained by the Court, as described hereinbefore above, on July 15, 2015, Judge

Steve P. Leskinen ("Leskinen") held a competency proceeding related to Plaintiff's competency to stand trial. At the July 15, 2015 proceeding, Dr. Scott Tracy ("Tracy") testified that the Plaintiff was not connected to reality. He first testified that the Plaintiff would never be restored to a mental capacity that would allow him to assist in his defense in the criminal case, nor would the Plaintiff ever come to an understanding of his relationships, his awareness, his cognition, his cognitive capacity or his ability to understand much of anything. Dr. Tracy concluded his testimony by indicating that the Plaintiff would never be able to function independently or independently maintain activities of daily living. At the conclusion of the July 15, 2015, competency proceeding, Judge Leskinen ruled that the Plaintiff was not competent to stand trial. Plaintiff was not released from custody for approximately six (6) months after the July 15, 2015, finding resulting from the testimony of Dr. Tracy.

During the period of Plaintiff's incarceration and involuntary commitment, the Plaintiff's criminal case appeared on the monthly criminal trial list for the Court of Common Pleas of Fayette County on at least thirty (30) occasions.[1] On each of those occasions, Plaintiff's case was called to trial. On each of those occasions, action on Plaintiff's trial was postponed due to Plaintiff having been deemed incompetent. For the period from 2007 through 2012, all of the judges of the Common Pleas Court of Fayette County presided over one (1) or more Calls of the Trial List.

Throughout the course of Plaintiff's incarceration, the warden of Fayette County Prison repeatedly insisted that Judge Wagner take some action to resolve Plaintiff's pending criminal charges because it was improper to continue to let the Plaintiff languish in jail without some action being taken. The head of the Fayette County mental health agency also made repeated

demands upon Judge Wagner to take action in the Plaintiff's case. On many of the orders penned by judges of the criminal division of the Common Pleas Court of Fayette County, the following notation appears:

**Americans with Disabilities Act of 1990**

> The Court of Common Pleas of Fayette County is required by law to comply with the Americans with Disabilities Act of 1990.

On August 26, 2013, during the call of the September, 2013, Criminal Trial List, Judge Wagner, President Judge of the Fayette County Court of Common Pleas, made certain observations regarding the inadequacy of treatment of mentally ill inmates at the Fayette County Jail, where the Plaintiff was housed for four (4) years. Judge Wagner admitted that the jail was the worst place to house someone with mental illness because they get "no services whatsoever . . . no treatment at all."

Plaintiff will rely on these facts, and ask the jury for a verdict in his favor.

C. Damages Sought

In this action, the Plaintiff does not seek to recover lost wages, medical costs or similarly definable losses. Plaintiff's claim for monetary damages stems from the injuries that he suffered while unlawfully incarcerated and held in isolation while shackled for the combined period of almost ten (10) years. Those damages result from Plaintiff's emotional distress and suffering while held captive as described above, which will be an amount left to the common sense of the jury. In the event of a favorable verdict, Plaintiff will seek recovery of attorney's fees, costs of suit, pre- and post-judgment interest and such other relief as provided by law and as the Court deems appropriate.

[1] This figure is based upon the existing records provided by the Commonwealth's former co-Defendant, Administrative Office of Pennsylvania Courts ("AOPC"), in this matter. There is nothing in the record to suggest that the approximately sixty-one (61) Calls of the List which are missing do not contain the same information.

D. All Stipulations of Counsel

1. Mr. Geness is currently 54 years old, and he was 39 years old in 2006 when he was charged and incarcerated in this matter.

2. On November 17, 2006, Mr. Geness was arrested and charged with assault, and was later rearrested on a general homicide charge after the decedent, Mr. Fiffik, died.

3. At the time of his arrest, Mr. Geness had been involuntarily committed to a mental institution by his landlord.

4. Mr. Geness was incarcerated for approximately five (5) years in the Fayette County Jail, and was held in custody with an ankle bracelet in various state mental institutions for approximately four (4) more years from the time he was taken into custody on the charges in this case.

5. Bernadette Tummons entered her appearance on behalf of Mr. Geness on March 12, 2012.

6. The proposed order dated November 25, 2015 (Exhibit 43 on Plaintiff's Exhibit list) was prepared by the office of the Fayette County District Attorney in connection with the request by that office for a *nolle prosequi* dismissal of all charges against Mr. Geness.

E. Witnesses

*Liability/Damage Witnesses*

1. Bernadette Tummons

Ms. Tummons, a resident of Fayette County, Pennsylvania, served as Mr. Geness' *pro bono* criminal counsel through much of his ordeal. She will testify on the following topics:

a. The evidence which she obtained which demonstrates Mr. Geness' innocence.

This will include the introduction of hospital records of the decedent, as well as the reports of the first responders and the "*Miranda* waiver" signed by Mr. Geness.

  b. The conversation between Ms. Tummons and Mr. Geness in which she questioned him as to why he "confessed" to the killing of the victim, and wherein he answered that he did so because the police told him he did it.

  c. The efforts that she made to effect Mr. Geness' release, including her multiple efforts to obtain discovery from the District Attorney, the multiple *habeas corpus* motions that she filed and which went unheard, her insistence that the District Attorney agreed to a *nolle pros* of the charges, as well as the timing of the District Attorney's agreement to that resolution.

  d. The condition that she found Mr. Geness in when she visited him on the first occasion, as well as how she found him on subsequent visits, as well as her observation of his reaction when the ankle bracelet was finally removed, together with Mr. Geness' physical condition in the area where the bracelet had been secured during the many years that it remained there.

2. Dr. Scott Tracy

  Dr. Tracy is a Ph.D psychologist employed by Mr. Geness' criminal defense counsel to examine Mr. Geness and give testimony relative to his competence to stand trial. Dr. Tracy will testify as to Mr. Geness' mental health status and condition as it was at the time of Dr. Tracy's testimony in July of 2015, as well as his current mental health status. Dr. Tracy will also testify regarding Mr. Geness' clinical diagnosis, and how that diagnosis affects Mr. Geness on a day-to-day basis, including the fact that Mr. Geness' diagnosis makes him particularly susceptible to suggestion by others. Dr. Tracy will testify consistent with his testimony from the

July, 2015, criminal proceeding, as well as his observations made in a recent re-examination of Mr. Geness.

3. Brian Miller

Mr. Miller, a resident of Fayette County, was the warden at the Fayette County Jail while Mr. Geness was incarcerated there. Mr. Miller will testify in two (2) areas:

    a. Mr. Geness' condition while he was incarcerated, to include the conditions under which he was kept, as well as Mr. Miller's observations on Mr. Geness and the different moods and attitudes exhibited by him during his incarceration.

    b. The efforts which Mr. Miller made to convince President Judge Wagner to take action regarding Mr. Geness' case and the apparent indefinite incarceration of Mr. Geness.

*Liability Witnesses*

4. Honorable John Wagner, President Judge, Court of Common Pleas of Fayette County (as for cross examination)

Plaintiff will take the testimony of Judge Wagner, a resident of Fayette County, as for cross, regarding his failure to call the case for trial or demand other action from the parties during Mr. Geness' long incarceration and custodial detention, as well as his failure to heed the demands of Mr. Miller, the local prison warden, to take action on Mr. Geness' case.

5. Pamela Johnston

Ms. Johnston, a resident of Fayette County, will testify that, as an employee of Fayette County, she had occasion to discuss Mr. Geness' case with the Fayette County Court Administrator, Karen Kuhn. Ms. Johnston will testify that Ms. Kuhn told her that the state Administrative Office of the Pennsylvania Courts had contacted her to demand that action be taken on Mr. Geness' case.

*Damage Witnesses*

6. Cheryl Turner

Ms. Turner, a resident of Fayette County, is one of Mr. Geness' caretakers, and has been for some time. She will testify as to Mr. Geness' current condition and his lifestyle, including Mr. Geness' day-to-day activities, his likes and dislikes, as well as his general mood and attitude.

7. Napoleon Wardell

Mr. Wardell, a resident of Fayette County, is one of Mr. Geness' caretakers, and has been for some time. He will testify as to Mr. Geness' current condition and his lifestyle, including Mr. Geness' day-to-day activities, his likes and dislikes, as well as his general mood and attitude.

8. Lori Chapman

Ms. Chapman, a resident of Fayette County, was a prison guard at Fayette County prison during the period of Mr. Geness' incarceration there. She will testify as to his day-to-day activities, the conditions under which he lived, and the impact of his incarceration on Mr. Geness as she was able to observe it.

9. Larry Chapman

Mr. Chapman, a resident of Fayette County, was a prison guard at Fayette County prison during the period of Mr. Geness' incarceration there. He will testify as to Mr. Geness' day-to-day activities, the conditions under which he lived, and the impact of his incarceration on Mr. Geness as Mr. Chapman was able to observe it.

10. Jaime Walagura

Ms. Walagura, a resident of Fayette County, was a prison counselor at Fayette County prison during the period of Mr. Geness' incarceration there. She will testify as to his day-to-day

activities, the conditions under which he lived, and the impact of his incarceration on Mr. Geness as she was able to observe it.

F. Deposition/Hearing Testimony Designations[2]

1. From the deposition of Thomas B. Darr.
Page 24, Lines 1-25
Page 42, Lines 1-25
Page 62, Lines 1-25
Page 63, Lines 1-25
Page 67, Lines 1-25
Page 108, Lines 1-25
Page 109, Lines 1-25
Page 110, Lines 1-25
Page 111, Lines 1-25

2. From the deposition of Joseph Mittleman
Page 10, Lines 1-25
Page 11, Lines 1-25
Page 12, Lines 1-25
Page 13, Lines 1-25
Page 22, Lines 1-25
Page 23, Lines 1-25
Page 24, Lines 1-25
Page 25, Lines 1-25
Page 46, Lines 1-25
Page 47, Lines 1-25
Page 48, Lines 1-25
Page 49, Lines 1-25
Page 74, Lines 1-25
Page 75, Lines 1-25
Page 76, Lines 1-25
Page 77, Lines 1-25

3. From the deposition of Karen Kuhn
Page 45, Lines 1-25
Page 46, Lines 1-25
Page 47, Lines 1-25
Page 48, Lines 1-25

4. Call of the Criminal Trial List before Judge Solomon dated March 27, 2008.
PL 001348-1350
Page 2, Lines 2-10.

[2] Highlighted designations attached hereto as Exhibit A.

5.     Call of the Criminal Trial List Proceedings before Judge Leskinen dated July 26, 2010.
PL 001351-1353
Page 2, Lines 2-12

6.     Call of the Criminal Trial List before Judge Solomon dated August 23, 2010.
PL 001361-1363
Page 2, Lines 2-9

7.     Call of the Criminal Trial List Proceedings before Judge Leskinen dated October 31, 2011.  PL 001361-1363
Page 2, Lines 2-12

8.     Call of the List Proceedings before Judge Capuzzi dated August 27, 2012.
PL 002490-2492
Page 2, Lines 2-12

9.     Call of the Criminal Trial List Proceedings before Judge Vernon dated November 28, 2011.  PL 001385-1387
Page 2, Lines 10-14

10.    Proceedings before Judge Leskinen dated November 10, 2015.  PL 001769-1786
Page 1769, Lines - All
Page 1770, Lines - All
Page 1772, Lines 1-12
Page 1773, Lines 4-6, 11-24
Page 1774, Lines 1-9, 15-24
Page 1775, Lines 1-5, 8-24
Page 1776, Lines - All
Page 1777, Lines 1-4
Page 1778, Lines 1-14
Page 1779, Lines 4-24
Page 1780, Lines 1-5
Page 1781, Lines 1-7
Page 1782, Lines 23-24
Page 1783, Lines - All
Page 1784, Lines - All
Page 1785, Lines - All

11.    Competency Proceedings dated July 165, 2015.
PL 001398-1443, 1460-1464, 1465- 1469, 1470
Page 1398, Lines - All
Page 1403, Lines - All
Page 1404, Lines - All
Page 1405, Lines 1-14
Page 1406, Lines 23-24
Page 1407, Lines - All

Page 1432, Lines 15-25
Page 1433, Lines 1-17
Page 1434, Lines 2-25
Page 1435, Lines - All
Page 1436, Lines - All
Page 1437, Lines - All
Page 1439, Lines 22-25
Page 1440, Lines - All
Page 1441, Lines 1-19

G. Exhibits

The Plaintiff intends to introduce the following exhibits at trial in this action:

1. Incident Report dated October 27, 2006. PL 00027

2. EMS Form dated October 27, 2006. PL 001656-1658

3. *Miranda* Waiver dated November 16, 2006. PL 001571

4. ED History & Physical of Ronald E. Fiffik. PL 01572

5. 2007 Mayview State Hospital Summary by Daleep Rathore, M.D. PL 001393-1397

6. 2011 Torrence Forensic Psychiatric Assessment by Safdar I. Chaudary, M.D. PL 001388-1392

7. Order for Entry of *Nolle Prosqui* dated December 10, 2015. PL 002438

8. Entry of Appearance of Bernadette Tummons. PL 002432-2436

9. Omnibus Pre-Trial Motion dated June 18, 2007. PL 002432-2436

10. Motion to Dismiss, Writ of *Habeas Corpus*, and Omnibus Pre-Trial Motion dated May 11, 2015. PL 001893-1900

11. Motion to Dismiss, Writ of *Habeas Corpus*, and Omnibus Pre-Trial Motion dated September 9, 2015. PL 001500-1525

12. Motion to Dismiss, Writ of *Habeas Corpus*, and Omnibus Pre-Trial Motion dated November 23, 2015. PL 001868-1886

13. Correspondence to Judge Leskinen from Bernadette Tummons dated August 20, 2015, with attachment. PL 001916-1929

14. Motion to Continue until Defendant is Competent dated May 31, 2007. PL 002029-2031

15. Motion to Continue until Defendant is Competent dated July 10, 2007.  PL 002504-2505

16. Motion to Continue until Defendant is Competent dated August 16, 2007.
    PK 002515-2519

17. Petition for Involuntary Commitment dated November 17, 2010.  PL 002534-2538

18. Motion for R.O.R. Bond dated September 19, 2011.  PL 001354-1360

19. Proceedings held before Honorable Gerald R. Solomon dated June 6, 2007.
    PL 001319-1323

20. Motion for ROR Bond Proceedings before Honorable Gerald R. Solomon
    dated August 17, 2011.  PL 001354-1360

21. Order signed by Judge Solomon dated August 17, 2011.  PL 1376-1378

22. Order signed by Judge Leskinen dated July 15, 2015, re: Defendant remains incompetent.
    PL 001888

23. Order signed by Judge Leskinen dated September 16, 2015, re: scheduling hearing.
    PL 002449

24. Arraignment Court Proceedings before Judge Leskinen dated May 17, 2007.
    PL 001303-1306

25. Order signed by Judge Wagner dated June 5, 2007.
    PL 001318

26. Order signed by Judge Wagner dated June 18, 2007.  PL 001324-1325

27. Order signed by Judge Wagner dated August 13, 2007.  PL 001339-1347

28. Order signed by Judge Wagner dated November 29, 2010.  PL 001373-1374

29. Order signed by Judge Wagner dated September 21, 2011.  PL 001379

30. Order signed by Judge Wagner dated May 14, 2012.  PL 002529-2530
31. Order signed by Judge Warman dated July 13, 2007.  PL 001335

32. Order signed by Judge Warman dated August 21, 2007.  PL 001550

33. Criminal Pre-Trial Conference dated May 30, 2007.  PL 001307-1310

34. Americans with Disabilities Act of 1990 Notice signed by Judge Solomon. PL 001312

35. Criminal Docket Entries.  PL 0061-0076

36. Call of the Criminal Trial List before Judge Solomon dated March 27, 2008. PL 001348-1350

37. Call of the Criminal Trial List Proceedings before Judge Leskinen dated July 26, 2010. PL 001351-1353

38. Call of the Criminal Trial List before Judge Solomon dated August 23, 2010. PL 001361-1363

39. Call of the Criminal Trial List Proceedings before Judge Leskinen dated October 31, 2011.  PL 001361-1363

40. Call of the List Proceedings before Judge Capuzzi dated August 27, 2012. PL 002490-2492

41. Call of the Criminal Trial List Proceedings before Judge Vernon dated November 28, 2011.  PL 001385-1387

42. Curriculum Vitae of Dr. Scott Tracy, Mini-Mental State Examination (MMSE) and Psychological Assessment Form by Dr. Scott Tracy and Correspondence dated October 27, 2018 by Dr. Scott Tracy. PL 001398-1443, 1460-1464, 1465-1469, 1470

43. Proposed Order of November 2015 prepared by Office of District Attorney.  RR205a

44. Call of List Documents – Calls of List.  00561a-1057a

45. Call of List Documents – Proceedings Transcripts.  001509a-1272a

46. Motion to Compel Discovery dated June 10, 2015, and Order signed by Judge Wagner on June 17, 2015.  PL 000686-690

47. Print Outs from AOPC Website.  A 0083-86

48. Excerpts from Annual Report of the Administrative Office of Pennsylvania Courts. A 0087-88, 91, 93, 97, 98

49. Fayette County Prison, Current Hosing Roster.  PL 000002a-2b

50. Pennsylvania Code Rule 505. General Functions of the Administrative Office. Mittleman Deposition Exhibit No. 14.

51. Pennsylvania Code Rule 506. Cooperation with Administrative Office.
Mittleman Deposition Exhibit No. 15.

H. Trial Time

Plaintiff estimates that the time for trial will be approximately five (5) days in length.

I. Special Comments

Plaintiff believes that a challenging legal issue in this case will involve the permissible scope of the testimony of Judge Wagner. Plaintiff anticipates an *in limine* motion in this regard.

Respectfully Submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone
Joel S. Sansone, Esquire
PA ID No. 41008
Massimo A. Terzigni, Esquire
PA ID No. 317165
Elizabeth A. Tuttle, Esquire
PA ID No. 322888

Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: June 15, 2021