**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CRAIG GENESS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  16-876** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA** | : | |

## MEMORANDUM

KEARNEY, J.                                                             August 31, 2021

Our Court of Appeals and we have repeatedly agreed Pennsylvania's mental health and criminal justice systems failed the severely mentally impaired Craig Geness who spent years in jail and later with an ankle monitor after a district attorney charged him with a homicide at a Fayette County adult group home the Commonwealth could never prove. Several persons are responsible for Mr. Geness's extended nightmare. Mr. Geness's counsel voluntarily released claims challenging the Fayette County district attorney's and public defender's multiple failures. The law required we dismiss untimely claims. Our Court of Appeals found Mr. Geness may proceed against the Commonwealth on an Americans with Disabilities Act claim but later held he could not proceed against the Administrative Office of Pennsylvania Courts under the same theory. The Supreme Court denied Mr. Geness's petition for certiorari. Mr. Geness, aided by an experienced guardian appointed to carefully review possible settlements, resolved his claims against the Department of Human Services for three hundred and seventy-five thousand dollars.

We then focused on the Disabilities Act claim against the Commonwealth as the only remaining party. Following years of discovery and guided by two precedential opinions from our Court of Appeals, we denied motions for summary judgment filed by both parties. We found the Commonwealth could not invoke immunity and identified the triable issue as whether Mr.

Geness could prove the Commonwealth, through Fayette County judges, exhibited the deliberate indifference from September 2011 until December 2015 necessary to recover damages when the judges never ordered him released from Long Term Structured Release in a private facility with ankle monitoring knowing he would never be competent for trial. Mr. Geness adduced trial testimony from his pro bono state court lawyer and a qualified expert. He also presented selected excerpts from a Fayette County judge's videotaped trial testimony. Mr. Geness offered proposed jury instructions including a trial-eve version instructing the jury they could infer the judges' deliberate indifference based on an "unhurried judgment" analysis borrowed from a state-created danger theory in a substantive due process case addressing the level of culpability to shock the conscience. We instructed the jury consistent with the deliberate indifference instruction first proposed by both parties but declined the last-minute deliberate indifference instruction which would have allowed the jury to infer deliberate indifference based on a judge's unhurried judgment as borrowed from entirely distinct factual and legal paradigms.

The jury found Mr. Geness did not prove the Commonwealth, through the Fayette County judges, exhibited deliberate indifference to him after finding he would never be competent for trial. Mr. Geness now moves for a new trial arguing we should have entered summary judgment in his favor based upon evidence of the Fayette County judge's knowledge of Pennsylvania law and, because we erred in instructing the jury on deliberate indifference consistent with Mr. Geness's first two versions of jury instructions. We studied these issues several months before trial when denying summary judgment and then again multiple times leading up to and during trial. Following further study, we find no error and deny Mr. Geness's motion for a new trial. The jury spoke based on all the evidence and following the instructions governing deliberative indifference under the Disabilities Act.

I.     **The adduced evidence.**[1]

Craig Geness, a 51-year-old severely mentally impaired man, spent five years incarcerated at Fayette County Jail and four years involuntarily committed to a mental health facility awaiting trial for a homicide he likely did not commit on October 27, 2006. Early in Mr. Geness's prosecution, a doctor found Mr. Geness incompetent to stand trial but did not opine on whether Mr. Geness would attain competency at some point in the future. Mr. Geness's case languished for several years due to attorney neglect, bureaucratic inaction, and systemic deficiencies.

Mr. Geness spent five years in prison before a doctor evaluated, for the first time, whether Mr. Geness would ever attain competency to stand trial. Dr. Safdar I. Chaudhary found on September 4, 2011, Mr. Geness not likely to regain competency in the foreseeable future and not likely to benefit from additional psychiatric interventions capable of restoring him to a high level of functioning. Mr. Geness's attorneys provided Dr. Chaudhary's report to the Honorable John J. Wagner of the Fayette County Court of Common Pleas and requested Judge Wagner enter an order committing Mr. Geness to Chestnut Ridge Counseling Services, a mental health facility. Judge Wagner ordered Mr. Geness committed to Long Term Structured Release, with ankle monitoring, at Chestnut Ridge Counseling Services until he either completed a therapeutic program or attained competency to stand trial – an impossible outcome.

About six months into Mr. Geness's time at Chestnut Ridge, a staff member contacted a private defense attorney, Bernadette Tummons, to review Mr. Geness's case. Attorney Tummons agreed to represent Mr. Geness pro bono and sought discovery from Mr. Geness's former attorneys and the district attorney. Mr. Geness's attorney had no files, and the district attorney stonewalled Attorney Tummons for two years. Attorney Tummons did not file motions in those

two years. Attorney Tummons began filing motions and *habeas corpus* petitions in mid-May 2015, calling the Court's attention to Mr. Geness's permanent state of incompetence and casting doubt on his ability to give a confession in light of his low IQ.

Six months and three hearings after Attorney Tummons first began filing motions and petitions for *habeas corpus*, Judge Leskinen of the Fayette County Court of Common Pleas approved the district attorney's request for leave to enter a *nol pros* and dismissed the charges against Mr. Geness without prejudice in December 2015 – four years after Judge Wagner civilly committed Mr. Geness to Long Term Structured Release and nine years after his initial arrest.

### Mr. Geness brings this case.

Mr. Geness brought this case in June 2016 against the city, the county, the investigating detective, and the owners of the assisted living facility where the death giving rise to the criminal charges occurred.[2] He voluntarily withdrew his claims against the city, the county, and the owners of the assisted living facility albeit without moving for orphan's court approval.[3] We dismissed the claims against the detective.[4]

Mr. Geness sought leave to amend his complaint to sue the Commonwealth of Pennsylvania under the Americans with Disabilities Act.[5] We denied leave, finding the amendment unduly delayed and futile.[6] Mr. Geness appealed.

The court of appeals instructed us to allow Mr. Geness to amend his complaint.[7] In *Geness I*, the court of appeals analyzed whether Mr. Geness's proposed amendment, adding an Americans with Disabilities Act claim against the Commonwealth, would be futile.[8] Our Court of Appeals explained Mr. Geness must plead four elements under Title II of the Americans with Disabilities Act against the Commonwealth: "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services,

programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability."[9] The court of appeals found Mr. Geness satisfied all four elements but focused its analysis on the third and fourth elements.[10]

Regarding the third element, the court of appeals looked to regulations promulgated under the Americans with Disabilities Act and the Pennsylvania Mental Health Procedures Act to determine the "benefits [and] services" offered by the Commonwealth.[11] The court of appeals cited federal regulations requiring the Commonwealth to "ensure that inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals" and not to "place inmates or detainees with disabilities in inappropriate security classifications because no accessible beds are available."[12] The court of appeals also cited the Pennsylvania Mental Health Procedures Act, through which the Pennsylvania General Assembly outlines the procedures applicable to criminal defendants found incompetent to stand trial.[13] The court specifically cited the section of the Pennsylvania Mental Health Procedures Act providing, "a court may order involuntary treatment of a person found incompetent to stand trial but who is not severely mentally disabled" for a period of sixty days, but may only order involuntary treatment "if the court is reasonably certain that the involuntary treatment will provide the defendant with the capacity to stand trial."[14]

The court of appeals recited the circumstances of Mr. Geness's incarceration and institutionalization and found the allegations sufficient to plead the Commonwealth denied Mr. Geness benefits or services by reason of his disability under Title II of the Americans with Disabilities Act.[15]

***Mr. Geness adds the Commonwealth, the Administrative Office of the Pennsylvania Courts, and the Department of Human Services as defendants.***

Mr. Geness amended his complaint twice after *Geness I* to add Americans with Disabilities Act claims against the Administrative Office of Pennsylvania Court (the "AOPC"), the Commonwealth, and the Pennsylvania Department of Human Services (the "DHS").[16]

The DHS settled with Mr. Geness for $375,000, and Mr. Geness released the DHS and the Commonwealth for claims involving the DHS's conduct.[17] The AOPC sought dismissal of the claims against it, invoking sovereign and judicial immunity. We found the AOPC could not invoke sovereign immunity and, as an entity, could not invoke judicial immunity.[18] The AOPC appealed.

The court of appeals in *Geness II* found the AOPC entitled to sovereign immunity, but did not address whether an entity can invoke judicial immunity.[19] Applying the *United States v. Georgia*[20] analysis, which requires courts to examine whether the AOPC's conduct violated Title II as a threshold inquiry to whether the Eleventh Amendment applies, our Court of Appeals held Mr. Geness did not adequately plead a Title II claim against the AOPC allowing the AOPC to invoke sovereign immunity.[21] To plead a Title II claim against the AOPC, the court of appeals explained Mr. Geness must allege the AOPC excluded him from "participation in or denied the benefits of services, programs, or activities of a public entity, or was subject to discrimination by any such public entity."[22] Satisfying this element of a Title II claim requires identifying specific "services, programs, or activities of a public entity."[23] Our Court of Appeals interpreted Mr. Geness's allegations as pleading two potential AOPC "services, programs or activities": (1) a duty to "intervene directly with the Fayette County Court to ensure the Plaintiff's case moved forward," and (2) its duty to "seek intervention for such result by the Pennsylvania Supreme Court."[24]

Regarding the AOPC's duty to intervene directly in his case, the court of appeals noted Mr. Geness did not specify precisely which actions the AOPC could have taken to move his case along beyond inquiring about his case, which the AOPC did repeatedly.[25] The court concluded "Geness's allegation of AOPC's failure to directly intervene with the county court in some unspecified manner, beyond its repeated inquiries to the court administrator, cannot sustain his claim under Title II of the ADA."[26]

The court of appeals then addressed the AOPC's duty to ask the Pennsylvania Supreme Court to intervene in Mr. Geness's case.[27] Our Court of Appeals reasoned Mr. Geness's view of this duty to intervene would require the AOPC to "closely monitor, deeply evaluate, and consider intervening in every criminal case pending in the Commonwealth."[28] In essence, it would require the AOPC to meddle in judicial decision-making, which our Court of Appeals determined the AOPC has no duty or power to do.[29] It further reasoned even if the AOPC did have a duty to seek intervention from the Pennsylvania Supreme Court, Mr. Geness did not plead it failed to do so "by reason of his disability."[30] Our Court of Appeals thus concluded Mr. Geness failed to satisfy the *Georgia* elements and ordered us to dismiss the claims against the AOPC under sovereign immunity.[31]

### Mr. Geness moves for summary judgment.

Following *Geness I*, *Geness II*, and Mr. Geness's settlement with the DHS, the issues remaining included: (1) whether we could hold the Commonwealth liable for the conduct of the judges of the Fayette County Court of Common Pleas; (2) if we could hold the Commonwealth liable for the judges' conduct, whether the judges violated the Americans with Disabilities Act; and (3) if the judges violated the Americans with Disabilities Act, whether the judges acted with deliberate indifference to Mr. Geness's federally protected rights.[32]

Mr. Geness and the Commonwealth cross-moved for summary judgment. The Commonwealth argued both sovereign and judicial immunity barred Mr. Geness's claims. Mr. Geness argued the court of appeals' ruling in *Geness I*, subsequent affirmation of the binding nature of *Geness I* in *Geness II*, and the absence of disputed facts confirmed the Commonwealth could not invoke sovereign immunity, the Commonwealth violated the Americans with Disabilities Act as a matter of law, and the Commonwealth acted with deliberate indifference as a matter of law.

We first analyzed whether the Commonwealth could invoke sovereign immunity.[33] Applying *Geness II* and *United States v. Georgia*, we began by assessing whether Mr. Geness established a claim against the Commonwealth under the Americans with Disabilities Act, which required we determine which "services" it offered and whether it denied Mr. Geness the benefit of these services "by reason of his disability."[34] Looking to *Geness II*, we identified four "services" the Commonwealth offered: (1) ensuring inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals; (2) not placing inmates or detainees in inappropriate security classifications because no accessible cells or beds are available; (3) timely transferring a detainee in need of a mental health evaluation to a mental health facility; and (4) not subjecting a detainee to involuntary incompetency restoration treatment for an unreasonable period of time.[35] The fourth service derived from the Pennsylvania Mental Health Procedures Act, which outlines the procedures for dealing with criminal defendants deemed incompetent to stand trial.[36]

In light of the DHS settlement and the AOPC's dismissal, we sought to clarify which Commonwealth actor had the responsibility of administering each of these services.[37] Mr. Geness conceded the DHS is responsible for administering the first and second "services," and

his settlement agreement released the Commonwealth for claims arising from failure to provide Mr. Geness the benefit of these services.[38] Responsibility for administering the third and fourth service – transferring detainees in need of a mental health evaluation to a mental health facility and limiting involuntary incompetency treatment in accordance with the Pennsylvania Mental Health Procedures Act – laid at least in part with the judges of the Fayette County Court of Common Pleas.[39]

Having clarified the "services" administered by the Commonwealth, acting through the judges of the Fayette County Court of Common Pleas, we assessed whether Mr. Geness established the Commonwealth, acting through its judges, denied him of these services by reason of his disability.[40] We found Mr. Geness established the judges denied him the benefit of the service of "limit[ing] his involuntary incompetency treatment to a reasonable period of time" in accordance with the Pennsylvania Mental Health Procedures Act by involuntarily committing him for four years following a determination he would never become competent to stand trial.[41] But we found the judges did not deny him the service of failing to transfer him to a mental health facility because our review of the record showed the judges repeatedly ordered Mr. Geness transferred to a Mental Health Facility, but no one complied with the Orders because the DHS did not allocate sufficient beds, and as discussed above, Mr. Geness released the DHS from liability.[42]

Having determined the judges violated the Americans with Disabilities Act by failing to limit Mr. Geness's involuntary competency restoration period to a reasonable period under the Pennsylvania Mental Health Procedures Act, we next assessed whether this conduct also violated the Fourteenth Amendment.[43] Citing *Geness I*, we found the conduct violated the Fourteenth Amendment. We found the Commonwealth could not invoke sovereign immunity.[44]

We determined, under the first prong of the *United States v. Georgia* test, Mr. Geness established the judges violated his rights under the Americans with Disabilities Act by failing to limit his involuntary competency treatment to a reasonable period.[45] But we found, despite the absence of disputed facts, reasonable jurors could draw different inferences regarding whether the Fayette County judges acted with deliberate indifference to Mr. Geness's rights when Judge Wagner committed Mr. Geness to Long Term Structured Release following a doctor's determination he would never be competent to stand trial.[46] We explained, "without evidence of Judge Wagner's state of mind, we cannot find as a matter of law he acted with deliberate indifference."[47] We reasoned, "[a] reasonable juror could determine Judge Wagner believed he was sentencing Mr. Geness to a temporary stay at Chestnut Ridge Counseling Services to complete a program, which would prepare Mr. Geness for his eventual release and allow him to receive critical services while his lawyers determined where Mr. Geness would go."[48] We cited adduced evidence establishing Mr. Geness had no family, no guardian, and no ability to live on his own – meaning a "release" would necessarily involve transitioning Mr. Geness to a facility for disabled or mentally ill adults.[49] We concluded, "[a] reasonable juror could find Judge Wagner sought to ensure Mr. Geness received appropriate mental health services while his attorney and the Commonwealth attorneys determined next steps."[50] But we also found a "reasonable juror could alternatively determine Judge Wagner knew the effect of his Order of potentially indefinite, involuntary commitment violated the Fourteenth Amendment."[51] Without evidence of Judge Wagner's state of mind, we could not find deliberate indifference as a matter of law.[52]

We scheduled trial for the jury to consider the sole issue of whether the Commonwealth, acting through its judges, acted with deliberate indifference to Mr. Geness's federally protected rights.

### *The parties submit competing jury instructions.*

We ordered the parties file proposed jury instructions "[n]o later than June 15, 2021."[53] Mr. Geness timely filed his first set of proposed jury instructions.  He requested we give the following instructions on deliberate indifference:

> [T]o obtain monetary damages, Mr. Geness must prove, by a preponderance of the evidence, that the Commonwealth acted with deliberate indifference towards his federally protected rights.
>
> To satisfy the deliberate indifference standard, Mr. Geness must establish that the judges of the Court of Common Pleas of Fayette County (1) knew that Mr. Geness' federally protected rights were substantially likely to be violated; and (2) that they 'fail[ed] to act despite that knowledge."
>
> If you find, by a preponderance of the evidence, that the Commonwealth, through its judges, acted with deliberate indifference towards Mr. Geness' federally protected rights, then Mr. Geness has established his claim for monetary damages under the ADA.[54]

The Commonwealth did not object to Mr. Geness's proposed instructions on deliberate indifference. [55]  The Commonwealth also timely filed proposed jury instructions. [56]  The Commonwealth asked us to instruct the jury:

> The remaining issue to be decided in this case is whether Plaintiff can obtain compensatory damages based on a violation of the Americans with Disabilities Act. A plaintiff who seeks compensatory damages must show intentional discrimination under a deliberate indifference standard.
>
> To satisfy this standard, Plaintiff must prove by a preponderance of the evidence that (1) the Commonwealth of Pennsylvania had knowledge that a federally protected right was substantially likely to be violated (i.e. it had knowledge that the failure to provide Plaintiff with appropriate accommodation likely have violated his right to reasonable accommodations of his disability) and (2) the Commonwealth of Pennsylvania failed to act despite that knowledge.

"Knowledge" under this standard must be actual knowledge and is not satisfied by claims that the Defendant "should have known.

Therefore, because deliberate indifference requires actual knowledge, Mr. Geness cannot satisfy the deliberate indifference standard by showing the judges 'would have' or 'should have known' his rights were substantially likely to be violated.  Deliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction.[57]

Mr. Geness objected to these instructions in part, objecting to the section saying, "i.e. it had knowledge that the failure to provide Plaintiff with appropriate accommodation likely have violated his right to reasonable accommodations of his disability" on the ground Mr. Geness claimed denial of a service, not denial of an accommodation.[58] Mr. Geness otherwise did not object to the Commonwealth's proposed instructions on deliberate indifference.[59]

Two weeks after the deadline for filing jury instructions, Mr. Geness moved to supplement his jury instructions.[60] He did not request additional instructions regarding the deliberate indifference standard.

### Mr. Geness moves for reconsideration of our Order denying him summary judgment.

In the week leading up to trial and around six months after we issued our Memorandum and Order granting in part and denying in part Mr. Geness's motion for summary judgment, Mr. Geness moved for reconsideration of the section of our Order and Memorandum denying Mr. Geness summary judgment on the issue of deliberate indifference.[61] Mr. Geness cited newly discovered evidence as the basis for his motion for reconsideration.[62] The new evidence consisted of a transcript of a hearing in which Judge Wagner acknowledged the Pennsylvania Mental Health Procedures Act requires dismissal of charges against a criminal defendant if a doctor determines the defendant would never attain competency to stand trial. The hearing occurred about a year before Judge Wagner received a report finding Mr. Geness could never

attain competency and committed Mr. Geness to Long Term Structured Release with ankle monitoring at Chestnut Ridge Counseling Services.[63]

Mr. Geness argued this transcript established Judge Wagner's, and thus the Commonwealth's, deliberate indifference as a matter of law because it established Judge Wagner knew Mr. Geness's prosecution could not proceed under the Pennsylvania Mental Health Procedures Act. We disagreed, finding reasonable minds could differ regarding Judge Wagner's deliberate indifference and reiterating our reasoning from our summary judgment Memorandum. We further reminded the parties, "deliberate indifference requires 'actual knowledge' a person's "*federally* protected right is substantially likely to be violated," and while the transcript evidence showed Judge Wagner's awareness of the Pennsylvania Mental Health Procedures Act, we did not find it showed Judge Wagner's actual knowledge "Mr. Geness's 'federally protected rights' under Title II were substantially likely to be violated by failing to strictly adhere to state law."[64] We reserved the issue of deliberate indifference to the jury.

### *Mr. Geness untimely files a second supplement to his proposed jury instructions.*

On the eve of trial and three weeks after our deadline for filing jury instructions, Mr. Geness again sought to supplement his proposed jury instructions.

He asked us to instruct the jury:

In hyper-pressurized environments requiring snap judgment, an official must actually intend to cause harm in order to be liable. In contrast, where he actor has time to make an unhurried judgment, a plaintiff need only allege facts supporting an inference that the official acted with a mental state of deliberate indifference.

Deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person, nor is knowledge of certainty of harm or the intent to harm required.[65]

Mr. Geness cited *Kedra v. Shroeter* in support of the instruction on "unhurried judgment."[66] We held a charging conference, and the Commonwealth objected to the "unhurried"

judgment" instruction on the grounds *Kedra* involved a "state-created danger" substantive due process case, not an Americans with Disabilities Act case, and the standard did not apply.[67] The Commonwealth did not object to any other part of the instructions. We told the parties we would review *Kedra* before ruling.

After reviewing *Kedra*, we sustained the Commonwealth's objection at trial and we elected not to instruct the jury on "unhurried judgment." We stated our reasoning on the record.[68] We noted *Kedra* addressed the levels of culpability required to "shock the conscience" in a state-created danger context. We incorporated Mr. Geness's instruction on deliberate indifference does not require personal ill will or animosity towards the disabled person.[69]

### The parties present evidence, we instruct the jury, and the jury returns a verdict in favor of the Commonwealth.

Each party presented evidence. Mr. Geness called Bernadette Tummons, Esquire and Dr. Scott Tracy to testify. Attorney Tummons testified as to her experience defending Mr. Geness from 2012 through 2015. Dr. Tracy, a witness for Mr. Geness, testified as to Mr. Geness's mental impairments and his observations of Mr. Geness while under the supervision of Chestnut Ridge Counseling Services. Dr. Tracy testified Chestnut Ridge is an assisted living facility for "psychiatric rehabilitation" and "mental retardation rehabilitation" where patients live under the supervision of "caretakers" and receive visits from psychiatrists.[70] Chestnut Ridge is a state-licensed facility and has security consistent with a state-licensed mental health and assisted living facility.[71] Dr. Tracy frequently refers patients to Chestnut Ridge.[72] If Mr. Geness needed to leave Chestnut Ridge while committed there, he would do so accompanied by a caregiver, not a member of law enforcement or a security guard.[73]

Mr. Geness presented the video of Judge Wagner's deposition to show his state of mind. Mr. Geness also presented the transcript brought to our attention in his motion for

reconsideration. In the November 29, 2010 hearing transcript, Judge Wagner acknowledged the Pennsylvania Mental Health Procedures Act requires dismissal of charges against a criminal defendant if a doctor determines the defendant would never attain competency to stand trial. Judge Wagner stated, "I think if you research – obviously, where this was headed, if you research the Mental Health Procedures Act, if there isn't a probability that [Mr. Geness] will regain competency within a reasonable period of time, then the prosecution is gone . . . I mean, he doesn't just sit in jail as an incapacitated person forever . . . If there isn't a likelihood that he is going to regain competency within a reasonable period of time."[74]

Mr. Geness admitted more than thirty orders Judge Wagner signed certifying "[t]he Court of Common Pleas of Fayette County is required by law to comply with the Americans with Disabilities Act of 1990."[75]

We instructed the jury after the close of evidence:

The first question you must answer unanimously is: Was the Commonwealth, through its judges, deliberately indifferent to Mr. Geness's federally protected rights from September 2011 . . . until December of 2015. So now I'm going to tell you what those words mean. . . . Mr. Geness must prove by a preponderance of the evidence . . . that the Commonwealth, through its judges, acted with deliberate indifference towards his federally protected rights, that today of course being the Americans with Disabilities Act . . . So to satisfy the deliberate indifference standard, Mr. Geness must show by a preponderance of the evidence that a judge or judges of the Court of the Common Pleas of Fayette County, (1) knew Mr. Geness's federally protected rights were substantially likely to be violated; and – that's an "and" – (2) he or they failed to act despite that knowledge . . . so [a] word that you see is "knowledge." . . . Knowledge under the deliberate indifference standard must be actual knowledge.  . . . It's not satisfied by claims the judge should have known. Because deliberate indifference requires actual knowledge, Mr. Geness cannot satisfy the deliberate indifference standard by showing judges would have or should have known his rights were substantially and likely being violated. Deliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction. But deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person.[76]

The jury deliberated and returned a verdict finding the Commonwealth, acting through its judges, did not act with deliberate indifference to Mr. Geness's rights when it involuntarily

committed him from September 2011 to December 2015 to Chestnut Ridge Counseling Services despite a determination he would never attain competency to stand trial.

## II.     Analysis

Mr. Geness now moves for a new trial, arguing the jury's verdict contradicted the great weight of the evidence and we erred in not instructing the jury regarding "unhurried judgment" applied to the deliberate indifference standard under the Americans with Disabilities Act. We deny Mr. Geness's motion.

### A.     The jury verdict did not contradict the great weight of the evidence.

We charged the jury with determining whether the Commonwealth, acting through its judges, acted with deliberate indifference to Mr. Geness's federally protected rights when they committed Mr. Geness to Chestnut Ridge Counseling Services following a determination he would never be competent to stand trial. The jury did not find deliberate indifference. Mr. Geness argues the verdict contradicted the great weight of the evidence. He argues four pieces of evidence conclusively established Judge Wagner's deliberate indifference to Mr. Geness's federally protected rights: (1) a transcript showing Judge Wagner's awareness the prosecution could not continue its case under the Pennsylvania Mental Health Procedures Act if a doctor determined Mr. Geness did not have a reasonable probability of attaining competency; (2) Judge Wagner's knowledge of Dr. Chaudhary's September 4, 2011 report finding Mr. Geness unable to ever attain competency; (3) Judge Wagner's September 21, 2011 order involuntarily committing Mr. Geness to Long Term Structured Release at Chestnut Ridge Counseling Services.; and (4) Judge Wagner's signature on various forms acknowledging "[t]he Court of Common Pleas of Fayette County is required by law to comply with the Americans with Disabilities Act of 1990."

We may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has . . . been granted in an action in law in federal court."[77] But we "should do so only when the great weight of the evidence cuts against the verdict and a miscarriage of justice would result if the verdict were to stand."[78] Our "power to grant a new trial is limited to ensure" we "do not substitute [our] judgment of the facts and the credibility of the witnesses for that of the jury."[79]

The evidence Mr. Geness cites does not warrant granting a new trial. To establish deliberate indifference, Mr. Geness had the burden to show Judge Wagner's "actual knowledge" Mr. Geness's *federally* protected right[s] [were] substantially likely to be violated."[80] The evidence Mr. Geness identifies establishes Judge Wagner in November 2010 knew the Pennsylvania Mental Health Procedures Act required the district attorney to cease prosecuting Mr. Geness if a doctor determined "there [was not] a probability that [Mr. Geness] [would] regain competency within a reasonable period of time."[81] The evidence also shows in September 4, 2011, Dr. Chaudhary determined Mr. Geness would not attain competency. The evidence shows, despite this report, Judge Wagner, at the request of Mr. Geness's defense attorney, committed Mr. Geness to Long Term Structured Release on September 21, 2011.  Finally, the evidence shows Judge Wagner generally knew he, as a member of the Court of Common Pleas, must follow the Americans With Disabilities Act.

As we found in our July 1, 2021 Order denying Mr. Geness's motion for reconsideration, "[t]he Pennsylvania Mental Health Procedures Act is state law, not federal law."[82] We explained we could not find "awareness of Mr. Geness's rights under *state* law alone sufficient to establish Judge Wagner's 'actual knowledge' Mr. Geness's 'federally protected rights' under Title II were substantially likely to be violated by failing to strictly adhere to state law."[83] But we allowed the

jury to consider this evidence as one piece of the totality of the circumstances regarding Judge Wagner's alleged deliberate indifference.

We now consider the evidence of Judge Wagner's knowledge of the Pennsylvania Mental Health Procedures Act in conjunction with the evidence of Judge Wagner's knowledge of the Americans with Disabilities Act. We do not find the evidence, taken together, unequivocally established Judge Wagner's deliberate indifference as a matter of law. While the evidence adduced shows Judge Wagner knew of both the Americans with Disabilities Act and the Pennsylvania Mental Health Procedures Act, we have no evidence showing, in 2011, Judge Wagner had actual knowledge of the intersection of the Pennsylvania Mental Health Procedures Act and the Americans with Disabilities Act.

Title II of the Americans with Disabilities Act prevents public entities from denying qualified individuals with disabilities "benefits of the services, programs or activities" by reason of the individual's disability. To our knowledge, our Court of Appeals in its 2018 *Geness I* opinion first pronounced adherence to the Pennsylvania Mental Health Procedures Act can constitute a "service, program, or activity" the Commonwealth provides under Title II of the Americans with Disabilities Act and failure to adhere to this state law could violate Title II of the Americans with Disabilities Act. Mr. Geness adduced no evidence Judge Wagner predicted this pronouncement seven years before our Court of Appeals' 2018 decision.

Lacking this crucial missing evidence connecting the Pennsylvania Mental Health Procedures Act and the Americans with Disabilities Act, the jury acted reasonably in finding no deliberate indifference to Mr. Geness's *federally* protected rights.

### B.    We did not err by not including language regarding varying levels of deliberate indifference based on "unhurried judgment" in the jury instructions.

Mr. Geness argues we erred in not instructing the jury: "In hyper-pressurized environments requiring a snap judgment, an official must actually intend to cause harm to be liable. In contrast, where the actor has time to make an unhurried judgment, a plaintiff need only allege facts supporting an inference that the official acted with a mental state of deliberate indifference."[84] We find no error in declining to instruct the jury on the unhurried judgment instruction given the risk of jury confusion and lack of authority to extend this reasoning outside of the "shock the conscience" analysis in substantive due process and state-created danger cases often involving police officers.

Mr. Geness's last-minute proposal asked us to instruct the jury he "need only allege facts supporting an inference" of deliberate indifference to satisfy his burden at trial. This standard applies to surviving a motion to dismiss or a motion for judgment on the pleadings, not recovering compensatory damages at trial. At trial, Mr. Geness bore the burden to establish deliberate indifference by a preponderance of the evidence.

As we stated on the record, the language Mr. Geness proposed for his instruction arose in an entirely different legal context. Mr. Geness derived the latest version of his proposed jury instruction from our Court of Appeals' decision in *Kedra v. Schroeter*. In *Kedra*, an instructor shot and killed a state trooper during firearms training.[85] The state trooper's estate brought a "state-created danger claim" under the substantive due process clause.[86]

Under the "state-created danger" doctrine, a plaintiff injured by a state actor may hold the state actor liable for violating his rights under the due process clause by establishing: (1) the harm caused was foreseeable and fairly direct; (2) the state actor "acted with a degree of

culpability that shocks the conscience;" (3) the state and the plaintiff had a relationship such that "the plaintiff was a foreseeable victim of the defendant's acts;" and (4) the state actor affirmatively used his authority "in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger" than had he never acted.[87]

Our Court of Appeals addressed the second element, seeking to answer the question of what degree of culpability "shocks the conscience."[88] Our Court of Appeals stated: "The exact level of culpability required to shock the conscience . . . depends on the circumstances of each case, and the threshold for liability varies with the state actor's opportunity to deliberate before taking action. We have identified three potential levels of culpability. In 'hyperpressurized environment[s] requiring a snap judgment,' an official must actually intend to cause harm in order to be liable.  In situations in which the state actor is required to act 'in a matter of hours or minutes,' we require that the state actor 'disregard a great risk of serious harm.' And where the actor has time to make an 'unhurried judgment[ ],' a plaintiff need only allege facts supporting an inference that the official acted with a mental state of 'deliberate indifference.'"[89]

In *Kedra*, our Court of Appeals discussed the varying levels of culpability for "shocking the conscience" under the substantive due process clause – *not* varying degrees of deliberate indifference applicable in Americans with Disabilities Act cases.[90]

Our jury did not have the task of choosing among varying levels of culpability. The jury had the task of applying the deliberate indifference standard. Had we included instructions on heightened levels of culpability beyond deliberate indifference, we would confuse the jury and run the risk the jury would think they could apply a heightened standard like "intent to cause harm" or "disregard of a great risk of serious harm" if they found the judges had only seconds, minutes, or hours to make decisions regarding Mr. Geness. We viewed a probable risk of

confusing the jury considering the state court did not assign a particular judge to Mr. Geness's case and the Commonwealth adduced evidence the judges' decisions mainly involved signing orders prepared by the parties presented to the judges for the first time at a hearing.[91] We have no basis to apply the standard for "shocking the conscience" in a substantive due process claim to the Fayette County judges' review of orders under the Americans with Disabilities Act.

Our preliminary instructions made clear "deliberate indifference" is the applicable standard. In our preliminary instructions, we instructed the jury on the deliberate indifference standard. Neither party argued our instructions implied a heightened level of culpability – like the "intent to cause harm" or "disregard of a great risk of serious harm" standard discussed in *Kedra* applied in this case. We find no basis to change our analysis. The analysis in *Kedra* does not apply. We have no basis to order a new trial.

## III. Conclusion

As we do not find the jury's verdict inconsistent with the great weight of the evidence nor do we find error in not instructing the jury on "unhurried" standard applied to reviewing conduct which shocks the conscience in substantive due process cases, we deny Mr. Geness's motion for a new trial.

---

[1] We summarize the facts relevant to this post-trial motion. We offer a fulsome description of the circumstances of Mr. Geness's criminal prosecution in our November 30, 2020 Memorandum granting in part and denying in part the parties' cross motions for summary judgment. *Geness v. Pa.*, 503 F. Supp. 3d 318 (W.D. Pa. 2020). A full transcript of the jury trial on deliberate indifference can be found at ECF Doc. Nos. 401-405.

[2] ECF Doc. No. 1.

[3] ECF Doc. No. 33.

[4] ECF Doc. Nos. 30, 74, 110, 111.

[5] ECF Doc. No. 76.

---

[6] ECF Doc. Nos. 92-93.

[7] *Geness v. Cox ("Geness I")*, 902 F.3d 344 (3d Cir. 2018).

[8] *Id.* at 362.

[9] *Id.* at 361 (quoting *Haberle v. Troxell*, 885 F.3d 170, 178-79 (3d Cir. 2018)).

[10] *Id.* at 361-62.

[11] *Id.*

[12] *Id.* (citing 28. C.F.R. § 35.152(b)(2)).

[13] *Id.*

[14] *Id.* (citing 50 Pa. Con. Stat. Ann. § 7402(b)).  The court of appeals did not cite Section 7403, providing, "[w]henever a person who has been charged with a crime has been determined to be incompetent to proceed, he shall not for that reason alone be denied pretrial release. Nor shall he in any event be detained on the criminal charge longer than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If the court determines there is no such probability, it shall discharge the person. Otherwise, he may continue to be criminally detained so long as such probability exists but in no event longer than" "the maximum sentence of confinement that may be imposed for the crime or crimes charged or ten years, whichever is less" except in cases of "first- and second-degree murder" in which case "there shall be no limit on the period during which proceedings may be stayed." 50 Pa. Con. Stat. Ann. § 7403(d) & (f).

[15] *Id.* at 361-62.

[16] ECF Doc. Nos. 121, 183.

[17] ECF Doc. No. 365.

[18] ECF Doc. No. 198.

[19] *Geness v. Admin. Office of Pa. Cts. ("Geness II")*, 974 F.3d 263 (3d Cir. 2020), *cert. denied sub nom. Geness v. Pennsylvania*, --- S.Ct. ---, No. 20-1288, 2021 WL 2044559 (May 24, 2021).

[20] 546 U.S. 151 (2006).

[21] *Geness II*, 974 F.3d at 273-78, n.9.

[22] *Id.* at 274.

[23] *Id.* at 275.

[24] *Id.* at 276.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.* at 278.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Geness v. Pa*, 503 F. Supp. 3d 318, 335 (W.D. Pa. 2020).

[33] *Id.* at 337.

[34] *Id.*

[35] *Id.* at 337.

[36] *See Geness I*, 902 F. 3d at 362 (citing Pa. Con. Stat. Ann. §§7401, 7402).

[37] *Geness v. Pa.*, 503 F. Supp. 3d at 336.

[38] *Id.* at 336, 338.

[39] *Id.* at 338.

[40] *Id.* at 338-39.

[41] *Id.* at 338.

[42] *Id.*

[43] *Id.* at 338-39.

[44] *Id.*

[45] *Id.* at 342.

[46] *Id.* at 343.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.* at 344.

[51] *Id.* at 344.

[52] *Id.*

[53] ECF Doc. No. 356 ¶ 4.

[54] ECF Doc. No. 359 ¶¶ 12-14.

[55] ECF Doc. No. 375 ¶¶ 12-14.

[56] ECF Doc. No. 360.

[57] ECF Doc. No. 360 ¶¶ 2-5.

[58] ECF Doc. No. 371 ¶ 3.

[59] *Id.* ¶¶ 2-5.

[60] ECF Doc. No. 381.

[61] ECF Doc. No. 388.

[62] *Id.* ¶ 3.

[63] *Id.* ¶ 10.

[64] ECF Doc. No. 390.

[65] ECF Doc. No. 393 ¶ 1 (a), (c).

[66] *Id*. (citing *Kedra v. Schroeter*, 876 F.3d 424, 431 (3d Cir. 2017)).

[67] ECF Doc. No. 408-3 at 8:13-9:2.

[68] ECF Doc. No. 405 at 91:15-94:13.

[69] *Id.*

[70] ECF Doc. No. 404 at 45:9-46:25.

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] ECF Doc. No. 405 at 23:5-13.

[75] *See id.* at 104:1-11.

[76] *Id.* at 133:10-137:1.

[77] Fed. R. Civ. P. 59.

[78] *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 386 (3d Cir. 2016).

[79] *Id.*

[80] *S.H. ex. rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 266 (3d Cir. 2013).

[81] ECF Doc. No. 405: 23:5-9.

[82] ECF Doc. No. 390.

[83] *Id.*

[84] ECF Doc. No. 408 at 10 ¶¶ 28-29.

[85] 876 F.3d 424, 432 (3d Cir. 2017).

[86] *Id.* at 436.

[87] *Id.*

[88] *Id.*

[89] *Id.* at 437.

[90] *Id.*

[91] *See, e.g.* ECF Doc. No. 404 at 79:18-25; 105:12-25.